UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.W. FINANCIAL SERVICES, S.A., as successor in interest to TERTIAIRE INVESTISSEMENT, S.A.<br>　　　　　　　　　　　Plaintiff,<br>　v.<br><br>EMPIRE RESOURCES, INC., et al.<br>　　　　　　　　　　　Defendants. | :<br>: CIVIL ACTION<br>: ECF CASE<br>:<br>: 07-CIV-8491<br>: (SHS)<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
<u>AFFILIATED COMPUTER SERVICES, INC.'S MOTION TO DISMISS</u>**

　　　Defendant, Affiliated Computer Services, Inc. ("ACS"), by its undersigned counsel, submits the following Memorandum of Law in Support of its Motion to Dismiss the Complaint of Plaintiff, A.W. Financial Services, S.A. ("AWF").

**INTRODUCTION**

　　　The Complaint seeks to recover economic losses allegedly suffered by Plaintiff when stock shares in Empire Resources, Inc. were escheated to the State of Delaware. The Complaint alleges claims against ACS for negligence and conversion in relation to the escheatment of the shares. The Complaint repeatedly acknowledges that ACS is the authorized agent for the State of Delaware and was acting in that capacity when Plaintiff's shares were escheated to the State. Nonetheless, the Complaint, through vague and ambiguous pleading, seeks to maintain various state law claims against ACS. Because ACS is entitled to sovereign immunity, and because the Plaintiff cannot plead a cause of action for negligence against ACS, the Complaint fails to state a claim upon which relief may be granted and must be dismissed.

1

## THE ALLEGATIONS OF THE COMPLAINT

On or about January 11, 1994, Tertiaire Investissement, S.A. ("Tertiaire"), purchased forty shares of Integrated Technology USA, Inc. ("ITI"). (Complaint, ¶ 7). Through a succession of mergers completed on December 31, 2001, AWF became, and is alleged to remain, the successor in interest to Tertiaire. (Complaint, ¶ 1). AWF is alleged to be a French corporation with its principal please of business in France. (Complaint, ¶ 1).

On or about September 30, 1999, ITI merged with Empire Resources, Inc. ("Empire"). (Complaint, ¶ 8). Empire is alleged to be a Delaware corporation with its principal place of business in New Jersey. (Complaint, ¶ 2). As a result of the ITI-Empire merger, the ITI shares owned by Tertiaire became shares of Empire. (Complaint, ¶ 9). In or about April 2000, Tertiaire wrote to Empire inquiring about its shares. (Complaint, ¶ 10). On May 4, 2000, American Stock Transfer & Trust Company ("AST"), a company with its principal place of business in New York, acting as Empire's authorized agent, responded to Tertiaire's inquiry via letter reportedly acknowledging Tertiaire's letter regarding the loss of stock certificate ITI0065 against which AST reportedly placed a "STOP TRANSFER" notation on its records. (Complaint, ¶¶ 3, 11, 17). The Complaint alleges that Tertiaire never received stock certificate ITI0065 and therefore could not have lost the certificate. (Complaint, ¶ 12). Nevertheless, Tertiaire executed an Affidavit of Loss and Indemnity Agreement, and purchased a surety bond, as allegedly required by AST as a condition to AST providing Tertiaire with a replacement certificate. (Complaint, ¶¶ 13-14). The Complaint alleges that the Affidavit of Loss and Indemnity Agreement, dated May 22, 2000, stated that Tertiaire was "presently known as

Tertiaire Development, S.A." and that its address was "47 Rue de Chaillot, Paris 75116." (Complaint, ¶ 15). On or about May 30, 2000, Empire issued a replacement certificate numbered IT0328. (Complaint, ¶ 16). AST sent the replacement certificate to Tertiaire. (Complaint, ¶ 16).

On or about October 20, 2004, Empire, either directly or though AST, delivered Tertiaire's Empire shares to the State of Delaware as unclaimed or escheated property. (Complaint, ¶ 17). In or about February 2005, the State of Delaware, either directly or through ACS, sold the Empire shares. (Complaint, ¶ 18, 34). ACS is the authorized agent for the State of Delaware. (Complaint, ¶¶ 28, 32, 34, 38, 42). ACS is alleged to be a Delaware corporation with its principal place of business in Texas. (Complaint, ¶ 4).

On or about March 29, 2006, over four years after the Tertiaire-AWF merger, Tertiaire (then known as AWF) wrote to Empire requesting that Tertiaire's Empire shares be re-registered in the name of AWF. (Complaint, ¶ 19). The Complaint alleges that AWF maintained the same address, telephone and facsimile numbers as Tertiaire. (Complaint, ¶ 20). In or about April 2006, AWF learned that Tertiaire's Empire shares had been escheated by Empire, through AST, to the State of Delaware, through ACS. (Complaint, ¶ 21). The Complaint alleges that between February 2005 and March 2006, the market value of Empire shares rose from approximately $4 per share to $32.61 per share. (Complaint ¶ 22).

Count Three of the Complaint purports to state claims for negligence and negligence per se against ACS. (Complaint, Count III). Count Five purports to state a common law claim for conversion against all defendants. (Complaint, Count V).

3

ACS now moves to dismiss the Complaint for failure to state a claim upon which relief may be granted. As authorized agent for the State of Delaware, ACS is immune from suit for all state law claims under the doctrine of sovereign immunity. Plaintiff has failed to allege any statutory waiver of this immunity. Additionally, Count Three fails to state a claim against ACS because the Complaint does not adequately allege that ACS owed a duty to Plaintiff and fails to allege the elements necessary to maintain a prima facie claim for negligence per se.

## LEGAL ARGUMENT

**I.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Count Three purports to state a claim against ACS for negligence and negligence per se. Count Five purports to state a claim against ACS for conversion. ACS is immune from suit for these state law claims under the doctrine of sovereign immunity. Additionally, Count Three fails to state a claim for negligence because, as a matter of law, ACS did not owe a duty to AWF. Finally, Count Three fails to state a claim for negligence per se because it does not adequately allege that ACS violated a statute, enacted for the safety of others, embodying a standard of conduct designed to protect the Plaintiff from injury or harm.

**A.    Legal Standard**

The purpose of a Motion to Dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996). In deciding a Motion to Dismiss, the Court is required to accept as true all of the factual allegations contained in the complaint and view those facts, and draw all

reasonable inferences, in plaintiff's favor. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007); Ofori-Tenkorang v. American Int'l Group, Inc., 460 F.3d 296, 298 (2d Cir. 2006); De Jesus, 87 F.3d at 69. "The test is no longer whether there is 'no set of facts' that plaintiff could prove 'which would entitle him to relief.'" Abdelhamid v. Altria Group, Inc., No. 06 Civ. 3927, 2007 WL 2186275, at *2 (S.D.N.Y. July 27, 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1969). Instead, the complaint must provide the grounds upon which the plaintiff's claim rests through factual allegations sufficient to raise a right to relief above the speculative level. Bell Atlantic Corp., 127 S. Ct. at 1965; Abdelhamid, 2007 WL 2186275, at *2. Although the Court must take the plaintiff's allegations as true, the claim may still fail as a matter of law if the claim is not legally feasible. Abdelhamid, 2007 WL 2186275, at *2 (citing In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006)). While the Court must accept all well pled allegations in the complaint, it need not credit bald assertions and conclusions of law. See Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002).

    **B.    Applicable Law**

In diversity cases, the federal courts must follow conflict of laws rules prevailing in the states in which they sit. Klaxon Co. v. Stentor Elec. Mfg. Co., 61 S. Ct. 1020 (1941); Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006). As a result, New York's choice of law rules will apply for the purpose of determining which state's law defines whether Plaintiff has stated a claim against ACS. The Second Circuit Court of Appeals has found that the relevant analytical approach to choice of law in tort actions in

New York is the interest analysis.  GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006).

Under the interest-analysis test, the law of the jurisdiction having the greatest interest in the litigation will be applied, and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.  Id.  Under the interest-analysis test, significant facts or contacts are, almost exclusively, the parties' domiciles and the locus of the tort.  Id.  Under the interest-analysis test, torts are divided into two types: those involving appropriate standards of conduct or rules of the road (conduct-regulating laws), and those that relate to allocating losses that result from admittedly tortious conduct, such as those limiting damages in wrongful death actions (loss-allocating laws).  Id.

In the instant matter, the Complaint, in its tort claims against ACS, alleges that "ACS failed to confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property."  (Complaint, ¶ 36).  The Complaint does not identify the specific statutes or regulations at issue.  The Complaint, however, generally alleges that the "laws and regulations of the State of Delaware prohibit escheatment of securities unless and until the property has been fully dormant for a period of at least five (5) years" and that less than five years elapsed between the issuance of replacement shares and the determination to escheat the shares at issue. (Complaint, ¶ 24).  Additionally, the Complaint alleges that the shares at issue were escheated to and liquidated by the State of Delaware.  (Complaint, ¶¶ 21, 28, 32, 38 and 42).

Because Plaintiff bases its claim against ACS on ACS's alleged failure to follow appropriate standards of conduct—the "laws and regulations of the State of Delaware"—

6

conduct-regulating laws are therefore at issue in this tort action. (Complaint, ¶¶ 24-25). When conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. GlobalNet Financial.Com, Inc., 449 F.3d at 384. The Complaint's allegations invoking Delaware laws and regulations, as well as the allegations that property allegedly belonging to Plaintiff escheated to and was liquidated by the State of Delaware, indicate that the alleged tort occurred in Delaware. (Complaint, ¶ 21, 24, 28, 32, 38 and 42). Delaware, therefore, has the greatest interest in this action and Delaware law should apply.

### C. This Court Should Dismiss Because ACS Is Immune From Suit

The Complaint fails to state a claim against ACS because, as a matter of law, ACS is immune from suit. The doctrine of sovereign immunity in Delaware was established by the State Constitution. See Del. Const. art. I, § 9; Doe v. Cates, 499 A.2d 1175, 1181 (Del. 1985). Sovereign immunity precludes the existence of a cause of action against the State unless the State has chosen to waive that immunity. Doe v. Cates, 499 A.2d at 1182. The State, therefore, may not be sued without its consent. Id. at 1176; see Pauley v. Reinoehl, 84 A.2d 569, 573 (Del. 2004).

Article I, Section 9 of the Delaware Constitution provides that the only way to limit or waive the State's sovereign immunity is by act of the General Assembly. Doe v. Cates, 499 A.2d at 1176; Pauley, 84 A.2d at 573. Thus, unless there is a statute by which the General Assembly can be said to have waived the defense of sovereign immunity, suit against the State or its agents for damages caused by negligent acts of the State's employees or agents must fail. See Doe v. Cates, 499 A.2d at 1176-1177; see also

Pauley, 84 A.2d at 576; Murphy v. Correctional Medical Services, Inc., No. 03C-04-271-PL, 2005 WL 2155226, at *4 (Del. Super. Ct. Aug. 19, 2005) ("Even though the States may choose to waive their sovereign immunity from [] common law claims, the Court will not presume that they have done so absent a compelling legislative statement to that effect").

Delaware's Tort Claims Act, 10 Del. C. §§ 4001-4005, codified existing common law principles of sovereign immunity. See Doe v. Cates, 499 A.2d at 1180 (discussing purpose of Tort Claims Act). Significantly, the Delaware Supreme Court has described sovereign immunity in Delaware as "virtually absolute." Id. In so noting, the Delaware Supreme Court has found that the State's Tort Claims Act must be applied to further *limit* the State's liability where it has, by some means independent of the Tort Claims Act, waived immunity. See Doe v. Cates, 499 A.2d at 1181 (finding that State did not independently waive sovereign immunity under 19 Del. C. § 6511 because there was no insurance coverage for the risks presented and there was no other independent waiver of sovereign immunity). Where there is statutory evidence that the State intended to waive its sovereign immunity for a particular agent of the State, the Tort Claims Act will operate to protect the State and its employees and agents from liability where their actions: (1) arose from official duties involving the exercise of discretion; (2) were done in good faith; and (3) were without gross or wanton negligence. See 10 Del. C. § 4001; Murphy, 2005 WL 2155226, at *3 (citing Doe v. Cates, 499 A.2d 1175 and Space Age Products, Inc. v. Gilliam, 488 F. Supp. 775 (D. Del. 1980)). Consequently, for a plaintiff to prevail in a suit against the State, it must show that: "(1) the State has waived the

8

defense of sovereign immunity for the actions mentioned in the complaint; and (2) the State Tort Claims Act does not bar the action." Pauley v. Reinoehl, 84 A.2d at 573.

ACS, as the State of Delaware's agent, is entitled to the State's sovereign immunity protection, thereby precluding it from liability in lawsuits such as the instant one. In the Complaint, Plaintiff repeatedly acknowledges that that ACS is the "authorized agent" for the State of Delaware. (Complaint, ¶¶ 28, 32, 34, 38 and 42). Significantly, the Complaint bases the alleged obligations of ACS to Plaintiff, and the claims against ACS stemming from these alleged obligations, on ACS's actions as the "authorized agent for the State of Delaware." (Complaint, ¶ 34). A state has no power to act apart from the actions of its agents and employees. See Murphy, 2005 WL 2155226, at *4. ACS, therefore, in its capacity as agent for the State of Delaware enjoys sovereign immunity from claims against it unless a statutory exception applies. The Complaint fails to cite any statute whereby Delaware's General Assembly has waived sovereign immunity from liability in lawsuits such as the instant one. Because the Complaint does not point to any waiver of sovereign immunity by the General Assembly, Plaintiff has not met the requirements for bringing state law claims against ACS. See Doe v. Cates, 499 A.2d at 1176; Pauley, 84 A.2d at 573. Therefore, this lawsuit against ACS is barred by the doctrine of sovereign immunity. Accordingly, the Complaint fails to state a claim against ACS upon which relief may be granted.

> D. **This Court Should Dismiss Because The Complaint Fails To Allege A Claim For Negligence Against ACS**

Even if the Complaint adequately pled that immunity has been waived, which it does not, Count Three would fail to state a claim for negligence because it fails to

9

adequately allege that ACS owed a duty to Plaintiff—a required element to maintain a cause of action for negligence.

### 1. ACS Does Not Owe A Legal Duty To Plaintiff

In order to be held liable in negligence, a defendant must have been under a legal obligation—a duty—to protect the plaintiff from the risk of harm which caused his injuries. Fritz v. Yeager, 790 A.2d 469, 471 (Del. 2002); see also New Haverford P'ship v. Stroot, 772 A.2d 792, 798 (Del. 2001). Because duty is essentially a question of whether the relationship between the parties gives rise to a legal obligation to act for the benefit of the injured party, the question of whether a duty of care exists depends upon the nature of the relationship between the parties. Kuczynski v. McLaughlin, 835 A.2d 150, 153 (Del. Super. Ct. 2003). Whether a duty exists is entirely a question of law for the Court to decide by reference to the body of statutes, rules, principles and precedents that make up the law. Fritz, 790 A.2d at 471; see also Kuczynski, 835 A.2d at 153.

Count Three of the Complaint purports to state a claim against ACS for common law negligence. (Complaint, ¶ 37). The Complaint, however, fails to plead a necessary element of a cause of action for negligence—that a duty exists on the part of ACS to Plaintiff. See New Haverford P'ship, 772 A.2d at 798. Nowhere does the Complaint allege that ACS owed a duty to Plaintiff because of the relationship between ACS and Plaintiff. Moreover, Delaware focuses on the foreseeable consequences when determining whether a duty exists. Kuczynski, 835 A.2d at 154. Examining the allegations of the Complaint reveals that the purported relationship between Plaintiff and ACS is not one in which ACS could have foreseen the consequences alleged to have resulted to Plaintiff. Plaintiff is alleged to own *Empire* shares. (Complaint, ¶ 9).

Plaintiff's communications regarding these shares were with *AST*. (Complaint, ¶¶ 11, 13 and 16). *Empire*, or its agent *AST*, is alleged to have delivered these shares to the State of Delaware. (Complaint, ¶ 17). The only potential connection between ACS and Plaintiff, as alleged in the Complaint, is that ACS possibly sold the Empire shares for the State of Delaware, after the shares were delivered to the State by *Empire* or *AST*. (Complaint, ¶¶ 17, 18). Even this allegation is uncertain, as the Complaint alleges that the State of Delaware possibly sold the Empire shares directly, without using ACS. (Complaint, ¶ 18). The Complaint, therefore, fails to allege a relationship between ACS and Plaintiff that would create a legal obligation, or duty, of ACS to act for the benefit of Plaintiff.

The Delaware Supreme Court has also recognized that, where a plaintiff identifies a statute that imposes a duty, that statute may provide the source of a defendant's duty in a claim for common law negligence. See New Haverford P'ship, 772 A.2d at 798. Here, the Complaint states that "ACS, as authorized agent for the State of Delaware, is obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment" and that "[t]he intended beneficiaries of said statutes and regulations are shareholders of Delaware corporations, including Tertiaire." (Complaint, ¶¶ 34, 35). The Complaint make the bald assertion that a statute or regulation exists to impose a duty on ACS to act not just for Plaintiff, but for *all shareholders of Delaware corporations*, without identifying any existing statute or regulation that *in fact exists* to impose a duty on ACS to act for the benefit of Plaintiff. Such bald assertions will not be credited in deciding a Motion to Dismiss. See Law Offices of Curtis V. Trinko, L.L.P., 309 F.3d at 74. The Complaint fails to identify a Delaware statute that imposes a duty on an agent of the State of Delaware, selling property on behalf of the State, to protect all shareholders

of Delaware corporations. The Complaint, therefore, fails to plead a necessary element of a cause of action for negligence—that a duty exists on the part of ACS to Plaintiff. Accordingly, Count Three of the Complaint must be dismissed for failing to state a claim.

> **E.  This Court Should Dismiss Because The Complaint Fails To Allege A Claim For Negligence Per Se**

Even if the Complaint adequately pled that immunity has been waived, which it does not, Count Three would fail to state a claim for negligence per se because it fails to allege that ACS violated a statute enacted for the safety of others that embodies a standard of conduct designed to protect the Plaintiff from injury or harm.

> **1.  The Complaint Does Not Allege Violation of A Statute Enacted For The Safety Of The Public**

Count Three of the Complaint purports to assert a claim against ACS for negligence per se. (Complaint, ¶ 37). The doctrine of negligence per se is well-established in Delaware. Hall v. Bioquest Laboratories, Inc., No. 87A-JL3, 1991 Del. Super. LEXIS 245, at *5 (Del. Super. Ct. June 17, 1991). "Under Delaware law, conduct in violation of a statute, ordinance, rule, or regulation *enacted for the safety of others* and having the force of law constitutes negligence per se." Carroll v. Getty Oil Co., 498 F. Supp. 409, 412 (D. Del. 1980) (emphasis added) (finding that express purpose of statute and regulations at issue was safety); see also Tydings v. Lowenstein, 505 A.2d 443, 446 (Del. 1986); Sammons v. Ridgeway, 293 A.2d 547, 549 (Del. 1972); Hall, 1991 Del. Super. LEXIS 245, at *5. The Delaware courts have consistently found that negligence per se involves the violation of a statute or ordinance that has been enacted for the *safety* of others. See Carroll, 498 F. Supp. at 412; see also Tydings, 505 A.2d at 446; Sammons, 293 A.2d at 549 (noting historical relationship between criminal statutes and the

development of the doctrine of negligence per se and finding that all reported opinions of Delaware courts on the doctrine involved criminal statutes or ordinances, and almost all involved rules of the road); Hall, 1991 Del. Super. LEXIS 245, at *5.

Plaintiff's Complaint fails to state a claim against ACS for negligence per se because it fails to allege that ACS violated a statute or regulation that has been enacted for the safety of others. The Complaint alleges that "ACS failed to confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property." (Complaint, ¶ 37). The Complaint ostensibly describes the statutes and regulations to which this allegation refers as those requiring ACS "to confirm the appropriateness of property tendered for escheatment" intended to benefit "shareholders of Delaware corporations." (Complaint, ¶¶ 34, 35). The Complaint does not allege that these statutes or regulations were enacted to protect the *safety* of others. The Complaint does not contain any allegation that would even indicate that these statutes or regulations were enacted to protect the safety of others. The Complaint does not identify the specific statutes or regulations upon which the negligence per se claim is based. Because the Complaint entirely fails to plead that ACS violated a statute, ordinance, rule, or regulation which has been enacted for the *safety of others*, the Complaint fails to state a claim for negligence per se, and Count Three must be dismissed.

### 2. The Complaint Does Not Allege That ACS Deviated From A Statutorily Defined Standard Of Conduct

In addition to failing to plead that the statute or regulation purportedly forming the basis for its negligence per se claim was enacted for the safety of others, the Complaint has also failed to plead the essential elements of a negligence per se claim. To establish a cause of action for negligence per se under Delaware law, a plaintiff must

show: "(1) that the statute, ordinance, rule or regulation invoked by plaintiff embodies a 'standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member,' (2) that the defendant is a person required to conform to the minimum standards so imposed, and (3) that the defendant has in fact deviated from those standards." Carroll, 498 F. Supp. at 412 (quoting Rabar v. E.I. Dupont de Nemours & Co., Inc., 415 A.2d 499, 503 (Del. Super. Ct. 1980)); see also Tydings, 505 A.2d at 446 (noting that licensing statutes do not define a standard of conduct); Wharton v. Worldwide Dedicated Services, No. 04C-02-035, 2007 WL 404770, at *2 (Del. Super. Ct. Feb. 2, 2007); Hall, 1991 Del. Super. LEXIS 245, at *5 (noting that plaintiff must still show proximate cause).

Here, the Complaint fails to state a prima facie claim against ACS for negligence per se. The Complaint does not identify a single statute or regulation providing a standard of conduct that ACS has allegedly violated. The Complaint's bare allegation that ACS is "obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment" is insufficient to remedy this deficiency. (Complaint, ¶ 34). In order to allege a cause of action for negligence per se, the plaintiff must show that the defendant has violated a standard of behavior set by the legislature via statute. See Gordon v. Nat'l Railroad Passenger Corp., No. 10753, 2002 WL 550472, at *7 (Del. Ch. April 5, 2002). Because the Complaint fails to identify any specific statute or regulation, or standard of behavior set by the Legislature via that statute, the Complaint fails to plead an essential element of a cause of action for negligence per se. Moreover, because the Complaint fails to plead the first element of a negligence per se cause of action, it also fails to plead the remaining elements, which derive from the standard of

conduct required in the first element. Consequently, the Complaint fails to state a claim for negligence per se, and Count Three must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant, Affiliated Computer Services, Inc., respectfully requests that this Court dismiss the Complaint of Plaintiff, A.W. Financial Services, S.A.

Respectfully submitted,

/s
_____
Michael S. Pepperman (MP9163)
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
One Penn Center - 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000
Attorney for Defendant, Affiliated Computer Services, Inc.

Dated:  December 7, 2007