UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| A.W. FINANCIAL SERVICES, S.A., as successor | : CIVIL ACTION |
| in interest to TERTIAIRE INVESTISSEMENT, S.A. | : ECF CASE |
| Plaintiff, | : |
| v. | : 07 CIV 8491 (SHS)(RLE) |
| | : |
| EMPIRE RESOURCES, INC., et al. | : |
| Defendants. | : |

_____

### DEFENDANTS AMERICAN STOCK TRANSFER & TRUST CO. AND AFFILIATED COMPUTER SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants American Stock Transfer & Trust Co. ("AST") and Affiliated Computer Services, Inc. ("ACS"), submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint of Plaintiff, A.W. Financial Services, S.A. ("AWF").

### INTRODUCTION

The Amended Complaint, filed three days after the Court-ordered filing deadline, seeks to recover economic losses allegedly suffered by Plaintiff when shares of stock in Empire Resources, Inc. were escheated to the State of Delaware. The Amended Complaint seeks to maintain state law claims against AST and ACS for negligence, breach of contract, and conversion. Delaware's escheat law immunizes AST from claims related to the escheatment of the Empire shares. ACS, the admitted agent for the State of Delaware, is also immune from Plaintiff's claims under the doctrine of sovereign immunity. For these reasons, and because Plaintiff's state law claims against AST and ACS fail to allege the essential elements of these causes of action, the Amended

4267947

Complaint fails to state a claim upon which relief may be granted and must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

On or about January 11, 1994, Tertiaire Investissement, S.A. ("Tertiaire"), purchased forty shares of Integrated Technology USA, Inc. ("ITI"). (Amended Complaint, ¶ 7). Through a succession of mergers completed on December 31, 2001, Plaintiff alleges to have become the successor in interest to Tertiaire. (Amended Complaint, ¶ 1). AWF is a French corporation with its principal place of business in France. (Amended Complaint, ¶ 1).

On or about September 30, 1999, ITI merged with Empire Resources, Inc. ("Empire"). (Amended Complaint, ¶ 8). Empire is a Delaware corporation with its principal place of business in New Jersey. (Amended Complaint, ¶ 2). As a result of the ITI-Empire merger, the ITI shares owned by Tertiaire became shares of Empire. (Amended Complaint, ¶ 9). In or about April 2000, Tertiaire wrote to Empire inquiring about its shares. (Amended Complaint, ¶ 10). On May 4, 2000, AST, a company with its principal place of business in New York, acting as Empire's authorized transfer agent, responded to Tertiaire's inquiry via letter acknowledging Tertiaire's letter regarding the loss of stock certificate ITI0065 against which AST placed a "STOP TRANSFER" notation on its records. (Amended Complaint, ¶¶ 3, 11, 17).

Tertiaire executed an Affidavit of Loss and Indemnity Agreement and purchased a surety bond as a condition to AST providing Tertiaire with a replacement certificate. (Amended Complaint, ¶¶ 13-14). The Affidavit of Loss and Indemnity Agreement, dated May 22, 2000, stated that Tertiaire was "presently known as Tertiaire Development,

S.A." and that its address was "47 Rue de Chaillot, Paris 75116." (Amended Complaint, ¶ 15). On or about May 30, 2000, Empire issued a replacement certificate numbered IT0328. (Amended Complaint, ¶ 16). AST sent the replacement certificate to Tertiaire. (Amended Complaint, ¶ 16).

On or about October 20, 2004, Empire, either directly or though AST, delivered Tertiaire's Empire shares to the State of Delaware as unclaimed or escheated property. (Amended Complaint, ¶ 17). In or about February 2005, the State of Delaware, either directly or through ACS, sold the Empire shares. (Amended Complaint, ¶ 18). ACS acted pursuant to its contract with State of Delaware. (Amended Complaint, ¶¶ 4, 36). ACS is alleged to be a Delaware corporation with its principal place of business in Texas. (Amended Complaint, ¶ 4).

On or about March 29, 2006, over four years after the Tertiaire-AWF merger, Tertiaire (then known as AWF) wrote to Empire requesting that Tertiaire's Empire shares be re-registered in the name of AWF. (Amended Complaint, ¶ 19). The Amended Complaint alleges that AWF maintained the same address, telephone and facsimile numbers as Tertiaire. (Amended Complaint, ¶ 20). In or about April 2006, AWF learned that Tertiaire's Empire shares had been escheated to the State of Delaware. (Amended Complaint, ¶ 21). The Amended Complaint alleges that between February 2005 and March 2006, the market value of Empire shares rose from approximately $4 per share to $32.61 per share. (Amended Complaint ¶ 22).

The Amended Complaint purports to state claims against AST and ACS for negligence, breach of contract and conversion. (Amended Complaint, Counts II, III, V, VI, VII).

AST and ACS move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  Because Delaware law grants immunity to companies, like AST, from suit by owners of escheated property for damages stemming from delivery of the property to the State of Delaware, Plaintiff cannot maintain a cause of action against AST and the Amended Complaint should be dismissed.  Further, the Court should dismiss Counts II and V against AST because they fail to allege a prima facie claim.  Additionally, ACS must be dismissed because it is the authorized agent for the State of Delaware, and is therefore immune from Plaintiff's state law claims under the doctrine of sovereign immunity.  Furthermore, the Court should dismiss Counts III, VI and VII against ACS because they do not plead the essential elements necessary to state a viable claim.

## LEGAL ARGUMENT

### I.  CHOICE OF LAW AND DISMISSAL STANDARDS

In diversity cases, the federal courts must follow conflict of laws rules prevailing in the states in which they sit.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006).  As a result, New York's choice of law rules will apply for the purpose of determining which state's law defines whether Plaintiff has stated claims against AST and ACS.  The Second Circuit has determined that the relevant analytical approach to choice of law in tort actions in New York is the interest analysis.  GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006).

Under the interest-analysis test, the law of the jurisdiction having the greatest interest in the litigation will be applied, and the only facts or contacts which obtain

significance in defining state interests are those which relate to the purpose of the particular law in conflict.  Id.  Under the interest-analysis test, significant facts or contacts are, almost exclusively, the parties' domiciles and the locus of the tort.  Id. Under the interest-analysis test, torts are divided into two types: those involving appropriate standards of conduct or rules of the road (conduct-regulating laws), and those that relate to allocating losses that result from admittedly tortious conduct, such as those limiting damages in wrongful death actions (loss-allocating laws).  Id.

The gist of Plaintiff's Amended Complaint are tort claims alleging that "[t]he laws and regulations of the State of Delaware prohibit escheatment of securities unless and until the property has been fully dormant for a period of at least five (5) years." (Amended Complaint, ¶ 24).  The Amended Complaint does not identify the specific statutes or regulations at issue.  The Amended Complaint, however, alleges that "AST was negligent in determining that the Empire shares owned by Tertiaire were dormant for five (5) years" and that "ACS failed to confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property."  (Amended Complaint, ¶¶ 31, 37).  Additionally, the Amended Complaint alleges that less than five years elapsed between the issuance of replacement shares and the determination to escheat the shares at issue, and that the shares at issue were escheated to and liquidated by the State of Delaware.  (Amended Complaint, ¶¶ 21, 25, 28, 32, 39, 43, 48, 55, 58, 61).

Because Plaintiff bases its claim against Defendants on Defendants' alleged failure to follow appropriate standards of conduct – the "laws and regulations of the State of Delaware" – conduct-regulating laws are at issue in this tort action.  (Amended

Complaint, ¶¶ 24-25). When conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. GlobalNet Financial.Com, Inc., 449 F.3d at 384. The Amended Complaint's allegations invoking Delaware laws and regulations, as well as the allegations that property allegedly belonging to Plaintiff escheated to and was liquidated by the State of Delaware, indicate that the alleged tort occurred in Delaware. Delaware, therefore, has the greatest interest in this action and Delaware law should apply.

The purpose of a Motion to Dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996). In deciding a Motion to Dismiss, the Court is required to accept as true all of the factual allegations contained in the complaint and view those facts, and draw all reasonable inferences, in plaintiff's favor. Abdelhamid v. Altria Group, Inc., No. 06 Civ. 3927, 2007 WL 2186275, at *2 (S.D.N.Y. July 27, 2007) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)); see also De Jesus, 87 F.3d at 69. To survive a Rule 12(b)(6) Motion to Dismiss, however, the allegations in the complaint must meet the standard of "plausibility." Abdelhamid, 2007 WL 2186275, at *2 (citing Bell Atlantic Corp., 127 S. Ct. at 1970). "The test is no longer whether there is 'no set of facts' that plaintiff could prove 'which would entitle him to relief.'" Abdelhamid, 2007 WL 2186275, at *2 (quoting Bell Atlantic Corp., 127 S. Ct. at 1969). Instead, the complaint must provide the grounds upon which the plaintiff's claim rests through factual allegations sufficient to raise a right to relief above the speculative level, and must set forth enough information to suggest that relief would be based on some

recognized legal theory.  See Bell Atlantic Corp., 127 S. Ct. at 1965; Abdelhamid, 2007 WL 2186275, at *2; Qantel Corp. v. Niemuller, 771 F. Supp. 1361, 1370 (S.D.N.Y. 1991); Connolly v. Havens, 763 F. Supp. 6, 9 (S.D.N.Y. 1991).  In practice, a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.  Qantel, 771 F. Supp. at 1370 (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)); Connolly, 763 F. Supp. at 9.  Although the Court must take the plaintiff's allegations as true, the claim may still fail as a matter of law if the claim is not legally feasible. Abdelhamid, 2007 WL 2186275, at *2 (citing In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006)).  While the Court must accept all well pled allegations in the complaint, it need not credit bald assertions and conclusions of law.  See Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002).

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST AST

The claims against AST should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  Count II purports to state a claim against AST for negligence.  Count V purports to state a claim against AST for breach of contract, and Count VII purports to state a claim against AST for conversion.  AST is immune from suit for these claims pursuant to 12 Del. C. § 1203. Additionally, Count II fails to state a claim for negligence because, as a matter of law, AST did not owe a duty to AWF.  Count V fails to state a claim for breach of contract because Plaintiff did not have a contract with AST, and was not an intended third party beneficiary of AST's contract with Empire.  Finally, Count VII fails to state a claim for

conversion because at no time did AST exercise a right of ownership to the shares, but instead acted always as Empire's transfer agent.

### A.    This Court Should Dismiss Because AST Is Immune From Suit Under 12 Del. C. § 1203

Plaintiff cannot state a claim against AST for the escheatment of its shares because Delaware's escheatment law immunizes AST from suit for Plaintiff's claims.

#### 1.   AST Is Immune From Suit As a Holder of Property Owned by Plaintiff

Section 1203 of Title 12 of the Delaware Code immunizes AST from suit by an owner of stock, such as Plaintiff, for damages stemming from the delivery of the shares of stock to the State of Delaware pursuant to Delaware's escheatment law.  12 Del. C. § 1203.  Section 1203(a) provides:

> [t]he payment or delivery of property to the State Escheator by any holder shall terminate any legal relationship between the holder and the owner and *shall release and discharge such holder from any and all liability to the owner*, the owner's heirs, personal representatives, successors and assigns *by reason of such delivery or payment, regardless of whether such property is in fact and in law abandoned property* and such delivery and payment *may be pleaded as a bar to recovery* and shall be a *conclusive defense* in any suit or action brought by such owner, the owner's heirs, personal representatives, successors and assigns or any claimant against the holder by reason of such delivery or payment.

12 Del. C. § 1203(a) (emphasis added).  The Delaware Code defines a holder of property as "any person having possession, custody or control of the property of another person."  12 Del. C. § 1198(7).  Although there are no published cases in Delaware discussing the application of Section 1203 to claims for wrongful escheatment of property, the authors of legal treatises discussing Delaware's escheatment law have concluded that "[t]he

effect of delivery of property to the state is to terminate any legal relationship between the holder and the owner of the escheated property and to discharge the holder from liability for having delivered the property, *whether or not the property was in fact abandoned*."[1]  R. Franklin Balotti & Jesse A. Finkelstein, <u>The Delaware Law of Corporations and Business Organizations</u> § 18.17[B] (3d ed. 2005) (emphasis added).

Plaintiff's suit against AST seeks damages arising from AST's allegedly wrongful delivery of Plaintiff's Empire shares to the State of Delaware.  (Amended Complaint, ¶ 17).  Plaintiff alleges that the delivery of the shares to the State of Delaware was wrongful because the shares had not been dormant for a period of at least five (5) years.  (Amended Complaint, ¶¶ 24-25).  AST, acting as Empire's authorized transfer agent, is alleged to have delivered or transferred to the State of Delaware Plaintiff's shares of Empire stock.  (Amended Complaint, ¶¶ 3, 17, 21).  AST's alleged delivery or transfer of Plaintiff's Empire shares to the State of Delaware could only occur if AST was in possession of, or had custody or control over, Plaintiff's Empire shares.  As such, AST qualifies as a holder of Plaintiff's shares.  <u>See</u> 12 Del. C. § 1198(7).

Section 1203 expressly provides that when a holder, such as AST, delivers shares of stock in its possession to the State, such delivery bars recovery by the owner from the holder of the shares, and is *a conclusive defense to* any action, such as the instant one, by the owner of the shares for damages incurred by reason of the delivery of the shares to the State.  <u>See</u> 12 Del. C. § 1203.  As a holder of Plaintiff's Empire shares, AST's delivery of the shares to the State of Delaware terminated any alleged legal relationship between AST and Plaintiff and released and discharged AST from any and all liability to

---

[1] The only Delaware case mentioning Section 1203 limits its discussion to the issue of escheatment when more than one state may have an interest in the abandoned property.  <u>See</u> <u>Cory v. Tampax Inc.</u>, No. 3791, 1976 Del. Ch. LEXIS 163 (Del. Ch. April 29, 1976).

Plaintiff by reason of the delivery or transfer of the shares to the State. See 12 Del. C. § 1203. Furthermore, AST is absolutely immunized from liability whether or not the shares were abandoned by Plaintiff. See id.; 12 Del. C. § 1198(1) (defining abandoned property as property against which a full period of dormancy has run). Accordingly, and as a matter of law, because AST is immune from suit by Plaintiff for damages incurred by reason of the delivery of Plaintiff's Empire shares to the State of Delaware, the Amended Complaint must be dismissed for failing to state a claim against AST.

**2. AST Is Immune From Suit As a Transfer Agent Acting In Good Faith**

Even if AST is found not to be a "holder" of Plaintiff's Empire shares, the Amended Complaint should be dismissed because AST is immunized from liability for delivery of the shares to the State by reason of acting as Empire's transfer agent.

Section 1203(b) immunizes transfer agents from liability to owners of stock and provides:

> [u]pon the delivery in good faith of a duplicate certificated security to the State Escheator or the registration of an uncertificated security to the State Escheator pursuant to § 1201 of this title, the holder *and any transfer agent*, registrar or other person acting for or on behalf of the holder in executing or delivering such duplicate certificate or effectuating such registration, *is relieved of all liability of every kind to every person,* including any person acquiring the original of a certificated security or the duplicate of a certificated security issued to the State Escheator, *for any losses or damages resulting to any person by issuance and delivery to the State Escheator of the duplicate certificated security* or the registration to the holder's name of an uncertificated security.

12 Del. C. § 1203(b) (emphasis added). The Amended Complaint alleges that, at all times, AST was acting as Empire's transfer agent. (Amended Complaint, ¶ 3).

Additionally, because Plaintiff admits that on or about May 30, 2000, the stock certificates evidencing Plaintiff's ownership of the Empire shares were in Plaintiff's possession – having been sent to Plaintiff by AST – and that on or about October 20, 2004 AST delivered to the State of Delaware as unclaimed property the Empire shares owned by Plaintiff, the only reasonable inference is that the delivery of Plaintiff's Empire shares to the State of Delaware was accomplished by delivery of a duplicate certificated security. (Amended Complaint, ¶¶ 16, 17). Section 1203(b), therefore, applies to AST's delivery of Plaintiff's Empire shares to the State of Delaware. As stated in Section 1203(b), the delivery of the shares to the State relieves the transfer agent of "*all* liability of *every* kind to *every* person." See 12 Del. C. § 1203(b) (emphasis added). This broad relief from liability provides AST with immunity from actions "for any losses or damages resulting to any person by issuance and delivery" to the State of the certificates for shares of stock. For these reasons, Plaintiff cannot state a claim against AST for damages resulting from the delivery of Plaintiff's Empire shares to the State of Delaware.

While the Delaware courts have not discussed the immunity provided to transfer agents, such as AST, by Section 1203(b), California courts have discussed nearly identical provisions of that state's escheatment law and concluded that a corporation escheating stock is immune from an owner's suit for damages stemming from the delivery of the stock to the State and for any similar type of liability.[2] See Harris v. Verizon Comms., 46 Cal. Rptr. 3d 185, 188-189 (Cal. Ct. App. 2006); see also A.C.

---

[2] California's escheatment statute provides that: "[u]pon delivering a duplicate certificate or providing evidence of registration of the securities in uncertificated form to the Controller, the holder, [and] any transfer agent . . . shall be relieved from all liability of every kind to any person, including, but not limited to, any person acquiring the original certificate or the duplicate of the certificate issued to the Controller for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate or the registration of the uncertificated securities to the Controller. Harris v. Verizon Comms., 46 Cal. Rptr. 3d 185, 188 n.7 (Cal. Ct. App. 2006) (quoting Code Civ. Pro. § 1532).

Steelman v. Prudential Ins. Co. of America, No. S-06-2746, 2007 U.S. Dist. LEXIS 30149, *17 (E.D. Cal. April 4, 2007) (citing Harris, 46 Cal. Rptr. 3d 185). In Harris, the California appellate court found that the trial court properly granted defendant's motion to dismiss the complaint without leave to amend because: (1) the immunity conferred by the escheat statute was absolute; (2) plaintiff's interpretation that the immunity was conditional and vanished if the escheatment was wrongful would render the immunity meaningless because immunity comes into play *only* when the defendant is charged with wrongdoing; and (3) the legislature's adoption of a rule of absolute immunity was consistent with the purpose of the escheat statutes, which was to give the state, rather than the holders of unclaimed property, the benefit of its use. Harris, 46 Cal. Rptr. 3d at 188-189 (finding that without immunity, holders of unclaimed property concerned about lawsuits would likely err on the side of retaining rather than delivering unclaimed property to the state thereby depriving the state of the benefit of its use). The Delaware statute conferring immunity upon transfer agents differs from the California statute only insofar as it contains a requirement that shares must have been delivered to the State in good faith. See 12 Del. C. § 1203(b). Section 1203(d) provides:

> [f]or the purposes of this section, "good faith" means that: (1) Payment or delivery was made in a reasonable attempt to comply with this subchapter; (2) The person delivering the property was not a fiduciary then in breach of trust in respect to the property and had a reasonable basis for believing, based on the facts then known to the person, that the property was abandoned for the purposes of this subchapter; and (3) There is no showing that the records pursuant to which the delivery was made did not meet reasonable commercial standards of practice in the industry.

12 Del. C. § 1203(d).  The Amended Complaint does not allege that AST did not act in good faith, as defined by the Delaware statutes, when delivering the shares to the State. Cf. Vivari v. Francis, No. 1286, 1991 Del. Ch. LEXIS 84, at *16 (Del. Ch. May 6, 1991) (finding that mistake by defendant was not evidence that defendant acted in bad faith). Accordingly, because AST is immune from suit for damages stemming from the delivery of Plaintiff's Empire shares to the State, the Amended Complaint fails to state a claim against AST and must be dismissed.

**B.    The Amended Complaint Fails to
State A Claim For Negligence Against AST**

Even if AST is not immunized from suit for the escheatment of Plaintiff's Empire shares, Count II fails to state a claim against AST for negligence because the facts pled do not establish that AST owed a duty to Plaintiff – a required element to maintain a cause of action for negligence.

In order to be held liable in negligence, a defendant must have been under a legal obligation – a duty – to protect the plaintiff from the risk of harm which caused his injuries.  Fritz v. Yeager, 790 A.2d 469, 471 (Del. 2002); see also New Haverford P'ship v. Stroot, 772 A.2d 792, 798 (Del. 2001).  Because duty is essentially a question of whether the relationship between the parties gives rise to a legal obligation to act for the benefit of the injured party, the question of whether a duty of care exists depends upon the nature of the relationship between the parties.  Kuczynski v. McLaughlin, 835 A.2d 150, 153 (Del. Super. Ct. 2003).  Whether a duty exists is entirely a question of law for the Court to decide by reference to the body of statutes, rules, principles and precedents that make up the law.  Fritz, 790 A.2d at 471; see also Kuczynski, 835 A.2d at 153.

The Amended Complaint fails to allege a relationship between AST and Plaintiff that would give rise to a legal obligation of AST to act for the benefit of Plaintiff; therefore, the Amended Complaint fails to plead that AST owed a duty to Plaintiff. The Amended Complaint baldly alleges that "AST, as the authorized agent of Empire, had a duty to Empire and its shareholders, including Tertiaire, to account properly for the status of shares." (Amended Complaint, ¶ 30). The facts as pled simply do not establish any relationship between AST and Plaintiff from which such a duty could have arisen. While the Court may infer that AST's obligations to Empire as its "authorized agent" stemmed from a contract between Empire and AST, the allegations in Count II do not establish that any agency or contractual relationship between AST and Empire necessarily included duties of AST to Empire's shareholders or legally obligated AST to act for the benefit of Plaintiff. (Amended Complaint, ¶ 30).

While Plaintiff bases its claim for negligence against AST on the allegation that AST had a duty to account for the status of Plaintiff's shares, an examination of the rules and regulations regarding transfer agents reveals that agents, such as AST, are under no such obligation. (Amended Complaint, ¶ 30). Rule 17Ad-17, promulgated pursuant to Section 17 of the Securities and Exchange Act of 1934, addresses transfers agents' obligations to search for lost shareholders, and requires recordkeeping transfer agents to perform certain searches.[3] 17 CFR 240.17Ad-17. The Rule, however, states that a transfer agent need *not* conduct searches for a lost shareholder if "[t]he securityholder is

---

[3] The Rule defines a lost securityholder as "[t]o whom an item of correspondence that was sent to the securityholder at the address contained in the transfer agent's master securityholder file has been returned as undeliverable; . . . and [] [f]or whom the transfer agent has not received information regarding the securityholder's new address." 17 CFR 240.17Ad-17(b)(2)(i)-(ii). Plaintiff qualifies as a lost securityholder because the dividend checks sent to Plaintiff's address of record with AST were returned to AST as undeliverable.

not a natural person." 17 CFR 240.17Ad-17(a)(3)(iii). Because Plaintiff is not a natural

person, AST was under no legal duty to search and account for the status of Plaintiff's

shares.

Because the Amended Complaint has not adequately pled that AST owes a legally

cognizable duty to Plaintiff –a necessary element of a cause of action for negligence –

Count II of the Amended Complaint must be dismissed for failure to state a claim.

### C.    The Amended Complaint Fails To State A Claim For Breach of Contract Against AST

Count V fails to state a claim against AST for breach of contract because the

allegations of the Amended Complaint do not establish that Plaintiff qualifies as a third

party beneficiary to the contract between Empire and AST.

Under Delaware law, in order to qualify as a third party beneficiary of a contract

and have an enforceable right under that contract: (1) the contracting parties must have

intended that the third party benefit from the contract; (2) the benefit must have been

intended as a gift or in satisfaction of a pre-existing obligation to that person; and (3) the

intent to benefit the third party must be a material part of the parties' purpose in entering

into the contract. E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber & Resin

Intermediates, S.A.S., 269 F.3d 187, 196 (3d Cir. 2001); Guardian Constr. Co. v. Tetra

Tech Richardson, Inc., 583 A.2d 1378, 1386 (Del. Super. Ct. 1990). The intention of the

contracting parties is paramount in determining whether others have standing as third-

party beneficiaries. Hadley v. Shaffer, No. 99-144-JJF, 2003 U.S. Dist. LEXIS 14106, at

*14 (D. Del. Aug. 12, 2003). If it was not the promissee's intention to confer direct

benefits upon a third party, but rather the third party happens to benefit from the

performance of the promise either coincidentally or indirectly, then the third party will

have *no enforceable rights* under the contract.  Dupont, 269 F.3d at 196; see also Hadley,

2003 U.S. Dist. LEXIS 14106, at *14 (citing Guardian, 583 A.2d at 1386).  The question

of a party's status as a third party beneficiary to a contract is ultimately for the Court to

decide under applicable law.  Dupont, 269 F.3d at 197.

In the instant matter, the Amended Complaint plainly fails to plead facts

establishing that Plaintiff qualifies as a third party beneficiary entitled to enforce the

contract between Empire and AST.  In Count V, Plaintiff baldly alleges that "AST had

contractual duties to Empire" and "[t]he shareholders of Empire, including Tertiaire,

were and are third-party beneficiaries of the contract(s) between Empire and AST."

(Amended Complaint, ¶¶ 45-46).  Nowhere is it alleged that Empire and AST intended

that Plaintiff would benefit from the Empire-AST contract.  Nowhere is it alleged that

any benefit to Plaintiff from the Empire-AST contract was intended as a gift or to satisfy

a pre-existing obligation to Plaintiff.  Nowhere is it alleged that intent to benefit Plaintiff

was a material part of Empire and AST's purpose in entering into their contract.  The

facts as pled simply do not establish that Plaintiff was an intended third party beneficiary

of the Empire-AST contract.  The allegations that AST's contractual duties to Empire

included the duty to "account properly for the status of shares of the corporation and its

shareholders" do not establish that Plaintiff was anything more than an incidental

beneficiary of the Empire-AST contract.  (Amended Complaint, ¶ 45).  As an incidental

beneficiary, Plaintiff does not enjoy standing to bring suit on the Empire-AST contract.

See Triple C Railcar Service, Inc. v. City of Wilmington, 630 A.2d 629, 634 (Del. 1993).

Because the Amended Complaint fails to plead facts establishing that Plaintiff was an

intended third-party beneficiary entitled to enforce the Empire-AST contract, Count V

must be dismissed for failing to state a claim.

> **D.    The Amended Complaint Fails To**
> **State A Claim For Conversion Against AST**

Count VII of the Amended Complaint alleges that AST converted property

belonging to Plaintiff "[p]rior to the time the Empire shares owned by Tertiaire were paid

to the State of Delaware," but the Amended Complaint also concedes that "at all times

relevant hereto [AST] was the transfer agent for Empire." (Amended Complaint, ¶¶ 3,

57).

Conversion is an "act of dominion wrongfully exerted over the property of

another, in denial of his right, or inconsistent with it." Arnold v. Society for Savings

Bancorp, Inc., 678 A.2d 533, 536 (Del. 1996). A stockholder's shares are converted by

any act of control or dominion without the stockholder's authority or consent, and in

disregard, violation, or denial of his rights as a stockholder of the company. Id. To be

actionable, the exercise of control must be wrongful. Id.

There is nothing in the Amended Complaint which so much as suggests that AST

acted in any manner inconsistent with or outside its limited role as transfer agent. As

such, it performed duties to facilitate the transfer of stock certificates, including in this

case providing a replacement certificate to Plaintiff. Acting solely in its representative

capacity as transfer agent, at no time did AST exercise any right of ownership or

wrongful control over the Empire shares in question. See id.; see, e.g., Soviero v. Carroll

Group International, Inc., 27 A.D.3d 276, 813 N.Y.S.2d 49, 50 (N.Y. App. Div. 2006).

Because the Amended Complaint does not allege that AST was at any time acting other

than Empire's transfer agent regarding the shares, and because the Amended Complaint

is devoid of any facts supporting the allegation that AST's acts of control over the shares were wrongful, no possible conversion could have occurred *prior to the time* the Empire shares owned by Tertiaire were paid to the State of Delaware. Accordingly, Count VII must be dismissed for failing to state a claim.

## III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST ACS

The Amended Complaint fails to state a claim against ACS. Count III purports to state a claim against ACS for negligence and negligence per se, Count VI for breach of contract, and Count VII for conversion. ACS is immune from suit for these state law claims under the doctrine of sovereign immunity. Additionally, Count III fails to state a claim for negligence because, as a matter of law, ACS did not owe a duty to AWF. Further, Count III fails to state a claim for negligence per se because it does not adequately allege that ACS violated a statute, enacted for the safety of others, embodying a standard of conduct designed to protect Plaintiff from injury or harm. Finally, Count VI fails to state a claim for breach of contract because Plaintiff was not an intended third party beneficiary of ACS's contract with AST, and Count VII fails to state a claim for conversion because the Amended Complaint does not allege any acts by which ACS converted Plaintiff's shares.

### A.    This Court Should Dismiss Because ACS Is Immune From Suit

The Amended Complaint fails to state a claim against ACS because, as a matter of law, ACS is immune from Plaintiff's suit. ACS, as the State of Delaware's agent, is entitled to the State's sovereign immunity protection, thereby precluding it from liability in lawsuits such as this one.

In Plaintiff's original Complaint, it repeatedly acknowledges that ACS is the "authorized agent" for the State of Delaware. (Complaint, ¶¶ 28, 32, 34, 38 and 42). The Amended Complaint, however, removes all admissions by Plaintiff that ACS was acting as the authorized agent of the State of Delaware when Plaintiff's shares were escheated. (Amended Complaint, ¶¶ 28, 32, 34, 43). A party "cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991) (quoting United States v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984)); Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705, 707 (2d Cir. 1989) (finding that "[t]he amendment of a pleading does not make it any the less an admission of the party."). On the contrary, admissions in earlier complaints remain binding when a plaintiff files subsequent pleadings and the Court may consider them on a motion to dismiss under Rule 12(b)(6). Sulton v. Wright, 265 F. Supp. 2d 292, 295 (S.D.N.Y. 2003) (citing Willsea v. Theis, No. 98 Civ. 6773, 1999 U.S. Dist. LEXIS 22471, at *11 (S.D.N.Y. Aug. 5, 1999)). Thus, this Court may consider Plaintiff's prior admissions that ACS was acting as the authorized agent for the State of Delaware during the acts complained of in Plaintiff's Amended Complaint. Plaintiff's attempt to avoid the application of the doctrine of sovereign immunity to ACS by removing these admissions from the Amended Complaint, therefore, will be unavailing.

The doctrine of sovereign immunity in Delaware was established by the State Constitution. See Del. Const. art. I, § 9; Doe v. Cates, 499 A.2d 1175, 1181 (Del. 1985). Sovereign immunity precludes the existence of a cause of action against the State unless

the State has chosen to waive that immunity.  <u>Doe v. Cates</u>, 499 A.2d at 1182.  The State, therefore, may not be sued without its consent.  <u>Id.</u> at 1176; <u>see</u> <u>Pauley v. Reinoehl</u>, 84 A.2d 569, 573 (Del. 2004).

Article I, Section 9 of the Delaware Constitution provides that the only way to limit or waive the State's sovereign immunity is by act of the General Assembly.  <u>Doe v. Cates</u>, 499 A.2d at 1176; <u>Pauley</u>, 84 A.2d at 573.  Thus, unless there is a statute by which the General Assembly can be said to have waived the defense of sovereign immunity, suit against the State or its agents for damages caused by negligent acts of the State's employees or agents must fail.  <u>See</u> <u>Doe v. Cates</u>, 499 A.2d at 1176-1177; <u>see also</u> <u>Pauley</u>, 84 A.2d at 576; <u>Murphy v. Correctional Medical Services, Inc.</u>, No. 03C-04-271-PL, 2005 WL 2155226, at *4 (Del. Super. Ct. Aug. 19, 2005) ("Even though the States may choose to waive their sovereign immunity from [] common law claims, the Court will not presume that they have done so absent a compelling legislative statement to that effect.").

Delaware's Tort Claims Act, 10 Del. C. §§ 4001-4005, codified existing common law principles of sovereign immunity.  <u>See</u> <u>Doe v. Cates</u>, 499 A.2d at 1180 (discussing purpose of Tort Claims Act).  Significantly, the Delaware Supreme Court has described sovereign immunity in Delaware as "virtually absolute."  <u>Id.</u>  In so noting, the Delaware Supreme Court has found that the State's Tort Claims Act must be applied to further *limit* the State's liability where it has, by some means independent of the Tort Claims Act, waived immunity.  <u>See</u> <u>Doe v. Cates</u>, 499 A.2d at 1181 (finding that State did not independently waive sovereign immunity under 19 Del. C. § 6511 because there was no insurance coverage for the risks presented and there was no other independent waiver of

sovereign immunity).  Where there is statutory evidence that the State intended to waive its sovereign immunity for a particular agent of the State, the Tort Claims Act will operate to protect the State and its employees and agents from liability where their actions: (1) arose from official duties involving the exercise of discretion; (2) were done in good faith; and (3) were without gross or wanton negligence.  See 10 Del. C. § 4001; Murphy, 2005 WL 2155226, at *3 (citing Doe v. Cates, 499 A.2d 1175 and Space Age Products, Inc. v. Gilliam, 488 F. Supp. 775 (D. Del. 1980)).  Consequently, for a plaintiff to prevail in a suit against the State, it must show that: "(1) the State has waived the defense of sovereign immunity for the actions mentioned in the complaint; and (2) the State Tort Claims Act does not bar the action."  Pauley, 84 A.2d at 573.

ACS is immune from this lawsuit because, as the State of Delaware's agent, it is entitled to the State of Delaware's sovereign immunity protection.  As discussed above, Plaintiff repeatedly admits in its original Complaint that ACS is the "authorized agent" for the State of Delaware.  (Complaint, ¶¶ 28, 32, 34, 38 and 42).  Plaintiff cannot change this fact simply by amending the Complaint to remove these admissions.  Furthermore, the Amended Complaint recognizes that ACS's acts regarding the escheatment of Plaintiff's Empire shares were performed pursuant to ACS's contract with the State of Delaware.  (Amended Complaint, ¶¶ 4, 36).  In fact, Plaintiff bases its claim for liability against ACS on the allegation that ACS assumed the obligations of the State of Delaware pursuant to the State's contract with ACS.  (Amended Complaint, ¶ 36).

A state has no power to act apart from the actions of its agents and employees. See Murphy, 2005 WL 2155226, at *4.  ACS, in its capacity as authorized agent for the State of Delaware and acting for the State pursuant to the parties' contract, enjoys

sovereign immunity from claims against it unless a statutory exception applies.  The

Amended Complaint fails to cite any statute whereby Delaware's General Assembly has

waived sovereign immunity from liability in lawsuits such as the instant one.  Because

the Amended Complaint does not point to any waiver of sovereign immunity by the

General Assembly, Plaintiff has not met the requirements for bringing state law claims

against ACS.  See Doe v. Cates, 499 A.2d at 1176; Pauley, 84 A.2d at 573.  Therefore,

this lawsuit against ACS is barred by the doctrine of sovereign immunity.

> **B.**     **The Amended Complaint Fails to**
> **State A Claim For Negligence Against ACS**

Even if the Amended Complaint adequately pled that ACS's immunity has been

waived, which it does not, Count III would fail to state a claim against ACS for

negligence because it fails adequately to allege that ACS owed a duty to Plaintiff.

Moreover, to the extent that Plaintiff has already recovered from the State of Delaware

for any obligations to Plaintiff under the State's escheatment statutes, Plaintiff may not

double-recover from ACS.

As discussed above, in order to be held liable in negligence, a defendant must

have been under a legal obligation – a duty – to protect the plaintiff from the risk of harm

which caused his injuries.  Fritz, 790 A.2d at 471; see also New Haverford P'ship., 772

A.2d at 798.  In addition to examining the relationship between the parties, when

determining whether a duty of care exists courts applying Delaware law will also focus

on the foreseeable consequences.  Kuczynski, 835 A.2d at 153-154.  The allegations of

the Amended Complaint reveal that the purported relationship between Plaintiff and ACS

is not one in which ACS could have foreseen the consequences alleged to have resulted

to Plaintiff.  Plaintiff is alleged to own *Empire* shares.  (Amended Complaint, ¶ 9).

Plaintiff's communications regarding these shares were with *AST*.  (Amended Complaint, ¶¶ 11, 13, 16).  *Empire*, or its agent *AST*, is alleged to have delivered these shares to the State of Delaware.  (Amended Complaint, ¶ 17).  The only potential connection between ACS and Plaintiff, as alleged in the Amended Complaint, is that ACS possibly sold the Empire shares on behalf of the State of Delaware, after the shares were delivered to the State by *Empire* or *AST*.  (Amended Complaint, ¶¶ 17, 18).  Even this allegation is uncertain, as the Amended Complaint alleges that the State of Delaware possibly sold the Empire shares directly, without using ACS.  (Amended Complaint, ¶ 18).  Thus, the Amended Complaint fails to allege a relationship between ACS and Plaintiff that would create a legal obligation, or duty, of ACS to act for the benefit of Plaintiff.

In Count III against ACS for negligence, Plaintiff alleges that "[t]he State of Delaware is obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment" and "pursuant to its contract with the State of Delaware, ACS assumed the [State of Delaware's] duties owed to shareholders of Delaware corporations, such as Tertiaire."  (Amended Complaint, ¶¶ 34, 36).  The Amended Complaint does not allege that ACS owed any duty to Delaware shareholders – including Plaintiff – *apart from* the duties owed to shareholders by the State of Delaware.  Given that the only alleged source of ACS's obligations and duty to Plaintiff derives from ACS's relationship with the State of Delaware, ACS is *no more responsible* to Plaintiff than the State of Delaware.  Plaintiff has not included the State of Delaware among the defendants in this lawsuit.  Plaintiff's failure to join the State of Delaware in this action may be attributed to the State's immunity to any lawsuit by Plaintiff, or the possibility that Plaintiff has already obtained recovery from the State for the escheatment of Plaintiff's shares.  In

either case, because ACS's alleged liability to Plaintiff in negligence is solely derived from the State of Delaware's obligations to the shareholders of Delaware corporations, ACS is therefore entitled to the same *defenses* as the State of Delaware.  For the reasons discussed above, ACS is entitled to the State's sovereign immunity protection.  Additionally, since Plaintiff has already been completely reimbursed for the value of the shares sold by the State of Delaware, any recovery from ACS on those same obligations is barred.

Even if ACS is not found to be entitled to the defenses of the State of Delaware, Count III still would fail to state a claim for negligence as a matter of law.  The Amended Complaint alleges that the State of Delaware is obligated b*y statute and regulation* to confirm the appropriateness of property tendered for escheatment and that, pursuant to its contract with the State, ACS assumed the State of Delaware's *statutory duties* to shareholders of Delaware corporations.  (Amended Complaint, ¶¶ 34, 36).  The Delaware Supreme Court has recognized that, where a plaintiff identifies a statute that imposes a duty, that statute may provide the source of a defendant's duty in a claim for common law negligence.  See New Haverford P'ship, 772 A.2d at 798.  The Amended Complaint makes the bald assertion that a statute or regulation exists to impose a duty on ACS to act for Plaintiff without identifying any existing statute or regulation that *in fact exists* to impose such a duty on ACS.  Such bald assertions will not be credited in deciding a Motion to Dismiss.  See Law Offices of Curtis V. Trinko, L.L.P., 309 F.3d at 74.  Because the Amended Complaint fails to identify any statute that imposes a duty on ACS to Plaintiff, the Amended Complaint fails to plead a necessary element of a cause of

action for negligence.   Accordingly, Count III of the Amended Complaint must be dismissed for failing to state a claim.

      **C.**    **The Amended Complaint Fails to State A Claim For Negligence Per Se Against ACS**

Even if the Amended Complaint adequately pled that ACS's immunity has been waived, which it does not, Count III would fail to state a claim for negligence per se because it fails to allege that ACS violated a statute enacted for the safety of others that embodies a standard of conduct designed to protect Plaintiff from injury or harm.

      **1.**    **The Amended Complaint Does Not Allege Violation of a Statute Enacted for the Safety of the Public**

Count III of the Amended Complaint purports to assert a claim against ACS for negligence per se.  (Amended Complaint, ¶ 38).  The doctrine of negligence per se is well-established in Delaware.  Hall v. Bioquest Laboratories, Inc., No. 87A-JL3, 1991 Del. Super. LEXIS 245, at *5 (Del. Super. Ct. June 17, 1991).  "Under Delaware law, conduct in violation of a statute, ordinance, rule, or regulation *enacted for the safety of others* and having the force of law constitutes negligence per se."  Carroll v. Getty Oil Co., 498 F. Supp. 409, 412 (D. Del. 1980) (emphasis added) (finding that express purpose of statute and regulations at issue was safety); see also Tydings v. Lowenstein, 505 A.2d 443, 446 (Del. 1986); Sammons v. Ridgeway, 293 A.2d 547, 549 (Del. 1972); Hall, 1991 Del. Super. LEXIS 245, at *5.  The Delaware courts have consistently found that negligence per se involves the violation of a statute or ordinance that has been enacted for the *safety* of others.  See Carroll, 498 F. Supp. at 412; see also Tydings, 505 A.2d at 446; Sammons, 293 A.2d at 549 (noting historical relationship between criminal statutes and the development of the doctrine of negligence per se and finding that all

reported opinions of Delaware courts on the doctrine involved criminal statutes or ordinances, and almost all involved rules of the road); Hall, 1991 Del. Super. LEXIS 245, at *5.

Plaintiff's Amended Complaint fails to state a claim against ACS for negligence per se because it fails to allege that ACS violated a statute or regulation that has been enacted for the safety of others. The Amended Complaint alleges that "ACS failed to confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property." (Amended Complaint, ¶ 37). The Amended Complaint ostensibly describes the statutes and regulations to which this allegation refers as those requiring the State of Delaware "to confirm the appropriateness of property tendered for escheatment" intended to benefit "shareholders of Delaware corporations." (Amended Complaint, ¶¶ 34-35). The Amended Complaint does not identify the specific statutes or regulations upon which the negligence per se claim is based. The Amended Complaint does not allege that these statutes or regulations were enacted to protect the *safety* of others, and contains no allegations that would even indicate that these statutes or regulations were enacted to protect the safety of others. Because the Amended Complaint entirely fails to plead that ACS violated a statute, ordinance, rule, or regulation which has been enacted for the *safety of others*, the Amended Complaint fails to state a claim for negligence per se, and Count III must be dismissed.

### 2. The Amended Complaint Does Not Allege That ACS Deviated From a Statutorily Defined Standard Of Conduct

In addition to failing to plead that ACS violated a statute or regulation enacted for the safety of others, Count III must be dismissed because it also fails to plead the essential elements of a negligence per se claim. To establish a cause of action for

negligence per se under Delaware law, a plaintiff must show: "(1) that the statute, ordinance, rule or regulation invoked by plaintiff embodies a 'standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member,' (2) that the defendant is a person required to conform to the minimum standards so imposed, and (3) that the defendant has in fact deviated from those standards." Carroll, 498 F. Supp. at 412 (quoting Rabar v. E.I. Dupont de Nemours & Co., Inc., 415 A.2d 499, 503 (Del. Super. Ct. 1980)); see also Tydings, 505 A.2d at 446 (noting that licensing statutes do not define a standard of conduct); Wharton v. Worldwide Dedicated Services, No. 04C-02-035, 2007 WL 404770, at *2 (Del. Super. Ct. Feb. 2, 2007); Hall, 1991 Del. Super. LEXIS 245, at *5 (noting that plaintiff must still show proximate cause).

In the instant matter, the Amended Complaint does not state a prima facie claim against ACS for negligence per se. The Amended Complaint fails to identify a single statute or regulation providing a standard of conduct that ACS has allegedly violated. The Amended Complaint's bare allegations that "[t]he State of Delaware is obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment," and that ACS assumed this obligation, are insufficient to remedy this deficiency. (Amended Complaint, ¶¶ 34, 36). In order to allege a cause of action for negligence per se, the plaintiff must show that the defendant has violated a standard of behavior set by the legislature via statute. See Gordon v. Nat'l Railroad Passenger Corp., No. 10753, 2002 WL 550472, at *7 (Del. Ch. April 5, 2002). Because the Amended Complaint fails to identify a single Delaware statute or regulation setting forth a standard of behavior set by the Legislature, the Amended Complaint fails to plead an essential

element of a cause of action for negligence per se.  Moreover, because the Amended

Complaint fails to plead the first element of a negligence per se cause of action, it also

fails to plead the remaining elements, which derive from the standard of conduct required

in the first element.  Consequently, the Amended Complaint fails to state a claim for

negligence per se, and Count III must be dismissed.

### D.    The Amended Complaint Fails To State A Claim For Breach of Contract Against ACS

Count VI of the Amended Complaint purports to state breach of contract claim

against ACS.  Like the breach of contract claim against AST, Count VI fails to state a

claim because Plaintiff does not allege that it had a contract with ACS, and the facts pled

simply do not establish that Plaintiff qualifies as a third party beneficiary to the contract

between AST and ACS.

As discussed above, under Delaware law, a party qualifies as a third party

beneficiary with enforceable rights under a contract only when: (1) the contracting parties

intended that the third party benefit from the contract; (2) the benefit was intended as a

gift or in satisfaction of a pre-existing obligation to that person; and (3) the intent to

benefit the third party was a material part of the parties' purpose in entering into the

contract.  Dupont, 269 F.3d at 196; Guardian, 583 A.2d at 1386; see supra § II. C.  None

of these circumstances are present in the instant matter.  Nowhere is it alleged that AST

and ACS intended that Plaintiff, or any shareholders of Delaware corporations, would

benefit from the AST-ACS contract.  Further, the Amended Complaint does not allege

that AST and ACS intended their contract to benefit Plaintiff as a gift to Plaintiff, or in

satisfaction of any obligation to Plaintiff.  Finally, the facts do not establish that intent to

benefit Plaintiff was a material part of the AST-ACS contract.  Accordingly, Plaintiff has

not established that it is a third party beneficiary entitled to maintain a breach of contract action against ACS, and Count VI fails to state a claim, as a matter of law.

To the extent that there may be a third-party beneficiary, albeit an incidental one, to the AST-ACS contract, the beneficiary would be Empire. The Amended Complaint alleges that "AST contracted with ACS to determine . . . whether shares issued by certain corporations for which AST served as transfer agent qualified as unclaimed property" and that "AST delegated to ACS . . . authority to determine whether the Empire shares [] qualified as unclaimed property." (Amended Complaint, ¶¶ 50-51). Empire, as a Delaware corporation and issuer of stock, is obligated under Delaware law to determine whether any of its shares qualify as unclaimed property, and if so, to report that property to the State of Delaware. See 12 Del. C. §§ 1198, 1199. It is Empire, not Plaintiff, that might benefit from the alleged contract between AST and ACS to determine whether Empire shares qualify as unclaimed property. To the extent that Plaintiff claims that Empire's reporting obligations benefit Plaintiff, Plaintiff would be an incidental *fourth* party beneficiary to the AST-ACS contract, an interest that, under Delaware law, is *not* entitled to maintain a cause of action for breach of contract.

Because the allegations of the Amended Complaint fail to establish that Plaintiff qualifies as a third party beneficiary entitled to enforce the contract between AST and ACS, Count VI must be dismissed for failing to state a claim.

Furthermore, to the extent the Amended Complaint alleges that ACS "assumed the duties" AST allegedly owed to Plaintiff, ACS asserts AST's defenses to the Amended Complaint, as discussed above. (Amended Complaint, ¶ 52). See supra §§ II. A-C.

**E.    The Amended Complaint Fails to
Underline State A Claim For Conversion Against ACS**

Count VII fails to state a claim for conversion against ACS because the Amended

Complaint does not allege that ACS exercised any wrongful control or dominion over

Plaintiff's Empire shares for which it is not immune.

Conversion is an "act of dominion wrongfully exerted over the property of

another, in denial of his right, or inconsistent with it."  Arnold, 678 A.2d at 536.  A

stockholder's shares are converted by any act of control or dominion without the

stockholder's authority or consent, and in disregard, violation, or denial of his rights as a

stockholder of the company.  Id.  To be actionable, the exercise of control must be

wrongful.  Id.

The facts of the Amended Complaint do not establish that ACS exercised any

wrongful dominion or control over Plaintiff's Empire shares.  Count VII's claim for

conversion against ACS simply incorporates the prior allegations of the Amended

Complaint and alleges that "[p]rior to the time the Empire shares owned by Tertiaire were

paid to the State Escheator, the Defendants, acting individually or in combination,

converted property belonging to Plaintiff."  (Amended Complaint, ¶ 57).  The Amended

Complaint contains no facts supporting the allegation that ACS converted property

belonging to Plaintiff *prior to the time the Empire shares were paid to the State of

Delaware*.  The Amended Complaint alleges that Empire, either directly or through AST,

delivered Plaintiff's shares *to the State of Delaware*.  (Amended Complaint, ¶ 17).   The

shares are then alleged to have been sold by either the State of Delaware directly or the

State acting through ACS.  (Amended Complaint, ¶ 18).  The Amended Complaint is

completely devoid of any facts supporting the allegation that ACS exerted any control over the shares *prior* to their delivery to the State of Delaware.

To the extent that the conversion claim against ACS is based on ACS's sale of the shares *after* their delivery to the State of Delaware by Empire, the Amended Complaint expressly states that the sale was accomplished either directly by the State of Delaware, or by the State of Delaware acting through ACS, for which ACS would be entitled to the defense of sovereign immunity. (Amended Complaint, ¶¶ 17-18). See supra § III. A. Additionally, the Complaint and Amended Complaint acknowledge that ACS's actions with respect to the shares were taken pursuant to ACS's contract with the State of Delaware and while ACS was acting as the State's agent. (Complaint, ¶¶ 28, 32, 34, 38 and 42; Amended Complaint, ¶¶ 4, 36). Because ACS was acting solely in its representative capacity as agent for the State of Delaware, at no time did ACS exercise any right of ownership or wrongful dominion over the Empire shares in question and therefore did not convert that property to itself. See Arnold, 678 A.2d at 536; see, e.g., Soviero, 813 N.Y.S.2d at 50.

Accordingly, Count VII must be dismissed as to ACS for failing to state a claim.

## CONCLUSION

For all of the foregoing reasons and principles of law, Defendants American Stock Transfer & Trust Co. and Affiliated Computer Services, Inc. respectfully request that this Court dismiss the Amended Complaint of Plaintiff, A.W. Financial Services,

S.A., together with such other, further and different relief as to the Court deems just and

proper.

Dated:  May 2, 2008

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

By:  _____/s_____

Steven A. Haber (SH4739)
Kellie M. MacCready (KM3024)
Michael S. Pepperman (MP9163)
One Penn Center - 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000
(215) 665-3165 (facsimile)


Attorneys for Defendants American Stock Transfer & Trust
Co. and Affiliated Computer Services, Inc.