UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

                     :

A.W. FINANCIAL SERVICES, S.A.,
as successor in interest to TERTIAIRE      :
INVESTISSEMENT, S.A.,

                     :

            Plaintiff,

                     :

       - against -                         07 CIV 8491 (SHS) (RLE)

                     :

EMPIRE RESOURCES, INC., AMERICAN
STOCK TRANSFER & TRUST COMPANY, and  :
AFFILIATED COMPUTER SERVICES, INC.,

                     :

           Defendants.

                     :

-------------------------------------------------------- X

## MEMORANDUM IN SUPPORT OF DEFENDANT EMPIRE RESOURCES, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Defendant Empire
Resources, Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ (ii)

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

    A.    The Parties ............................................................................................ 3

    B.    The ITI/Empire Merger........................................................................ 4

    C.    Tertiaire's Lost Stock Certificate........................................................ 4

    D.    The Escheatment of Tertiaire's Empire Shares .................................... 5

    E.    AWF Allegedly Contacts Empire........................................................ 5

    F.    AWF's Lawsuit.................................................................................... 6

I.      THIS MOTION.......................................................................................... 6

    A.    The New Rule 12(b)(6) Standard.......................................................... 6

    B.    Choice Of Law...................................................................................... 7

II.     SECTION 1203 OF TITLE 12 OF THE DELAWARE Code EXPRESSLY BARS ALL OF PLAINTIFF'S CLAIMS AGAINST EMPIRE.................................. 9

III.    PLAINTIFF FAILS TO STATE A claim for NEGLIGENCE........................ 12

IV.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY  CLAIM FAILS AS A MATTER OF LAW...................................................................................... 14

V.     PLAINTIFF'S CONVERSION CLAIM FAILS BECAUSE THERE IS NO ALLEGATION THAT EMPIRE EVER EXERCISED DOMINION OR CONTROL OVER TERTIAIRE'S STOCK ................................................ 15

VI.    PLAINTIFF'S FAILURE TO REGISTER CLAIM SHOULD BE DISMISSED .......... 16

VII.   PLAINTIFF'S SPECIFIC PERFORMANCE CLAIM FAILS BECAUSE MONEY DAMAGES ARE AN ADEQUATE REMEDY............................. 18

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **PAGE(S)**

Alessi v. Beracha,
849 A.2d 939 (Del. Ch. 2004)...................................................................................14

Arnold v. Soc'y for Sav. Bancorp, Inc.,
678 A.2d 533 (Del. 1996) ..................................................................................14, 16

Bell Atl. Corp. v. Twombly,
127 S. Ct. 1955 (2007)...............................................................................................7

Bible v. En Enters., Inc.,
1992 WL 296451 (Del. Ch. Oct. 16, 1992) ..............................................................19

In re BP p.l.c. Derivative Litig.,
507 F. Supp. 2d 302 (S.D.N.Y. 2007)....................................................................7, 8

DiFolco v. MSNBC Cable L.L.C.,
2007 WL 959085 (S.D.N.Y. Mar. 30, 2007) ..........................................................3, 7

Duphily v. Del. Elec. Co-op., Inc.,
662 A.2d 821 (Del. 1995) ....................................................................................12, 14

Edgar v. MITE Corp.,
457 U.S. 624 (1982)...................................................................................................8

Gen. Motors Corp. v. Wolhar,
686 A.2d 170 (Del. 1996) ....................................................................................12, 13

Gildor v. Optical Solutions, Inc.,
2006 WL 1596678 (Del. Ch. June 5, 2006)..............................................................18

GlobalNet Financial.Com, Inc., v. Frank Crystal & Co.,
449 F.3d 377 (2d Cir. 2006).......................................................................................8

Hall v. Dorsey,
1998 WL 960774 (Del. Nov. 5, 1998).......................................................................14

Hyman v. NYSE,
848 N.Y.S.2d 51 (1st Dep't 2007)............................................................................14

Int'l Bus. Machs. Corp. v. Comdisco, Inc.,
1993 WL 259102 (Del. June 30, 1993).....................................................................16

Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487 (1941)..................................................................................................7

LeVan v. Independence Mall, Inc.,
940 A.2d 929 (Del. 2007) ......................................................................................11

Leatherbury v. Greenspun,,
939 A.2d 1284 (Del. 2007) ................................................................................11, 12

McGowan v. Ferro,
859 A.2d 1012 (Del. Ch. 2004), aff'd, 873 A.2d 1099 (Del. 2005) .............................16

Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc.,
535 A.2d 1357 (Del. 1987) ................................................................................14, 15

Rosa v. City Univ. of N.Y.,
2007 WL 1001416 (S.D.N.Y. Apr. 2, 2007).................................................................3

Schwimmer v. Allstate Ins. Co.,
176 F.3d 648 (2d Cir. 1999)........................................................................................7

Shaw v. Agri-Mart, Inc.,
663 A.2d 464 (Del. 1995) ..........................................................................................15

Those Certain Underwriters at Lloyd's London v. Nat'l Installment Ins. Servs.,
2007 WL 1207106 (Del. Ch. Feb. 8, 2007) ...............................................................13

U.S. Dimension Prods., Inc. v. Tassette, Inc.,
290 A.2d 634 (Del. 1972) ..........................................................................................19

Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.,
510 F.3d 474 (4th Cir. 2007) .....................................................................................11

Wall v. CSX Transp., Inc.,
471 F.3d 410 (2d Cir. 2006).........................................................................................7

Winn v. Schafer,
499 F. Supp. 2d 390 (S.D.N.Y. 2007).........................................................................8

**STATUES**

Del. Code Ann. tit. 6 §8-401(a) ............................................................................17, 18

Del. Code Ann. tit. 6 §8-401(b) ...................................................................................18

Del. Code Ann. tit. 8 §219(c) .................................................................................................. 15

Del. Code Ann. tit. 12 §1145 .................................................................................................. 6

Del. Code Ann. tit. 12 §1198 .................................................................................................. 10

Del. Code Ann. tit. 12 §1203(a) ......................................................... 9, 10, 11, 12, 14, 15, 17

Del. Code Ann. tit. 12 §1203(b) ......................................................................................... 10, 11

RESTATEMENT (SECOND) OF TORTS § 223 ............................................................................... 16

Defendant Empire Resources, Inc. ("Empire") respectfully submits this memorandum in support of its Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As shown below, not only are all of plaintiff's multiple causes of action barred by an express statutory release and discharge, but plaintiff fails to otherwise adequately plead each of its claims.

<u>**PRELIMINARY STATEMENT**</u>

The allegations against Empire in the Amended Complaint are actually quite remarkable: they are <u>void</u> of any facts tying Empire to the alleged injury, they <u>ignore</u> an express statutory provision -- previously pointed out to plaintiff -- <u>exempting</u> Empire from any liability under any legal theory, and, notwithstanding the philosophy followed by plaintiff that, when the facts and law are against you, plead as many causes of action as you can dream up, they fail to plead basic elements of each of the claims asserted. Thus, even giving plaintiff every inference it is entitled to on a Rule 12(b)(6) motion, the Amended Complaint does not come close to stating a cause of action against Empire.

Plaintiff A.W. Financial Services, S.A. ("AWF") brought this lawsuit against Empire and co-defendants American Stock Transfer & Trust Company ("AST") and Affiliated Computer Services, Inc. ("ACS") in an attempt to recover the loss allegedly suffered by plaintiff when shares of Empire stock owned by plaintiff were escheated to the State of Delaware as abandoned property at a time when the stock was, allegedly, not legally or factually abandoned. Plaintiff asserts claims for negligence, breach of fiduciary duty, conversion, failure to register, and specific performance against Empire even though there are no factual allegations in the Amended Complaint that Empire had anything to do with the escheatment process.

Thus, not surprisingly, numerous alternate grounds exist for dismissing this action as against Empire:

First, Empire is a Delaware corporation and all of plaintiff's claims against Empire are barred by the plain language of Section 1203 of Title 12 of the Delaware Code, which provides that the delivery of stock to the Delaware Escheator terminates the legal relationship between the issuer and the owner of the stock and releases and discharges the issuer from any and all liability to the owner by reason of the delivery of the property, regardless of whether such property is, in fact, abandoned, and that the delivery of the property to the Escheator is a conclusive defense in any action brought by the owner.  See Point II.

Second, the Amended Complaint fails to state a claim for negligence given that it alleges absolutely no facts from which it can be inferred that Empire breached any duty owed to plaintiff or that any action by Empire was the proximate cause of plaintiff's claimed loss.  See Point III.

Third, the breach of fiduciary duty claim fails as a matter of law because Empire, as a corporate entity, does not owe fiduciary duties.  Further, there is no fiduciary duty to maintain accurate stock records, which is the only duty Empire allegedly breached.  See Point IV.

Fourth, plaintiff's conversion claim fails because there is no allegation, nor could there be, that Empire ever exercised dominion or control over the escheated shares.  See Point V.

Fifth, plaintiff's failure to register claims fails because that is not a cause of action and the Amended Complaint fails to allege any supporting facts.  See Point VI.

Finally, plaintiff's claim for specific performance fails because Empire's stock is available on the open market and not unique and, therefore, money damages are an adequate remedy.  See Point VII.

## STATEMENT OF FACTS

This Statement of Facts is drawn from the factual allegations of the Amended Complaint and the documents relied upon by plaintiff therein. See, e.g., DiFolco v. MSNBC Cable L.L.C., 2007 WL 959085, at *2 (S.D.N.Y. Mar. 30, 2007) ("The Court may consider materials of which the plaintiff had notice and relied upon in framing his complaint, as well as materials of which judicial notice may be taken"); Rosa v. City Univ. of N.Y., 2007 WL 1001416, at *1 (S.D.N.Y. Apr. 2, 2007) ("The Court will consider materials outside the record that Plaintiff relied upon in drafting the complaint or that are integral to a complaint if there are no disputes as to the authenticity, accuracy and relevance of such materials"). In deciding a motion to dismiss, a court must accept as true well-pleaded allegations of fact and all reasonable inferences to be drawn therefrom, but not plaintiff's mere conclusions. See DiFolco, 2007 WL 959085, at *2 ("The Court, however, need not give credence to plaintiff's conclusory allegations or legal conclusions offered as pleadings") (internal quotation marks and citations omitted).[1]

### A.    The Parties

According to the Amended Complaint, on January 11, 1994, plaintiff's predecessor, Tertiaire Investissement, S.A. ("Tertiaire"), purchased forty shares of a company called Integrated Technology USA, Inc. ("ITI"). See Am. Compl. ¶ 7. Through a succession of mergers completed in December 2001, plaintiff AWF, a French corporation with its principle place of business in Paris, became the successor to Tertiaire. See id. ¶ 1.

Defendant Empire is a Delaware corporation with its principal place of business in New Jersey; its common stock is listed on the American Stock Exchange. See Id. ¶ 2.

---

[1] Empire does not concede the truth of the allegations of the Amended Complaint and relies on the alleged facts solely for purposes of this Motion to Dismiss.

Defendant AST is a New York-based company that, at all relevant times, has served as Empire's transfer agent. Id. ¶ 3. AST thus had contractual duties to Empire, including, among other things, to account properly for the status of its shares and its shareholders. Id. ¶¶ 30, 45.

Defendant ACS is a Delaware corporation based in Dallas, Texas; its stock is listed on the New York Stock Exchange. Id. ¶ 4. ACS has a contract with Delaware to perform services for Delaware concerning unclaimed (escheated) property. Id. ACS also has a contract with AST to determine, among other things, whether shares issued by certain corporations for which AST serves as transfer agent qualify as unclaimed property, pursuant to which contract AST delegated to ACS authority to determine whether the Empire shares owned by plaintiff qualified as unclaimed property under the laws of Delaware. See id. ¶¶ 50-51.

**B.    The ITI/Empire Merger**

In September 1999, ITI merged with and into Empire, with the surviving company's name being Empire. Id. ¶ 8. The 40 shares of ITI owned by Tertiaire ultimately became 30,426 shares of Empire. See id. ¶ 9.

**C.    Tertiaire's Lost Stock Certificate**

Plaintiff alleges that in April 2000, Tertiaire wrote to Empire inquiring about its shares. Id. ¶ 10. On May 4, 2000 (presumably in response to Tertiaire's letter), AST, as Empire's transfer agent, wrote to Tertiaire to "acknowledge your recent letter regarding the loss of the above certificates [IT0065], against which we have placed a 'STOP TRANSFER' notation on our records." Id. ¶ 11. Plaintiff alleges Tertiaire never received the original stock certificate but, nevertheless, executed a required Affidavit of Loss and Indemnity Agreement and purchased the required surety bond. Id. ¶¶ 12 - 14. Plaintiff further alleges that the Affidavit of Loss and Indemnity Agreement stated that Tertiaire was "'presently known as Tertiaire Development,

S.A.' stated its address as '47 Rue de Chaillot, Paris 75116,' and its telephone number as '01 56 62 2100.'" Id. ¶ 15. Plaintiff, however, failed to check a box on that Agreement to denote that this address was meant to be a permanent address change (from its prior address in Israel). See Declaration of Deborah A. Maher, sworn to May 2, 2008, Exh. 1. On or about May 30, 2000, a replacement certificate numbered IT0328 was sent to Tertiaire by AST. See id. ¶ 16.

**D.**    **The Escheatment of Tertiaire's Empire Shares**

According to plaintiff, on or about October 20, 2004, "Empire -- either directly or through AST, its authorized agent -- delivered to the State of Delaware as unclaimed (escheated) property the Empire shares owned by Tertiaire." Id. ¶ 17. Thus, the only allegation of any participation by Empire in the escheatment process is wholly conclusory. Moreover, there are no factual allegations that Empire made the decision to make, or was even aware of, the escheatment. In fact, plaintiff alleges that Empire appointed AST as its transfer agent with the duty to properly account for Empire's shares and shareholders (see id. ¶ 45) and that AST, in turn, contracted with ACS to determine if and when Empire shares needed to be escheated to Delaware (see id. ¶ 51). Thus, the only plausible inference to be drawn from plaintiff's allegations is that Empire retained AST as its transfer agent to handle all stock-related matters and AST, in turn, contracted with ACS to handle escheatment, so that Empire was twice removed from the escheatment process.

In any event, according to the Amended Complaint, in February 2005, the State of Delaware "directly or through ACS" sold plaintiff's Empire stock, 5,426 shares at $4.0395 per share and 25,000 shares at $3.8133 per share. Id. ¶ 18.

**E.**    **AWF Allegedly Contacts Empire**

Also per the Amended Complaint, on March 29, 2006, more than five years after Tertiaire (which became AWF) last corresponded with Empire, AWF wrote to Empire and

requested that Tertiaire's Empire shares be re-registered in the name of AWF. <u>See id</u>. ¶ 19.

Then, "[i]n or about April 2006, . . . [plaintiff] learned for the first time that the Empire shares

owned by Tertiaire had been escheated by Empire, through its authorized agent AST to the State

of Delaware, through ACS." <u>Id</u>. ¶ 21.

      F.     **<u>AWF's Lawsuit</u>**

          On September 28, 2007, plaintiff brought suit against Empire, AST and ACS to

recover damages allegedly incurred when Tertiaire's Empire shares were escheated to Delaware.

On April 4, 2008, plaintiff filed an Amended Complaint. Plaintiff alleges that if not for the

escheatment, it would have sold those shares during a brief spike in the market price of Empire

common stock and now seeks damages for the difference between the value of the shares as

liquidated by the State of Delaware, which price plaintiff has recovered from Delaware, and the

price of the Empire shares at the time when plaintiff asserts it would have sold the shares (<u>plus</u>

certain dividend payments, <u>plus</u> interest, and <u>plus</u> the loss in value of the dollar against the Euro).

<u>Id</u>. ¶¶ 22, 28, 43, 58 and 61.[2] Plaintiff asserts causes of action against Empire for negligence,

breach of fiduciary duty, conversion, "failure to register", and specific performance.

**<u>ARGUMENT</u>**

I.    **<u>THIS MOTION</u>**

      A.     **<u>The New Rule 12(b)(6) Standard</u>**

          Just last year, the Supreme Court held that in order to survive a motion to dismiss

under Rule 12(b)(6), a complaint must plead enough facts to <u>plausibly</u> suggest that the plaintiff

---

[2] Even if plaintiff were able to prove liability and damages, which it cannot, plaintiff is not
entitled to interest. <u>See</u> 12 Del.C. § 1145 ("Notwithstanding any other provision of law, no
person entitled to or owner of abandoned property shall be entitled to receive interest on account
of such abandoned property from and after the date a report of such abandoned property is made
to the State Escheator pursuant to this subchapter whether or not the person was entitled to
interest on such property prior to such date").

will be entitled to relief and the mere possibility that the plaintiff might some day be able to establish facts that would entitled it to relief is not enough. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966 (2007). The Court there emphasized that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65; see also DiFolco v. MSNBC Cable L.L.C., 2007 WL 959085, at *2 (S.D.N.Y. Mar. 30, 2007) (in deciding a motion to dismiss a court will not consider a plaintiff's conclusory allegations).

### B.    Choice Of Law

Delaware law governs plaintiff's claims which concern the escheatment of the stock of a Delaware corporation to the Delaware Escheator. Specifically, a federal court sitting in diversity[3] must apply the choice of law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999). Therefore, New York's choice of law rules will determine which state's law applies to plaintiff's claims.

Under New York law, "claims related to corporate affairs -- i.e., issues involving the rights and liabilities of a corporation -- are governed by the internal affairs doctrine." In re BP p.l.c. Derivative Litig., 507 F. Supp.2d 302, 307 (S.D.N.Y. 2007). According to the Supreme Court,

> the internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs -- matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders -- because otherwise a corporation could be faced with conflicting demands.

---

[3] There is no federal question presented here.

Edgar v. MITE Corp., 457 U.S. 624, 645 (1982); see also In re BP p.l.c., 507 F. Supp.2d at 307

(the "doctrine provides that the rights of a shareholder in a foreign company … are determined

by the law of the place where the company is incorporated"); Winn v. Schafer, 499 F. Supp.2d

390, 393 (S.D.N.Y. 2007) ("New York choice of law rules apply the internal affairs doctrine,

which dictates that the law of the state of incorporation governs the adjudication of a

corporation's 'internal affairs,' including questions as to the relationship between the

corporation's shareholders and its directors") (citations and quotation marks omitted).

Moreover, outside the corporation context, New York applies the so-called

"interest analysis" to tort claims. See GlobalNet Financial.Com, Inc., v. Frank Crystal & Co.,

449 F.3d 377, 384 (2d Cir. 2006). Under this approach, the law of the jurisdiction with the

greatest interest in the litigation governs; the only facts or contacts which have significance in

defining state interests are those which relate to the purpose of the particular law. See id.

Further, "[u]nder the interest-analysis test, torts are divided into two types, those involving the

appropriate standards of conduct, rules of the road, for example and those that relate to allocating

losses that result from admittedly tortuous conduct such as those limiting damages in wrongful

death actions, vicarious liability rules, or immunities from suit." Id. (internal quotation marks

and citations omitted). The torts at issue here (e.g., negligence) involve the appropriate standard

of conduct. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where

the tort occurred will generally apply because the jurisdiction has the greatest interest in

regulating behavior within its borders." Id. (citation omitted).

In the instant matter, Delaware law applies under the interest analysis because all

that is at issue is the escheatment of Tertiaire's Empire shares to the State of Delaware. Indeed,

plaintiff alleges that "[t]he laws and regulations of the State of Delaware prohibit escheatment of

securities unless and until the property has been fully dormant for a period of at least five (5)

years" and that less than five years had allegedly elapsed between the last contact from Tertiaire

and the determination by ACS to escheat the shares at issue.  Am. Compl. ¶ 24.  Additionally,

the issuer of the shares, Empire, is incorporated under the laws of the State of Delaware, as is

ACS, the corporation allegedly responsible for delivering the shares to the State of Delaware for

escheatment.

   In sum, the claims against Empire are subject to the internal affairs doctrine and

are based on Empire's alleged failure to follow appropriate standards of conduct under the "laws

and regulations of the State of Delaware" and thus Delaware law governs.

## II.  SECTION 1203 OF TITLE 12 OF THE DELAWARE CODE EXPRESSLY BARS ALL OF PLAINTIFF'S CLAIMS AGAINST EMPIRE

   Plaintiff seeks to hold Empire liable, under various legal theories, for what

plaintiff claims was the premature escheatment of its Empire stock to Delaware even through it

alleges no facts connecting Empire to that alleged act.  However, even if plaintiff plausibly

alleged -- which it has not -- that Empire was involved in, or even knew of, the escheatment,

Section 1203(a) of Title 12 of the Delaware Code completely bars any recovery by plaintiff

against Empire regardless of what legal theory plaintiff tries to hang its hat on.  That statute

provides, in relevant part, that:

> the delivery of property to the State Escheator by *any holder* shall
> *terminate any legal relationship* between the holder and the owner
> and *shall release and discharge such holder from any and all
> liability to the owner* . . . <u>regardless of whether such property *is in
> fact and in law abandoned property*</u> and *such delivery and payment
> may be pleaded as a bar to recovery and shall be a conclusive
> defense in any suit or action brought by such owner* . . . *by reason
> of such delivery or payment.*

Del. Code Ann. tit. 12 § 1203(a) (all emphasis added).  Importantly, "holder" is defined to

include "the <u>issuer</u> of any intangible ownership interest in a corporation, whether or not

represented by a stock certificate, which is registered on stock transfer or other like books of the issuer or its agent." Id. § 1198 (7) (emphasis added). Empire is the issuer of the stock in question. See Am. Compl. ¶¶ 7-9.

Here, plaintiff's theory is that its stock was not, in fact, abandoned factually or legally (the latter because the statutory five year period had not yet run) and, therefore, that the escheatment was improper. But the statute could not be more clear: the delivery of property by an issuer to the State Escheator is a *"release and discharge"* of "any and all liability to the owner," is a *"bar to recovery,"* and is a "conclusive defense in any suit or action" brought by the owner, *"regardless of whether such property is in fact and in law abandoned."* Id. § 1203(a) (emphasis added). Empire is therefore immune "from any and all liability" to plaintiff for the escheatment of plaintiff's stock in this case -- whether or not the five year period had run.

And contrary to plaintiff's assertion in Court, the "good faith" requirement set forth in Section 1203(b) has no applicability here. Section 1203(a), as previously discussed, bars any claim against the issuer of escheated property by the owner of that property -- precisely the situation here between Empire and plaintiff. Section 1203(b), however, is broader and is directed at situations such as where duplicate stock certificates are escheated to the state to the detriment of a third-party who might have acquired either (i) the original certificates or (ii) other duplicate certificates. Id. at § 1203(b). In such cases, the third-party is stuck if and only if the escheatment was done in "good faith." Id. Section 1203(b) states:

> Upon the delivery in good faith of a duplicate certificated security
> to the State Escheator or the registration of an uncertificated
> security to the State Escheator pursuant to § 1201 of this title, the
> holder and any transfer agent, registrar or other person acting for or
> on behalf of the holder in executing or delivering such duplicate
> certificate or effectuating such registration, is relieved of all
> liability of every kind to every person, including any person
> acquiring the original of a certificated security or the duplicate of a

> certificated security issued to the State Escheator, for any losses or
> damages resulting to any person by issuance and delivery to the
> State Escheator of the <u>duplicate</u> certificated security or the
> registration to the holder's name of an uncertificated security.

<u>Id.</u> § 1203(b) (emphasis added). (The entirety of Section 1203 is attached hereto as Appendix A.)

There is, of course, no similar "good faith" (or other state of mind) restriction in Section 1203(a) and Empire is <u>not</u> relying on Section 1203(b) (though it appears that Section 1203(b) does apply here because the certificate that was escheated was a replacement certificate).

Moreover, any argument by plaintiff that the Court should imply the good faith standard of Section 1203(b) into Section 1203(a) would be wrong as a matter of law. It is a basic tenet of statutory construction that "[a]n unambiguous statute precludes the need for judicial interpretation, and the plain meaning of the statutory language controls." <u>LeVan</u> v. <u>Independence Mall, Inc.</u>, 940 A.2d 929, 932-33 (Del. 2007) (citation and quotation marks omitted).[4] Section 1203(a), of course, is clear and unambiguous and by its terms is completely separate and distinct from Section 1203(b) and has no "good faith" requirement.

This conclusion is supported by another principle of statutory interpretation. Pursuant to the maxim *expressio unius est exclusio alterius*, "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature." <u>Leatherbury</u> v. <u>Greenspun</u>, 939 A.2d 1284, 1291 (Del. 2007) (citation and emphasis omitted). Here, the statute provides in Section 1203(b) that the escheatment of duplicate certificates must be done in good faith for the claim bar to apply. The immediately

---

[4] "[A] federal court sitting in diversity is obliged to apply state law principles to resolve" questions of statutory interpretation, "utilizing such principles as enunciated and applied by the state's highest court." <u>Volvo Trademark Holding Aktiebolaget</u> v. <u>Clark Mach. Co.</u>, 510 F.3d 474, 482 (4th Cir. 2007).

preceding subsection, Section 1203(a), contains no such requirement. This difference must be honored by the Court. Id. at 1291 ("'[A] court may not engraft upon a statute language which has clearly been excluded therefrom"; "when provisions are expressly included in one statute but omitted from another, [the Court] must conclude that the General Assembly intended to make those omissions") (citation omitted). Accordingly, the Court cannot read a good faith requirement into Section 1203(a) as a matter of Delaware law.

In sum, Section 1203(a) of Title 12 of the Delaware Code expressly and completely bars all of plaintiff's claims against Empire and the Amended Complaint must therefore be dismissed in its entirety as against Empire.[5]

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE

Separate from the statutory bar set forth in Section 1203(a), plaintiff's negligence claim against Empire in Count I is void of facts necessary to state a claim in negligence against Empire. Indeed, as noted, plaintiff does not allege that Empire played an actual role in, or even had knowledge about, the escheatment of Tertiaire's Empire stock. See Am. Compl. ¶¶ 23-27.

---

[5] In each of the causes of action against Empire, plaintiff's only substantive change (other than to inflate the amount of alleged damages) in the Amended Complaint from the allegations of the original Complaint, following Empire's explanation in open court and in its answer of its reliance on Section 1203(a), is the addition of the allegation that Empire's alleged breach of duty occurred "*[p]rior* to the time the Empire shares owned by Tertiaire were paid to the State Escheator...." Am. Compl. ¶¶ 27, 42, 51 and 60 (emphasis added). It simply cannot be that it is that easy to circumvent the express purpose of a statute such as Section 1203(a), which by its plain language is a complete bar to any recovery against Empire with respect to escheatment. Moreover, this end run just does not work because there could be no injury and no wrong *prior* to the escheatment itself, and thus no damages are alleged separate from those allegedly suffered as a result of the stock being escheated. Put another way, to the extent plaintiff is trying to separate Empire's alleged breach of duty from the escheatment itself, its pleading fails to allege loss causation. See, e.g., General Motors Corp. v. Wolhar, 686 A.2d 170, 176 (Del. 1996) ("A plaintiff cannot recover unless it is established that the defendants' negligence was the proximate cause of the plaintiff's injuries"); Duphily v. Delaware Elec. Co-op., Inc., 662 A.2d 821, 828 (Del. 1995) ("A finding of negligence by the defendant, standing alone, will not sustain an action for damages unless it is also shown to be a proximate cause of plaintiff's injury").

In order "[t]o state a cause of action for negligence, the plaintiff must show (1) the existence of a duty; (2) breach of that duty; (3) proximate causation; and (4) damages." Those Certain Underwriters at Lloyd's London v. Nat'l Installment Ins. Servs., Inc., 2007 WL 1207106 at *6 (Del. Ch. Feb. 8, 2007). Here, the Amended Complaint fails to adequately allege any breach of a duty by Empire. Specifically, plaintiff does not allege any facts from which it can be inferred by the Court that Empire breached any duty related to the escheatment of Tertiaire's Empire shares. In fact, the Amended Complaint does just the opposite -- it alleges that Empire hired AST as its transfer agent to handle its stock records and there is no allegation that such hiring was negligent. The Amended Complaint also alleges that ACS, which was hired by AST and thus twice removed from Empire, was responsible for determining whether Tertiaire's Empire shares should be escheated and was the party that turned over the shares to the State of Delaware. See Am. Compl. ¶¶ 17, 18, 37, 50-52 and 54. Thus, the Amended Complaint does not state a claim against Empire in negligence because no breach of duty is adequately alleged.[6]

Moreover, plaintiff fails to allege any facts that suggest that Empire's actions were the proximate cause of any damages suffered by plaintiff. In fact, plaintiff alleges that Empire's alleged negligence occurred "*[p]rior* to the time the Empire shares owned by Tertiaire were paid to the State Escheator...." Am. Compl. ¶ 27 (emphasis added). The Amended Complaint, however, alleges no injury to plaintiff other than that allegedly resulting from the escheatment itself. As a result, in addition to not pleading any breach of duty, this pleading fails to allege proximate cause (loss causation). See, e.g., General Motors Corp., 686 A.2d at 176 ("A

---

[6] The Amended Complaint does allege that Empire had a duty to Tertiaire "to account properly for the status of shares." Am. Compl. ¶ 26. The Amended Complaint, however, also alleges that Empire hired AST as its transfer agent "to account properly for the status of shares of the corporation." Id. ¶ 45. Since, as noted, no facts are pleaded suggesting any negligence in the hiring of AST, there is no adequate pleading of any breach of any kind by Empire.

plaintiff cannot recover unless it is established that the defendants' negligence was the proximate cause of the plaintiff's injuries"); <u>Duphily</u>, 662 A.2d at 828 (Del. 1995) (same); <u>Hall</u> v. <u>Dorsey</u>, 1998 WL 960774 at *2 (Del. Nov. 5, 1998) ("Since the final element of negligence is damages, it seems legally impossible to sustain a finding of 'negligence' without damages").

      Therefore, plaintiff has failed to plead enough facts to plausibly suggest it is entitled to relief against Empire under a theory of negligence.

## IV.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW

      Even if this Court were to find that Section 1203(a) did not entirely bar all claims against Empire and even if there was not a total absence of factual allegations connecting Empire to the alleged escheatment, plaintiff's claim for breach of fiduciary duty by Empire in Count IV does not state a claim because a corporation does not owe fiduciary duties to its shareholders; rather, "'fiduciary duties are owed by the directors and officers to the corporation and its stockholders.'" <u>Alessi</u> v. <u>Beracha</u>, 849 A.2d 939, 950 (Del. Ch. 2004) (finding that defendant corporation had no fiduciary duty to plaintiff shareholder) (quoting <u>Arnold</u> v. <u>Soc'y for Sav. Bancorp.</u>, 678 A.2d 533, 539 (Del. 1996)).[7]

      Moreover, the only duty allegedly violated by Empire is, as discussed, a supposed "duty to Tertiaire to maintain accurate books and records regarding ownership of shares." Am. Compl. ¶ 41. No facts, however, are pleaded suggesting that Empire's transfer agent, AST, did not maintain an accurate stock list. Moreover, while a corporation has "an affirmative duty to maintain a stock ledger," <u>Rainbow Navigation, Inc.</u> v. <u>Pan Ocean Navigation, Inc.</u>, 535 A.2d 1357, 1359 (Del. 1987), that duty is only intended to preserve a shareholder's right to examine

---

[7] Not only is this the law in Delaware, it is also the law in New York. <u>See</u>, <u>e.g.</u>, <u>Hyman</u> v. <u>NYSE</u>, 848 N.Y.S.2d 51, 53 (1st Dep't 2007) ("[I]t is well settled that a corporation does not owe fiduciary duties to its members or shareholders") (citations omitted).

the corporation's books and records. Id. Thus, there is no private right of action for damages or injunctive relief for failure to maintain an accurate stock ledger; rather the only consequence of a corporation's failure in that regard is that the Court may then look to extrinsic evidence to establish whether a party is a stockholder of that corporation if that is disputed. Id. ("We now hold that when the stock ledger is blank or non-existent, the Court of Chancery has the power to consider other evidence to ascertain and establish stockholder status"); see also Shaw v. Agri-Mark, Inc., 663 A.2d 464, 470 (Del. 1995) ("Only if a corporation fails in its affirmative duty to maintain a stock ledger may a court look to extrinsic evidence in deciding whether a party possesses record stockholder status").[8]  Indeed, no court has ever found that there is a fiduciary duty on the part of a corporation to maintain its stock ledger.

In sum, Count IV of the Amended Complaint asserting a breach of fiduciary duty claim against Empire fails for numerous reasons: in addition to the bar of Section 1203(a) and the absence of any factual pleading of any breach of duty, or of a failure to maintain accurate books and records, a corporation does not owe fiduciary duties and there is no actionable duty to maintain an accurate stock ledger.

## V.    PLAINTIFF'S CONVERSION CLAIM FAILS BECAUSE THERE IS NO ALLEGATION THAT EMPIRE EVER EXERCISED DOMINION OR CONTROL OVER TERTIAIRE'S STOCK

In Count VII of the Amended Complaint, plaintiff asserts a cause of action against all defendants for conversion of Tertiaire's Empire shares.  Under Delaware law, however, to

---

[8] This is a judicial exception to the rule that "[t]he stock ledger shall be the only evidence as to who are the stockholders entitled by this section to examine the list required by this section or to vote in person or by proxy at any meeting of stockholders." 8 Del. C. § 219(c); see also Shaw v. Agri-Mart, Inc., 663 A.2d 464, 469-70 (Del. 1995) ("We continue to recognize the long-established rule that a corporation may rely on its stock ledger in determining which stockholders are eligible to vote or exercise the important rights of a stockholder.  The sole recognized exception is where the stock ledger is either blank or nonexistent.") (internal citations omitted).

convert property one must exercise control or dominion over the property. <u>McGowan</u> v. <u>Ferro,</u> 859 A.2d 1012, 1040 (Del. Ch. 2004), <u>aff'd,</u> 873 A.2d 1099 (Del. 2005) ("'Conversion is the 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it'") (citations omitted); <u>see also</u> <u>Arnold</u> v. <u>Soc'y for Sav. Bancorp, Inc.,</u> 678 A.2d 533, 536 (Del. 1996) ("[a] stockholder's shares are converted by 'any act of control or dominion....'") (citations omitted). Moreover, conversion requires an affirmative, intentional act of control over the stock. <u>See</u> <u>Int'l Bus. Machs. Corp.</u> v. <u>Comdisco, Inc.,</u> 1993 WL 259102, at *5 (Del. June 30, 1993) (quoting Restatement (Second) of Torts § 223 cmt. b.) ("Conversion is always an *intentional* exercise of dominion or control over the chattel. Mere non-feasance or negligence, without such an intent, is not sufficient for conversion...") (emphasis added).

Here, plaintiff does not allege any facts that demonstrate Empire intentionally exerted control or dominion over Tertiaire's Empire shares. In fact, there is not one allegation in the entire Amended Complaint that suggests that Empire had any involvement in the escheatment of Tertiaire's Empire Shares or even came into possession of them. Instead, as discussed above, the Amended Complaint alleges just the opposite: that ACS, who was hired by AST and thus twice removed from Empire was the party that turned over the shares to the State of Delaware. <u>See</u> Am. Compl. ¶¶ 17, 18, 37, 50-52 and 54. It just is not the law that Empire is liable for conversion merely because it was the issuer of the shares.

## VI.    PLAINTIFF'S FAILURE TO REGISTER CLAIM SHOULD BE DISMISSED

Count VIII of the Amended Complaint asserts a purported cause of action "for failure to register" based on the bare allegation that "Empire failed to register the shares owned by Tertiaire, and thereby violated the relevant provisions of the Uniform Commercial Code." Am. Compl. ¶ 60.

Even putting aside the statutory bar set forth in Section 1203(a), as discussed in Point II above, there is no common law cause of action for damages or injunctive relief for failure to maintain a stock ledger. Further, plaintiff does not even cite the relevant portion of the Uniform Commercial Code that Empire is allegedly liable for breaching. It appears, however, that Count VIII is based on Section 8-401 of the Delaware Code, which provides:

> If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:
>
> (1)   under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name;
>
> (2)   the endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;
>
> (3)   reasonable assurance is given that the endorsement or instruction is genuine and authorized (Section 8-402);
>
> (4)   any applicable law relating to the collection of taxes has been complied with;
>
> (5)   the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Section 8-204;
>
> (6)   a demand that the issuer not register transfer has not become effective under Section 8-403, or the issuer has complied with Section 8-403(b) but no legal process or indemnity bond is obtained as provided in Section 8-403(d); and
>
> (7)   the transfer is in fact rightful or is to a protected purchaser.

6 Del. C. § 8-401(a).

The Amended Complaint pleads no facts that demonstrate that plaintiff could meet any of the many requirements to recover under Section 8-401(a). See Am. Compl. ¶ 60. Indeed, plaintiff's claim simply is not plausible. Plaintiff alleges that in 2000, Tertiaire sought and received a replacement stock certificate from AST (Am. Compl. ¶¶ 10-16) -- so obviously

the stock was registered in Tertiare's name at that time.  And while the Amended Complaint also alleges that plaintiff sought to transfer ownership to AWF in 2006, by that time, according to plaintiff, the stock had already been escheated, so there was no right to transfer as required by § 8-401(a)(1).

More important, under Section 8-401(b), an issuer is only liable "to a person presenting a certificated security or an instruction for registration or to the person's principal <u>for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.</u>"  6 Del. C. § 8-401(b).  By plaintiff's own pleading, that did not happen here.  As discussed, not only is there no allegation of delay or failure to register, but plaintiff's failure to register claim is based on Empire's alleged failure to register shares owned by Tertiaire "[p]rior to the time the Empire shares" were escheated (Am. Compl. ¶ 60), but the Amended Complaint alleges that plaintiff did not write to Empire requesting re-registration until March 29, 2006 (<u>Id.</u> ¶ 19), over a year and five months *after* the shares were escheated.  Accepting plaintiff's allegations as true, Empire could not re-register shares that had already been escheated nor could any loss be incurred by plaintiff as a result of Empire's alleged failure to re-register.  Thus, plaintiff's failure to register claim is defective and not plausible on its face.

## VII.    PLAINTIFF'S SPECIFIC PERFORMANCE CLAIM FAILS BECAUSE MONEY DAMAGES ARE AN ADEQUATE REMEDY

Count IX is a claim against Empire for specific performance.  This count should be dismissed because, in addition to the statutory bar and the failure of each of plaintiff's substantive causes of action to state a claim as demonstrated above, plaintiff cannot show any entitlement to equitable relief.  It is well recognized that specific performance of a stock transfer will not be granted unless the stock is unique or the shares are not available in the open market.  <u>See Gildor</u> v. <u>Optical Solutions, Inc.</u>, 2006 WL 1596678, at *10 n.33 (Del. Ch. June 5, 2006)

("This court has recognized that specific performance of a stock purchase is appropriate in situations where the stock is not available in the market, is unique, or has unique value to the purchaser"); Bible v. En Enters., Inc., 1992 WL 296451, at *3 (Del. Ch. Oct. 16, 1992) ("Ownership of stock must contain certain unique and particular features to warrant specific performance") (internal quotation marks and citations omitted).

Here, money damages would provide adequate relief if plaintiff could state a claim because the Empire shares in question are in no sense unique and are freely traded on the American Stock Exchange. See Am. Compl. ¶ 2; see also U.S. Dimension Prods., Inc. v. Tassette, Inc., 290 A.2d 634, 635 (Del. 1972) ("The Court below did not ignore the usual rule that specific performance of a contract for the sale of corporate stock will not be granted if similar shares are available in the open market; in such cases, money damages are deemed adequate relief"). Therefore, the Court should dismiss plaintiff's specific performance claim against Empire.

## CONCLUSION

For all of the foregoing reasons, defendant Empire respectfully requests that this Court dismiss the Amended Complaint as against it with prejudice.

Dated: New York, New York
      May 2, 2008

_____/s/_____
Richard L. Levine (RL-4871)
Deborah A. Maher (DM-9333)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000 (phone)
(212) 310-8007 (fax)

Attorneys for Defendant Empire Resources, Inc.

# APPENDIX A

Westlaw.

DE ST TI 12 § 1203

Page 1

12 Del.C. § 1203

**C**

West's Delaware Code Annotated Currentness
 Title 12. Decedents' Estates and Fiduciary Relations
  Part III. Descent and Distribution; Escheat
    Chapter 11. Escheats
     Subchapter IV. Other Unclaimed Property

→ **§ 1203. Effect of payment and delivery**

(a) The payment or delivery of property to the State Escheator by any holder shall terminate any legal relationship between the holder and the owner and shall release and discharge such holder from any and all liability to the owner, the owner's heirs, personal representatives, successors and assigns by reason of such delivery or payment, regardless of whether such property is in fact and in law abandoned property and such delivery and payment may be pleaded as a bar to recovery and shall be a conclusive defense in any suit or action brought by such owner, the owner's heirs, personal representatives, successors and assigns or any claimant against the holder by reason of such delivery or payment.

(b) Upon the delivery in good faith of a duplicate certificated security to the State Escheator or the registration of an uncertificated security to the State Escheator pursuant to § 1201 of this title, the holder and any transfer agent, registrar or other person acting for or on behalf of the holder in executing or delivering such duplicate certificate or effectuating such registration, is relieved of all liability of every kind to every person, including any person acquiring the original of a certificated security or the duplicate of a certificated security issued to the State Escheator, for any losses or damages resulting to any person by issuance and delivery to the State Escheator of the duplicate certificated security or the registration to the holder's name of an uncertificated security.

(c) If the holder pays or delivers property to the State Escheator in good faith and thereafter another person claims the property from the holder or another state claims the money or property under its laws relating to escheat or abandoned or unclaimed property, the State Escheator acting on behalf of the State, upon written notice of the claim, shall defend the holder against the claim and indemnify the holder against any liability on the claim.

(d) For the purposes of this section, "good faith" means that:

 (1) Payment or delivery was made in a reasonable attempt to comply with this subchapter;

 (2) The person delivering the property was not a fiduciary then in breach of trust in respect to the property and had a reasonable basis for believing, based on the facts then known to the person, that the property was abandoned for the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

purposes of this subchapter;  and

(3) There is no showing that the records pursuant to which the delivery was made did not meet reasonable commercial standards of practice in the industry.

(e) The State Escheator at the request of a holder and in the State Escheator's sole discretion, may allow a holder to pay over or deliver property otherwise properly payable to the State but against which a full period of dormancy has not yet run.  In the event the State Escheator acquiesces to the request and accepts such property, the holder shall be entitled to the protections of this section and the property shall be treated generally as if it had been paid over after a full period of dormancy had run.  The provisions of §§ 1145 and 1206(c) of this title shall not apply to property accepted by the State Escheator under this subsection until a full period of dormancy has run against the property.

58 Laws 1972, ch. 426, § 8; 65 Laws 1986, ch. 351, § 5;  70 Laws 1995, ch. 186, § 1, eff. July 10, 1995;  75 Laws 2005, ch. 19, § 4, eff. April 27, 2005.

**Codifications:** 12 Del.C. 1953, § 1203

HISTORICAL AND STATUTORY NOTES

2007 Legislation

Technical corrections were made to conform with revisions made by the Delaware Code Revisors (2007).

LIBRARY REFERENCES

  Escheat⟨⟩ 6.
  Westlaw Key Number Search:  152k6.
  C.J.S. Escheat §§ 8 to 9.

RESEARCH REFERENCES

**Treatises and Practice Aids**

**BNA Corporate Practice Series No. 74 § V, V. Rules Governing Priority of State Claims.**

**BNA Corporate Practice Series No. 74-2 § V, V. Rules Governing Priority of State Claims.**

**12 Del.C. § 1203, DE ST TI 12 § 1203**

76 Laws 2008, ch. 209. Revisions to 2008 Acts made by the Delaware Code Revisors were unavailable at time of publication.

Copr. © 2008 Thomson Reuters/West.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 4 of 4

DE ST TI 12 § 1203                                                        Page 3
12 Del.C. § 1203

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.