UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

A.W. FINANCIAL SERVICES, S.A., as successor : CIVIL ACTION
in interest to TERTIAIRE INVESTISSEMENT, S.A. :
                                    Plaintiff, :
            v.                               : 07 CIV 8491 (SHS)(RLE)
                                             : ECF CASE
EMPIRE RESOURCES, INC., et al.               :
                                    Defendants. :
_____


**DEFENDANTS AMERICAN STOCK TRANSFER &
TRUST CO. AND AFFILIATED COMPUTER SERVICES, INC.'S
<u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**



OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

Steven A. Haber (SH4739)
Kellie M. MacCready (KM3024)
1617 John F. Kennedy Boulevard – 19th Floor
Philadelphia, PA  19103
(215) 665-3000
(215) 665-3165 (facsimile)


*Attorneys for Defendants American Stock Transfer & Trust
Co. and Affiliated Computer Services, Inc.*

# TABLE OF CONTENTS

Page

I.   THE FEDERAL RULES OF CIVIL PROCEDURE
     DO NOT BAR AST FROM MOVING TO DISMISS THE
     AMENDED COMPLAINT ........................................................................................1

II.  THE FEDERAL RULES OF CIVIL PROCEDURE DO
     NOT BAR ACS FROM MOVING TO DISMISS
     PLAINTIFF'S CONVERSION CLAIM ..................................................................3

III. THE LEGISLATIVE HISTORY OF DELAWARE'S
     ESCHEAT STATUTES DOES *NOT* DEMONSTRATE
     THAT AST IS *NOT* IMMUNE FROM SUIT UNDER
     12 DEL. C. § 1203 ....................................................................................................4

     A.   Plaintiff's Claim That It Seeks To Hold AST
          Liable For Acts Prior To The Delivery Of
          The Empire Shares To The State Is A Frivolous
          Attempt To Evade The Immunity
          Provisions Of The Delaware Statutes ...............................................................5

     B.   The Legislative History Of The Delaware
          Escheat Statutes Does Not Demonstrate That
          AST Does Not Qualify As A "Holder" Of
          Plaintiff's Shares .............................................................................................6

     C.   The Legislative History Of The Delaware
          Escheat Statutes Does Not Demonstrate That
          AST Is Not Entitled To Immunity Under
          12 Del. C. § 1203 .............................................................................................9

IV.  THE LANGUAGE OF 12 DEL. C. § 1203 DOES *NOT*
     DEMONSTRATE THAT AST IS *NOT* IMMUNIE FROM
     SUIT UNDER 12 DEL. C. § 1203 .........................................................................10

     A.   Plaintiff Has Failed To Demonstrate That The
          Language Of Section 1203(a) Does Not Immunize
          AST From Suit By Plaintiff .............................................................................10

V.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT
      AST IS NOT IMMUNE FROM SUIT UNDER SECTION
      1203(b)................................................................................................14

      A.    The *Azure* Decision Does Not Demonstrate That AST
            Is Not Immune From Suit Under Section 1203(b)..........................................14

      B.    Plaintiff's Interpretation Of Section 1203(b)'s Good
            Faith Requirement Is Contrary To Law And Fails To
            Refute The Argument That AST Is Immune From
            Plaintiff's Suit Under Section 1203(b) ...........................................................15

      C.    The Uniform Unclaimed Property Act Of 1981
            Cannot Support Plaintiff's Claim That AST Is Not
            Immune From Suit Under 12 Del. C. § 1203(b)................................................17

VI.   PLAINTIFF DOES NOT ADDRESS THE THREE
      ELEMENTS MISSING FROM ITS BREACH OF
      CONTRACT CLAIM AGAINST AST ....................................................................18

VII.  PLAINTIFF HAS NOT OVERCOME THE SHOWING
      IN ACS'S MOTION TO DISMISS THAT ACS IS
      IMMUNE FROM SUIT UNDER DELAWARE'S
      DOCTRINE OF SOVEREIGN IMMUNITY.........................................................19

VIII. PLAINTIFF DOES NOT MEET THE ARGUMENT
      TO DISMISS THE NEGLIGENCE CLAIM AGAINST ACS ...............................21

IX.   PLAINTIFF DOES NOT MEET THE ARGUMENT TO
      DISMISS PLAINTIFF'S CLAIM FOR NEGLIGENCE
      PER SE AGAINST ACS ........................................................................................23

X.    PLAINTIFF DOES NOT ADDRESS THE ELEMENTS
      MISSING FROM ITS BREACH OF CONTRACT
      CLAIM AGAINST ACS ........................................................................................23

XI.   PLAINTIFF DOES NOT MEET THE ARGUMENT TO
      DISMISS THE CONVERSION CLAIM AGAINST ACS ......................................25

Plaintiff's Memorandum of Law in Opposition to AST & ACS's Motion to Dismiss the Amended Complaint (hereinafter "Brief in Opposition"), is replete with errors and misstatements regarding the legislative history and substance of Delaware's escheat statutes – all in an attempt to avoid the immunity granted by the Delaware escheat statutes to AST from suits such as this one.  Instead of explaining how the Amended Complaint satisfies Plaintiff's pleading obligations under the Federal Rules of Civil Procedure, the Brief in Opposition proffers new facts and allegations – found nowhere in either the original or amended complaint – which are not properly before the Court, and even if considered do not satisfy Plaintiff's pleading obligations.  Plaintiff laments that defendants' arguments in their motions to dismiss leave Plaintiff with no avenue of recovery for its loss of property.  Plaintiff, however, fails to acknowledge its own responsibility in creating a situation where Plaintiff was subject to a property loss and fails to proceed within prescribed methods of recovery for its loss, and instead seeks to hold AST and ACS responsible for damages that were brought on by Plaintiff's own doing.

## I.    THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT BAR AST FROM MOVING TO DISMISS THE AMENDED COMPLAINT

Contrary to Plaintiff's contentions, the Federal Rules of Civil Procedure do not bar portions of AST's Motion to Dismiss Plaintiff's Amended Complaint, and AST's Motion to Dismiss need not be limited to AWF's claim against AST for breach of contract.  In support of its argument that AST is precluded from moving to dismiss the Amended Complaint for failure to state a claim, Plaintiff cites Ross v. U.S., 574 F. Supp. 536 (S.D.N.Y. 1983).   Ross, however, was decided pursuant to Federal Rule of Civil Procedure 12(h), which provides that certain defenses enumerated in Rule 12 are waived when they are not included in a responsive pleading.  See Ross, 574 F. Supp. at 539; see

also Lemelson v. Synergistics Research Corp., 669 F. Supp. 642, 647 n.6 (S.D.N.Y. 1987).  In Ross, the District Court found that because the defendant answered the original complaint and did not assert the defenses in 12(b)(2), (4) and (5) – all of which are waivable defenses enumerated in Rule 12(h) – the defendant waived these defenses pursuant to Rule 12(h) and could not assert these defenses in response to plaintiff's amended complaint.  Ross, 574 F. Supp. at 539.  The Rule 12(b)(6) defense of "failure to state a claim upon which relief may be granted," however, is *not* a waivable defense as provided for in Rule 12(h).  See Fed. R. Civ. P. 12(h).  Ross, therefore, does not support Plaintiff's contention that AST has waived its ability to move to dismiss the Amended Complaint because it answered Plaintiff's original Complaint, and any such reliance by Plaintiff on Ross is misplaced.  See Lemelson, 669 F. Supp. at 647 n.6 (finding that defense asserted by defendant was not a defense listed in Rule 12(h) and plaintiff's reliance on Ross was misplaced).

Furthermore, while the Court in Ross noted that "[a]n unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended," the defense of failure to state a claim was *not* unasserted by AST in response to the original Complaint.  See Ross, 574 F. Supp. at 539 (noting that defenses raised in defendant's motion to dismiss were not raised in defendant's answer to original complaint).  To the contrary, AST specifically *asserted* the defense of failure to state a claim in its Answer to Plaintiff's original Complaint.  (Answer, Affirmative Defenses and Cross-claims of Defendant American Stock Transfer & Trust Co., First Affirmative Defense, ¶ 50).

Additionally, this Court has found that "[t]he Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of resolving cases on the merits and to dispense with technical procedural problems." <u>Lemelson</u>, 669 F. Supp. at 647. A court has discretion to allow an omitted counterclaim or defense at any time "when justice so requires." <u>Id.</u> (citing Fed. R. Civ. P. 15(a)). "The sound exercise of this discretion usually involves the presence or absence of such factors as undue delay, bad faith, undue prejudice to opposing party, or futility of amendment." <u>Id.</u> In its Brief in Opposition, Plaintiff does not argue undue delay, bad faith or any prejudice whatsoever to Plaintiff by reason of AST answering Plaintiff's original complaint and moving to dismiss the Amended Complaint. To the extent that this Court accepts Plaintiff's argument that there has been a procedural problem with the assertion of this defense, the Federal Rules should be liberally construed to resolve the Motion to Dismiss on the merits.[1]

## II. THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT BAR ACS FROM MOVING TO DISMISS PLAINTIFF'S CONVERSION CLAIM

Contrary to Plaintiff's contentions, New York caselaw does not bar ACS from moving to dismiss Plaintiff's conversion claim. In support of its argument that ACS is barred from moving to dismiss Plaintiff's conversion claim, Plaintiff relies on the District Court's opinion in <u>Sears Petroleum & Transport Corp. v. Ice Ban America, Inc.</u>, No. 99-CV-704, 2004 U.S. Dist. LEXIS 6661, at *4 (N.D.N.Y. April 15, 2004). Rather than supporting the conclusion that ACS may not challenge Plaintiff's conversion claim, <u>Sears</u>

---

[1] In any event, if the Court finds that AST cannot move to dismiss under Rule 12(b), the Court may treat AST's Rule 12(b)(6) motion as one made under Rule12(c) for a judgment on the pleadings, the standard of review for which is identical to that applied to Rule 12(b)(6) motions. <u>See</u> <u>Singh v. Parnes</u>, 199 F. Supp. 2d 152, 155 (S.D.N.Y. 2002) (citing <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 124 (2d Cir. 2001)).

3

supports ACS's ability to move to dismiss Plaintiff's claim against ACS for conversion. <u>Sears</u> stands for the proposition that if the amended complaint contains new matter, the defendant *may bring* a second motion under Rule 12 to object to the new allegations.  <u>Id.</u>

Plaintiff's conversion claim includes new matter.  Specifically, the Amended Complaint, unlike the original Complaint, alleges that ACS's alleged conversion of the shares occurred "*[p]rior to* the time the Empire shares owned by Tertiaire were paid to the State Escheator".  (<u>Compare</u> Amended Complaint, ¶ 57 (emphasis added) <u>with</u> Complaint, ¶ 44).  While both the amended and original complaints allege that the shares were delivered by Empire or AST *directly to* the State of Delaware, the Amended Complaint removes any allegations that ACS was acting as agent for the State.  (<u>Compare</u> Amended Complaint, ¶¶ 17, 28, 32, 34, 43 <u>with</u> Complaint, ¶¶ 17, 28, 32, 34, 38, 42).  Because the Amended Complaint contains new matter – now alleging that any alleged conversion of shares occurred *prior to* the time the shares were paid to the State – the Amended Complaint modifies the claims asserted in the original complaint and provides ACS with defenses not originally available to ACS in response to the original complaint, therefore, ACS may bring a second motion under Rule 12(b)(6).  <u>See</u> Wright & Miller, 5D Federal Practice & Procedure § 1388, at 491-492 (3d ed. 2004) ("[A] Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion.").

## III.  THE LEGISLATIVE HISTORY OF DELAWARE'S ESCHEAT STATUTES DOES *NOT* DEMONSTRATE THAT AST IS *NOT* IMMUNE FROM SUIT UNDER 12 DEL. C. § 1203

Plaintiff claims that the legislative history of Section 1203 "demonstrate[s] conclusively" that Section 1203 does *not* immunize AST from liability stemming from

the delivery of the Empire shares to the State of Delaware.  (Brief in Opposition, p. 8).

An examination of the legislative history of Delaware's escheat statutes, however, reveals

that Plaintiff's claim is entirely false.

### A.    Plaintiff's Claim That It Seeks To Hold AST Liable For Acts Prior To The Delivery Of The Shares To The State Is A Frivolous Attempt To Evade The Immunity Provisions Of The Delaware Statutes

Plaintiff's Brief in Opposition to AST's Motion to Dismiss claims that Plaintiff

does not seek damages for AST's delivery of the Empire shares to the State of Delaware,

but rather seeks to hold AST liable for "predicate acts" that resulted in the escheatment of

the shares.  (Brief in Opposition, p. 8).  Plaintiff makes this argument in attempt to

prevent AST, and Empire, from claiming immunity under the Delaware statutes.  The

reality is that *but for* the act of delivering the Empire shares to the State, AWF would

never have brought any of the claims in the Amended Complaint against AST.  If, as

Plaintiff suggests in its Brief in Opposition, the "wrong" that it seeks recovery for is the

"predicate acts" prior to the delivery of the shares to Delaware – presumably the act of

determining the Empire shares to be abandoned – Plaintiff would have *no basis* for a

cause of action against AST based on such acts, because Plaintiff suffered *no damage*

from the mere determination that the Empire shares were abandoned.  As is clear from

the face of the Amended Complaint, the only alleged damage suffered by Plaintiff

resulted when the shares were transferred out of AWF's name and into the name of the

State of Delaware, i.e. when the shares were delivered or escheated to the State.

Delaware's statutory scheme is specifically drafted to immunize those entities involved in

the "escheatment" process – or the delivery of property to the State under its unclaimed

property laws – from all liability related to this process.

**B.    The Legislative History Of The Delaware Escheat Statutes Does Not Demonstrate That AST Does Not Qualify As A "Holder" Of Plaintiff's Shares**

The Brief in Opposition correctly notes that "[i]n 1971, Delaware added Subchapter IV, entitled "Other Unclaimed Property", to its escheat statutes."  58 Del. Laws, c. 275 (1971) (attached hereto as Exhibit "A").  (Brief in Opposition, p. 9).  While the Brief in Opposition also notes that Chapter 275 added definitions of the terms property, abandoned property and full period of dormancy, the Brief neglects to mention that Chapter 275 also broadly defined the term "holder" to mean "any person having possession, custody or control of the property of another person".[2]  58 Del. Laws, c. 275, § 1, Exhibit "A".

The Brief in Opposition correctly notes that in 1986, the Delaware Legislature, in Chapter 351, amended the definition of property in Delaware's escheat statutes by substituting for the term "stocks" the words "intangible ownership interests in corporations, *whether or not represented by a stock certificate*."  65 Del. Laws, c. 351, § 3 (1986) (emphasis added) (attached hereto as Exhibit "C").  Chapter 351 also added a sentence to the definition of the term "holder" in order to address the expanded definition of the term property, but otherwise left the broadly defined term unaltered.  65 Del. Laws, c. 351, § 1, Exhibit "C".  While the Brief in Opposition posits that Chapter 351 "redefined" the term "holder," the text of Section 1 of Chapter 351 clearly demonstrates that the Legislature in no way redefined or narrowed the broad definition of this term.  65

---

[2] In Section VI, the Brief in Opposition specifically acknowledges that the term holder is defined as "any person having possession, custody or control of the property of another person" and then notes that the Amended Complaint alleges that AST "exerted dominion and control" over the Empire shares.  (Brief in Opposition, pp. 28-29).  As such, AST qualifies as a holder of property released and discharged from any and all liability to Plaintiff, the owner of the Empire shares, pursuant to Section 1203(a).  See 12 Del. C. §§ 1198(7), 1203(a).

Del. Laws, c. 351, § 1, Exhibit "C".  (Brief in Opposition, p. 10).  As is clear from the

term's legislative history, prior to Chapter 351 the term "holder" was defined to mean:

> any person having possession, custody or control of the
> property of another person and includes . . . every other
> legal entity incorporated or created under the laws of this
> State or doing business in this State.  This definition shall
> be construed as distinguishing the term 'holder' of property
> from the term 'owner' of property as hereinbefore defined,
> and as excluding from the term 'holder' any person holding
> or possessing property by virtue of title or ownership.

58 Del. Laws, c. 275, § 1, Exhibit "A"; 58 Del. Laws, c. 426, § 2 (1972) (attached hereto

as Exhibit "B").  In Chapter 351, the Legislature updated the term "holder" by adding an

additional sentence addressing the issue of uncertificated securities, so that the term is

now defined as:

> any person having possession, custody or control of the
> property of another person and includes . . . every other
> legal entity incorporated or created under the laws of this
> State or doing business in this State.  *For purposes of this
> subchapter, the issuer of any intangible ownership in a
> corporation, whether or not represented by a stock
> certificate, which is registered on stock transfer or other
> like books of the issuer or its agent, shall be deemed a
> holder of such property.*  This definition shall be construed
> as distinguishing the term 'holder' of property from the
> term 'owner' of property as hereinbefore defined, and as
> excluding from the term 'holder' any person holding or
> possessing property by virtue of title or ownership.

12 Del. C. § 1198 (emphasis added); see 65 Del. Laws, c. 351, § 1, Exhibit "C".  Chapter

351's revision to the definition of "holder" was merely the addition of a single sentence

to the broadly defined term, which was likely added in response to that Chapter's

expansion of the definition of the term "property" in order to avoid any confusion as to

whether issuers of uncertificated securities would be excluded from the term, given the

exclusion of owners, or those holding or possessing property by virtue of title or

ownership, from the term "holder."  See 65 Del. Laws, c. 351, § 1, Exhibit "C".  Thus,

the revision of the term "holder" by Chapter 351 did not *expand* the term – as Plaintiff

incorrectly asserts – given that the term was already broadly defined.  (Brief in

Opposition, p. 10).  Instead, the Legislature clarified that the term would *include* issuers

of uncertificated securities, given that these securities were now specifically referenced in

the term "property."  65 Del. Laws, c. 351, § 1, Exhibit "C".  Additionally, there is no

support in the text of Chapter 351 for Plaintiff's argument that Chapter 351 somehow

prevented transfer agents from coming under the definition of the term "holder".  Given

that these agents could already be included under the broadly defined term, and given that

there could be no confusion as to whether transfer agents would fall under the term

"owner" – as there may be with issuers of uncertificated securities – there was no need

for Chapter 351 to include any language specifically referencing transfer agents in the

term definition of the term "holder".

For all these reasons, Plaintiff's argument that Chapter 351 "redefined" and

"expanded" the term holder so that it would not extend to transfer agents is without any

support in the legislative history of Delaware's escheat statutes.[3]  See 58 Del. Laws, c.

275, Exhibit "A", 58 Del. Laws, c. 426, Exhibit "B", 65 Del. Laws, c. 351, Exhibit "C".

---

[3] Plaintiff's argument is also misleading when it claims that Chapter 351, Section 4 "restricted holders of intangible ownership interests in a corporation from delivering such interests unless each part of the 'full period of dormancy' definition was satisfied".  (Brief in Opposition, p. 11 (citing 65 Del. Laws, c. 351, § 4)). Section 4 does not place restrictions on holders as to what property could be delivered to the State, and instead imposes requirements on *how* property should be delivered to the State – specifically, that certificated securities be delivered in the form of original certificates or replacement certificates and uncertificated securities be registered in the name of the State Escheator.  65 Del. Laws, c. 351, § 4, Exhibit "C".

**C.**    **The Legislative History Of The Delaware Escheat Statutes Does Not Demonstrate That AST Is Not Entitled To Immunity Under 12 Del. C. § 1203**

Plaintiff correctly notes that the Delaware escheat statutes were amended in 1972 to include immunity statute 12 Del. C. § 1203 entitled "Relief from Liability."  58 Del. Laws, c. 426, § 8, Exhibit "B".  (Brief in Opposition, p. 9).  Plaintiff, however, makes several erroneous claims regarding the legislative history of Section 1203.

Plaintiff claims that Section 5 of Chapter 351 "limited the ability of holders of intangible ownership interests in a corporation who do not possess the ***original*** stock certificate to invoke the Section 1203 'relief from liability' by imposing upon them the burden of delivering the duplicate certificate in 'good faith'."  (Brief in Opposition, p. 11 (emphasis in original) (citing 65 Del. Laws., c. 351, § 5)).  Again, Plaintiff completely distorts the legislative history of Section 1203 regarding the actual effect of Chapter 351's revisions to Section 1203.  An examination of Chapter 351 and Section 1203 reveals that the original language of Section 1203 was in no way eliminated by Chapter 351, and instead was designated as subsection (a) to Section 1203.  65 Del. Laws, c. 351, § 4, Exhibit "C".  While Section 1203(b) and its good faith requirement apply to "duplicate certificated securities," Section 1203(a) is in no way *limited to* original stock certificates, as Plaintiff contends.  Rather, Section 1203(a) applies to *all* "*property*" – a term that is specifically defined to include "intangible ownership interests in corporations, *whether or not represented by a stock certificate*".[4]  12 Del. C. § 1198(11).  Nothing in the actual history of Section 1203 supports Plaintiff's contention that Section

---

[4] Additionally, while the Brief in Opposition notes that the term "abandoned property" was defined to mean "property against which a full period of dormancy has run", the Brief in Opposition conveniently neglects to mention that Section 1203 specifically relieves holders from any and all liability to owners where holders deliver "*property*" to the State – and *does not limit* immunity from suit to delivery of "abandoned property," against which a full period of dormancy has run.  58 Del. Laws, c. 426, § 8, Exhibit "B".

1203 does not immunize AST from suit by Plaintiff for damages incurred by reason of the delivery of Plaintiff's Empire shares to the State of Delaware.

## IV.    THE LANGUAGE OF 12 DEL. C. § 1203 DOES *NOT* DEMONSTRATE THAT AST IS *NOT* IMMUNE FROM SUIT UNDER 12 DEL. C. § 1203

Plaintiff argues that the language of Section 1203 supports its argument that Section 1203 does not immunize AST from suit by Plaintiff.  Ironically, Plaintiff completely ignores the language of Section 1203, and the other sections of Chapter 11 of Title 12 of the Delaware Code, in reaching this erroneous conclusion.

### A.    Plaintiff Has Failed To Demonstrate That The Language Of Section 1203(a) Does Not Immunize AST From Suit By Plaintiff

In arguing that Section 1203(a) does not immunize AST from Plaintiff's claims, the Brief in Opposition finds that "[w]hereas Section 1203(a) appears to provide holders of other types of property with a 'bar to recovery' and 'a conclusive defense,' Section 1203(c) offers holders of intangible ownership interests in a corporation only the protection of the State's duty to defend against the claims of others and indemnify for any liability."  (Brief in Opposition, pp. 12-13 (citing 12 Del. C. §§ 1203(a),(c)).  From this statement, Plaintiff mistakenly concludes that Section 1203(a) does *not* apply to "holders of intangible ownership interests."  To the contrary, Section 1203(a) most certainly *does apply* to holders of intangible ownership interests – such as the shares of stock at issue in the present case – given that Section 1203(a) applies to the delivery of "property" and the term property is defined specifically to include "*intangible ownership interests in corporations*, whether or not represented by a stock certificate, bonds and other securities".  See 12 Del. C. §§ 1198(11) (emphasis added), 1203(a).  The Brief in Opposition specifically admits that "Section 1203(a) appears to provide holders . . . with

a 'bar to recovery' and 'a conclusive defense'".  (Brief in Opposition, pp. 12, 13).  Thus, as argued in AST's Motion to Dismiss, Section 1203(a) immunizes AST from suit by Plaintiff, and, as a matter of law, Plaintiff's Amended Complaint must be dismissed.

After correctly recognizing that Section 1203(a) provides holders with a bar to recovery and conclusive defense, the Brief in Opposition notes that "Section 1203(c) offers holders of intangible ownership interests in a corporation only the protection of the State's duty to defend against the claims of others and indemnify for any liability." (Brief in Opposition, p. 13 (citing 12 Del. C. § 1203(a), (c)).  The Brief then applies the following erroneous "logic": "if the Section 1203(a) 'bar to recovery' and 'conclusive defense' applied to matters such as this one involving the escheatment of shares, holders of such shares never would be exposed to any potential liability and there would be nothing for the State to indemnify, even theoretically."  (Brief in Opposition, p. 13).  This "logic" completely ignores the actual language of Section 1203, and a reading of Section 1203 reveals that Plaintiff's conclusion is completely erroneous.  While Section 1203(a) applies to release and discharge holders from "any and all liability to *the owner*, *the owner's heirs, personal representatives, successors and assigns*", it is limited to immunizing holders from suits – such as the instant one – by *owners* of property delivered to the State.  12 Del. C. § 1203(a) (emphasis added).  Whereas Section 1203(c), with its language regarding the State's indemnification of and duty to defend the holder, applies to claims to property by "another *person* . . . or another *state*".  12 Del. C. § 1203(c) (emphasis added).  Therefore, as seen from the broad definition of person in Section 1198(10), as well as from the language of Section 1203(c) itself, Section 1203(c) is *not limited* – unlike Section 1203(a) – to claims *by owners* of the property.  <u>See</u> 12 Del.

C. §§ 1198(10), 1203(a),(c).  Section 1203(c), therefore, serves a distinct and separate

purpose from Section 1203(a).  Again, Plaintiff's Brief in Opposition has failed to

demonstrate that Section 1203(a) does not apply to immunize AST from suit by Plaintiff.

In its rebuttal to AST's argument that AST is a holder of Plaintiff's shares and is

thus immunized under Section 1203(a), the Brief in Opposition again argues using flawed

logic and fails to read the actual language of the Delaware escheat statutes.[5]  Plaintiff

argues that AST is not a holder of the Empire shares because AWF itself is the holder of

the shares, as the shares "were in AWF's possession, custody and control."  (Brief in

Opposition, p. 14).  On page 13 of the Brief, Plaintiff quotes the definition of the term

holder, but conveniently excludes the last sentence of the definition, which provides:

> This definition shall be construed as distinguishing the term
> "holder" of property from the term "owner" of property as
> hereinbefore defined and as excluding from the term
> holder" any person holding or possessing property by virtue
> of title or ownership.

12 Del. C. § 1198(7).  The Delaware escheat statutes, therefore, expressly *exclude* owners

of property or those possessing title to property – as Plaintiff alleges itself to be – from

the definition of holder.  Plaintiff's argument that AST is not a holder of the shares

because Plaintiff itself is the holder must fail as a matter of law.

Finally, Plaintiff argues that the inclusion of both the term "holder" and "transfer

agent" in Section 1203(b) demonstrates the intent of the Delaware Legislature to exclude

transfer agents from the definition of holder.  (Brief in Opposition, p. 14).  To begin with,

the 1986 amendments by the Delaware Legislature do *not* demonstrate any specific intent

---

[5] Contrary to the Brief in Opposition's assertion that AST has "declared" itself to be a holder, AST's comprehensive argument for why it meets the definition of "holder" appears at pages 8-9 of its Memorandum of Law, including citations to the appropriate Delaware statutory authority.  (Brief in Opposition, p. 13).

of the legislature to exclude transfer agents from the term "holder."  See 65 Del. Laws, c.

351, Exhibit "C".  As discussed above, the 1986 amendments did not narrow the broad

definition of the term holder, or one "having possession, custody or control of the

property of another person."  See 58 Del. Laws, c. 275, Exhibit "A"; 58 Del. Laws, c.

426, Exhibit "B"; 65 Del. Laws, c. 351, Exhibit "C".  Furthermore, an examination of the

language defining the term holder, as well as the language of Section 1203(b), reveals

why both the terms holder and transfer agent may have been included in Section 1203(b).

Because Section 1203(b) relieves transfer agents from liability where a transfer agent

executes a duplicate certificate or effectuates the registration of an uncertificated security,

the possibility exists that, in doing so, the transfer agent may not have possession,

custody or control of the intangible ownership interest and therefore would not meet the

definition of holder – or one having possession, custody or control of the security – when

executing the certificate or registering the security.  See 12 Del. C. §§ 1198(7), 1203(b).

In these circumstances, Section 1203(b) steps in to immunize transfer agents where

liability could exist, and relieves the "transfer agent, registrar, or other person acting for

or on behalf of the holder" of all liability of every kind to every person.  12 Del. C. §

1203(b).  In the present case, however, AST is alleged to have delivered or transferred

Plaintiff's Empire shares to the State of Delaware, which delivery or transfer could only

occur if AST was in possession of, or had custody or control over, Plaintiff's Empire

shares; as such, AST qualifies as a holder of Plaintiff's Empire shares and is entitled to

immunity under Section 1203(a).  (See Amended Complaint, ¶¶ 3, 17, 21).

## V.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT AST IS NOT IMMUNE FROM SUIT UNDER SECTION 1203(b)

Plaintiff argues that although 12 Del. C. § 1203(b) applies to the facts of this case, it does not immunize AST from liability.  Because the Plaintiff sets forth no authority for this conclusion, and misinterprets the requirements of Section 1203(b), the Brief fails to refute the argument that AST is immune from suit by Plaintiff under Section 1203(b).

### A.    The *Azure* Decision Does Not Demonstrate That AST Is Not Immune From Suit Under Section 1203(b)

The Brief in Opposition attacks the California decision of Harris v. Verizon Comms., 46 Cal. Rptr. 3d 185 (Cal. Ct. App. 2006), which AST references for guidance in the absence of any Delaware caselaw discussing the immunity provided to transfer agents, and contends that the Verizon decision was "eviscerated" by the decision in Azure Ltd. v. I-Flow Corp., 77 Cal. Rptr. 3d 463 (Cal. Ct. App. 2008), entered twenty-five days after the filing of AST's Motion to Dismiss.[6]  Notably, the Azure decision did not overrule the Harris decision.  Additionally, while the Brief in Opposition contends that "[t]he Azure decision is directly on point" – without any analysis as to why – the Brief ignores the fact that the Azure court reached its decision that the defendant was not immune because of the California statutes' definition of the term holder, which significantly differs from the definition in the Delaware statutes.  See Azure, 77 Cal. Rptr. 3d at 467.  The Brief correctly notes that the Azure court held that immunity attaches to a corporation "*only* if plaintiff's shares 'escheat[ed] to the state'".  (Brief in Opposition, p. 15 (citing Azure, 77 Cal. Rptr. 3d at 467)).  As seen in the Azure decision, however, the court examined the language of the California statutes and found

---

[6] The Azure court did not decide the issue of whether immunity applies to a transfer agent.  See Azure Ltd. v. I-Flow Corp., 77 Cal. Rptr. 3d 463 (Cal. Ct. App. 2008).

"escheatment to the State" to mean that a full period of dormancy had run and all conditions to escheatment were met. See id. at 467. Additionally, (1) the California statutes only immunized "holders," (2) the term holder was specifically defined to mean a "person in possession of property *subject to this chapter*," and (3) the phrase "subject to this chapter" was described by the statutes to mean property that had *in fact* satisfied all the conditions necessary to be eligible for escheatment to the state. See id. Under the California statutes, a defendant could be a holder, and therefore immune under the California statutes, only if the property in fact satisfied all the conditions necessary for escheatment to the state.

The Delaware escheat statutes' definition of holder contains no such limitation. See 12 Del. C. § 1198(7). Nowhere does the Delaware statutes' definition of the term holder reference the requirements for abandoned property to escheat to the state – i.e. that a full period of dormancy has run. See id. Additionally, although the term holder references the term property, nowhere does the Delaware statutes' definition of the term property require a full period of dormancy to have run. See 12 Del. C. § 1198(11). In this way, the Azure decision is not, as the Brief contends, directly on point and does not provide authority for finding that AST is not immune from liability under Section 1203(b).

**B.    Plaintiff's Interpretation Of Section 1203(b)'s Good Faith Requirement Is Contrary To Law And Fails To Refute The Argument That AST Is Immune From Plaintiff's Suit Under Section 1203(b)**

Throughout Sections III. D. and E. of the Brief in Opposition, Plaintiff completely mischaracterizes the condition to Sections 1203(b) and (c) that the actor have delivered

the shares to the State in good faith, as well as the actual requirements for "good faith." See 12 Del. C. §§ 1203(b),(c).  (Brief in Opposition, pp. 16-25).

Plaintiff's fundamental argument is that because the Amended Complaint alleges that the "Empire shares were delivered to the Delaware Escheator before the full five-year period of dormancy had run," AST did not act in good faith, or, put another way, because the full period of dormancy is alleged not to have run with respect to Plaintiff's shares before they were delivered to the State, AST could not have acted in good faith. (Brief in Opposition, pp. 16-25).  In essence, the Brief equates *actual compliance* with the requirements for the escheat of property under the Delaware statutes with acting in *"good faith"* under Section 1203.  This is simply *not* the definition of good faith under the Delaware statutes.

Section 1203(d) defines the term good faith:

> [f]or the purposes of this section, "good faith" means that: (1) Payment or delivery was made in a reasonable attempt to comply with this subchapter; (2) The person delivering the property was not a fiduciary then in breach of trust in respect to the property and had a reasonable basis for believing, based on the facts then known to the person, that the property was abandoned for the purposes of this subchapter; and (3) There is no showing that the records pursuant to which the delivery was made did not meet reasonable commercial standards of practice in the industry.

12 Del. C. §1203(d).  If the term good faith was intended to mean *actual compliance* with the requirements for the escheat of property under the Delaware statutes, the Legislature clearly would not have formulated the term to mean "a *reasonable attempt* to comply with [the escheat statutes]."  See 12 Del. C. § 1203(d)(1) (emphasis added).  Furthermore, if delivering property in good faith was intended to require a full period of dormancy to have run regarding the property, the term "period of dormancy" could have been included

within the meaning of the term "good faith" or within the meaning of the term "property"; however, it is included in neither definition. See 12 Del. C. §§ 1198(11), 1203(d). Finally, if the Legislature intended to require a full period of dormancy to have run with regard to property in order for the actor to have acted in "good faith," the statutory definition of the term good faith could have referred to the property delivered as "abandoned property" – i.e., property against which a full period of dormancy has run – rather than using the term "property," which incorporates no such requirement. See 12 Del. C. §§ 1198(1), (11), 1203(d).

Significantly, the Amended Complaint does not allege that AST did not act in good faith, as defined in Section 1203(d), when delivering the shares to the State. While Plaintiff repeatedly contends that AST has not demonstrated that it acted in good faith pursuant to Section 1203(d), a reading of Section 1203(d) reveals that it is *Plaintiff's burden* to show that AST did *not* act in good faith in order to state a claim against AST for which AST is not entitled to immunity under the Delaware statutes. See 12 Del. C. § 1203(d) (defining "good faith" to mean that "*[t]here is no showing* [presumably by Plaintiff] that the records pursuant to which the delivery was made *did not* meet reasonable commercial standards of practice in the industry" (emphasis added)).

**C.    The Uniform Unclaimed Property Act Of 1981 Cannot Support Plaintiff's Claim That AST Is Not Immune From Suit Under 12 Del. C. § 1203(b)**

Throughout Section III. E. and its subsections, the Plaintiff repeatedly relies on the statutory language and commentary of the Uniform Unclaimed Property Act of 1981 ("UUPA(1981)"). (Brief in Opposition, pp. 18-25). However, Plaintiff cites no authority supporting the conclusion that Delaware has adopted the UUPA(1981) in whole or in part. The text of Uniform Laws Annotated, in which the UUPA(1981) appears, indicates

that Delaware has *not* adopted the UUPA(1981).  See UNIF. UNCLAIMED PROP. ACT

(1981), 8C U.L.A. 151 (2001 & Supp. 2008).  Furthermore, the language of the statutory

sections of the UUPA(1981) referenced by the Brief in Opposition is *materially different*

from the language used in the Delaware escheat statutes.  Compare UNIF. UNCLAIMED

PROP. ACT (1981) § 10, 8C U.L.A. 207 (2001) with 12 Del. C. § 1198.

## VI.   PLAINTIFF DOES NOT ADDRESS THE THREE ELEMENTS MISSING FROM ITS BREACH OF CONTRACT CLAIM AGAINST AST

In its Motion, AST showed that Count V of the Amended Complaint failed to

allege a claim for breach of contract given that the Amended Complaint did not allege the

three elements necessary for Plaintiff to have an enforceable right as a third party

beneficiary under the Empire-AST contract: (1) that Empire and AST intended that

Plaintiff would benefit from the contract; (2) the benefit to Plaintiff was intended as a gift

or in satisfaction of a pre-existing obligation to Plaintiff; and (3) the intent to benefit

Plaintiff was a material part of Empire and AST's purpose in entering into the contract.[7]

In its Brief in Opposition, Plaintiff does not point to any allegations in the

Amended Complaint that would satisfy the required elements of the breach of contract

claim against AST.  Instead, Plaintiff speculates that in the event AST assumed duties to

shareholders in its contract with Empire, Plaintiff may be a beneficiary of the contract,

and adds nothing to the conclusory allegation in the Amended Complaint that Plaintiff

was a third party beneficiary of the Empire-AST contract.  (Brief in Opposition, pp. 27-

28; Amended Complaint, ¶ 46).

The complaint must provide the grounds upon which the plaintiff's claim rests

through factual allegations sufficient to raise a right to relief above the speculative level,

---

[7] To the extent the contract is governed by New York law, the result would be the same.  See infra § X.

and must set forth enough information to suggest that relief would be based on some recognized legal theory. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007); Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007). The Brief in Opposition does not point to any allegations in the Amended Complaint that would raise a right to relief *above* the speculative level, therefore Count V of the Amended Complaint must be dismissed with prejudice.

## VII.  PLAINTIFF HAS NOT OVERCOME THE SHOWING IN ACS'S MOTION TO DISMISS THAT ACS IS IMMUNE FROM SUIT UNDER DELAWARE'S DOCTRINE OF SOVEREIGN IMMUNITY

In its Motion to Dismiss, ACS showed that it is entitled to the State of Delaware's sovereign immunity protection, thereby precluding it from lawsuits such as the instant one by Plaintiff. Plaintiff's Brief in Opposition does not overcome this showing in ACS's Motion to Dismiss. Nowhere does the Brief in Opposition point to any waiver of sovereign immunity by Delaware's General Assembly, as required in order to bring state law claims against ACS. See Doe v. Cates, 499 A.2d 1175, 1176-1177 (Del. 1985). Instead, the Brief in Opposition makes the bare assertion that there is no evidence demonstrating that ACS is immune by virtue of its contract with Delaware, wholly ignoring that the evidence of ACS's immunity is clear from the face of the Complaint and Amended Complaint. As discussed in the Motion to Dismiss, the Complaint repeatedly admits that ACS is the "authorized agent" for the State of Delaware, and the Amended Complaint recognizes that ACS's acts forming the basis for Plaintiff's claims were performed pursuant to ACS's contract with the State of Delaware and while ACS was assuming the obligations of the State. (Complaint, ¶¶ 28, 32, 34, 38 and 42; Amended Complaint, ¶¶ 4, 36).

For the first time, Plaintiff alleges that ACS was an independent contractor – an allegation appearing *nowhere* in the Amended Complaint – and cites to caselaw referencing the Federal Tort Claims Act, which is in no way relevant to the sovereign immunity granted under the Delaware Constitution. (Brief in Opposition, p. 30). To the extent Plaintiff intends that the allegation in the Brief in Opposition that ACS is an independent contractor amend the Amended Complaint, the Court may not take into account this additional allegation. See Southwick Clothing LLC v. GFT (USA) Corp., No. 99 Civ. 10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers."); In re Colonial Ltd. Partnership Litig., 854 F. Supp. 64, 79 (D. Conn. 1994) (noting that allegations introduced by a plaintiff in a Memorandum of Law in Opposition to a defendant's Motion to Dismiss are not properly before the Court).

Illogically, the Brief in Opposition's only reference to any waiver by the General Assembly of the sovereign immunity of the State is a reference completely inappropriate in the present case. The Brief in Opposition cites authority for the proposition that when Delaware's General Assembly authorizes the State to enter into a contract, the State waives the protection of sovereign immunity "for breach of *that contract*." (Brief in Opposition, p. 31 (emphasis added)). The Brief in Opposition then concludes that "by entering into a contract with ACS, Delaware itself waived sovereign immunity as to *breach of that contract*. Accordingly, ACS has no sovereign immunity to invoke." (Brief in Opposition, p. 31 (emphasis added)). Nowhere in the Amended Complaint, however, does Plaintiff seek to maintain a claim for breach of contract based on a

contract between the State of Delaware and ACS. This "waiver" of sovereign immunity, therefore, cannot and does not apply to Plaintiff's claims against ACS.

Finally, the Brief in Opposition's reliance on caselaw from the Ninth Circuit to explain away the fact that Plaintiff repeatedly admitted in the Complaint that ACS is the "authorized agent" for the State of Delaware, and was acting as the State's authorized agent when Plaintiff's shares were escheated, is unavailing. (Complaint, ¶¶ 28, 32, 34, 38 and 42). The Second Circuit does not allow a plaintiff to advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version in the belief that the amendment of the pleading would make it any the less an admission of the party. See U.S. v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991) (quoting U.S v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984)); Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705, 707 (2d Cir. 1989).

## VIII. PLAINTIFF DOES NOT MEET THE ARGUMENT TO DISMISS THE NEGLIGENCE CLAIM AGAINST ACS

The Brief in Opposition contends that Plaintiff may maintain a negligence claim against ACS because ACS has "admitted" that it was negligent in carrying out the AST-ACS contract by virtue of this firm's representation of AST in the present action. Plaintiff cites no authority for its assertion that representation by a co-defendant's counsel qualifies as an admission of liability. Such a meritless claim can in no way serve as the factual allegations sufficient to survive a Rule 12(b)(6) motion to dismiss. See Kilgore v. R.J. Kroener, Inc., No. 00C-08-147, 2002 WL 480944, at *5 n.7 (Del. Super. Ct. Mar. 14, 2002) (rejecting plaintiff's argument that indemnification provision was an admission by defendant of responsibility for negligence and finding plaintiff's claim that defendant's

indemnification pleading is an "admission against interest" to be without merit).  Because

the Amended Complaint fails to allege a relationship between ACS and Plaintiff that

would create a legal obligation or duty of ACS to act for the benefit of Plaintiff, its

negligence claim must be dismissed.

Additionally, as set forth in ACS's Motion to Dismiss, Plaintiff's bald assertion in

the Amended Complaint that a statute or regulation exists to impose a duty on ACS,

without identifying any existing statute or regulation that *in fact exists* to impose such a

duty on ACS, will not be credited in deciding a motion to dismiss and cannot support a

negligence claim against ACS.  See Law Offices of Curtis V. Trinko, L.L.P. v. Bell

Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002).  Moreover, Plaintiff's reference to 12 Del.

C. § 1199(a) in its Brief in Opposition, however, cannot remedy the deficiencies of

Plaintiff's Amended Complaint, as a court may not take into account new facts,

allegations or theories asserted in a memorandum opposing a motion to dismiss.  See

Southwick Clothing LLC, 2004 WL 2914093, at *6; In re Colonial Ltd. Partnership

Litig., 854 F. Supp. at 79.  In short, Plaintiff may not amend the Amended Complaint in

its Brief in Opposition.  See O'Brien v. National Property Analysts Partners, 719 F. Supp.

222, 229 (S.D.N.Y. 1989) (citing Jacobson v. Peat, Marwick, Mitchell & Co., 445 F.

Supp. 518, 526 (S.D.N.Y. 1977) and finding that it is axiomatic that a complaint cannot

be amended by the briefs in opposition to a motion to dismiss); see also Pandozy v.

Segan, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007).  Furthermore, even if the allegation

that ACS violated a duty to Plaintiff in 12 Del. C. § 1199(a) could be considered by the

Court, Plaintiff's negligence claim would still fail because Section 1199(a) imposes no

duty on ACS to act for the benefit of Plaintiff.  See 12 Del. C. § 1199(a).

**IX.    PLAINTIFF DOES NOT MEET THE ARGUMENT TO DISMISS
PLAINTIFF'S CLAIM FOR NEGLIGENCE PER SE AGAINST ACS**

In its Motion, ACS showed that the Amended Complaint fails to state a claim for

negligence per se because: (1) it fails to allege that ACS violated a statute enacted for the

safety of others, as required by Delaware law, and (2) it fails to identify a single statute or

regulation providing a standard of conduct that ACS has allegedly violated – an element

required to plead a claim for negligence per se.  See Carroll v. Getty Oil Co., 498 F.

Supp. 409, 412 (D. Del. 1980); Tydings v. Lowenstein, 505 A.2d 443, 446 (Del. 1986).

Plaintiff's Brief in Opposition does not address or overcome this showing.  Instead, the

Plaintiff again wrongly avers that Delaware's escheatment law is predicated upon the

UUPA(1981).  See supra § V. C. (discussing inapplicability of UUPA(1981) to Delaware

statutes).   The Plaintiff then ostensibly cites to a California case applying California's

escheatment statutes as authority for the purpose of *Delaware's* escheatment law.

Finally, the Plaintiff makes the wholly unsupported assertion that the purpose of

Delaware's escheatment law is to protect the public.  Nowhere in the Brief in Opposition,

however, does Plaintiff point to an allegation in the Amended Complaint that ACS

violated a statute enacted for the *safety of others*.  Because Plaintiff has not alleged –

indeed, cannot allege – that ACS violated a statute enacted for the safety of others, its

claim against ACS for negligence per se must be dismissed, with prejudice.

**X.    PLAINTIFF DOES NOT ADDRESS THE ELEMENTS MISSING
FROM ITS BREACH OF CONTRACT CLAIM AGAINST ACS**

In its Motion, ACS showed that the Amended Complaint fails to state a claim for

breach of contract against ACS because the facts pled simply do not establish that

Plaintiff qualified as a third party beneficiary to the contract between AST and ACS.  In

responding to this argument, Plaintiff states that neither AST nor ACS maintains its principal place of business in Delaware, ignores the fact that the Amended Complaint alleges ACS to be a Delaware corporation as well as the allegations in the Amended Complaint that Empire is a Delaware corporation and the Empire shares were delivered to the State of Delaware, and concludes that "AWF's breach of contract claim against ACS, therefore, likely is not governed by Delaware law."  (Brief in Opposition, p. 33). The Brief does not engage in any further choice of law analysis.  The Brief in Opposition then recites conclusory allegations regarding the AST-ACS contract, which are not alleged in the Amended Complaint and cannot be considered on this motion to dismiss. See Southwick Clothing LLC, 2004 WL 2914093, at *6.

Even if Delaware law does not apply to Plaintiff's claim for breach of contract against ACS, and New York law governs the breach of contract claim, the result would be the same – Plaintiff has not alleged, and cannot allege, the elements necessary for Plaintiff to have an enforceable right as a third party beneficiary under the AST-ACS contract.  Like Delaware, under New York law, in order to have a breach of contract claim upon a third-party beneficiary theory, the plaintiff must allege "that the contract was intended for his benefit."  State of California Public Employees' Retirement System v. Shearman & Sterling, 95 N.Y.2d 427, 434 (N.Y. 2000).  New York law provides that a court should dismiss a plaintiff's breach of contract claim based upon a third-party beneficiary theory where the plaintiff fails to allege sufficient facts to establish that it was an intended beneficiary of a contract.  Griffin v. DaVinci Development, LLC, 845 N.Y.S.2d 97, 98 (N.Y. App. Div. 2007).  Additionally, where a contract does not contain an express provision identifying plaintiff as an intended third-party beneficiary, nor does

it otherwise reveal a specific intent to confer a benefit upon plaintiff or permit plaintiff to enforce the contract terms, the plaintiff has no third party beneficiary claim. <u>Conklin v. City of Saratoga Springs</u>, 699 N.Y.S.2d 820, 821 (N.Y. App. Div. 1999). As a matter of law, incidental beneficiaries of a contract cannot recover under a breach of contract theory. <u>Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Partnership</u>, 858 N.Y.S.2d 109 (N.Y. App. Div. 2008); <u>see also</u> <u>Roosevelt Islanders for Responsible Southtown Development v. Roosevelt Island Operating Corp.</u>, 735 N.Y.S.2d 83, 98 (N.Y. App. Div. 2001) (finding that an incidental beneficiary is a third party that may derive a benefit from the performance of a contract though that party is neither the promisee nor the one to whom performance is to be rendered).

Plaintiff does not identify any allegations in the Amended Complaint that ACS and AST intended their contract to benefit Plaintiff, and therefore cannot satisfy the required elements of the breach of contract claim against ACS.

## XI.    PLAINTIFF DOES NOT MEET THE ARGUMENT TO DISMISS THE CONVERSION CLAIM AGAINST ACS

In its Motion, ACS showed that the Amended Complaint failed to allege that ACS exercised any wrongful act of dominion or control over the Empire shares, as required to state a claim for conversion. <u>See</u> <u>Arnold v. Society for Savings Bancorp, Inc.</u>, 678 A.2d 533, 536 (Del. 1996). In its Brief in Opposition, Plaintiff fails to refute this showing.

Instead, Plaintiff introduces new facts that are alleged for the first time in the Brief In Opposition that appear *nowhere* in the Amended Complaint, in an effort to defeat the Motion to Dismiss. For example, the Brief in Opposition states that ACS instructed AST and/or Empire to cancel Plaintiff's Empire shares certificate and that ACS instructed AST and/or Empire to deliver a duplicate certificate to the Delaware Escheator –

allegations that do not appear anywhere in the Amended Complaint. (Brief in Opposition, p. 35). As discussed above, the Court may not take into account additional facts or allegations asserted in a memorandum opposing a motion to dismiss. See Southwick Clothing LLC, 2004 WL 2914093, at *6; In re Colonial Ltd. Partnership Litig., 854 F. Supp. at 79 (noting that allegations introduced by a plaintiff in a Memorandum of Law in Opposition to a defendant's Motion to Dismiss are not properly before the Court).

Additionally, although Plaintiff asserts that the allegations of the Amended Complaint satisfy the elements of conversion, Plaintiff does not address *how* the allegations satisfy the required elements of the claim. Plaintiff argues that ACS, through its contract with AST, exercised authority to determine whether Empire shares qualified as abandoned property and made such a determination. Plaintiff nowhere explains how the act of reviewing records to determine if property in the possession of another qualifies as abandoned property, is an act of control or dominion over property sufficient to be actionable as a claim for conversion. Thus Plaintiff has failed to allege that ACS exercised any wrongful dominion or control over Plaintiff's Empire shares, and therefore the claim for conversion against ACS must be dismissed with prejudice.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

By: _____s/ Kellie M. MacCready_____
Steven A. Haber (SH4739)
Kellie M. MacCready (KM3024)
1617 John F. Kennedy Boulevard - 19th Floor
Philadelphia, PA 19103
(215) 665-3000; (215) 665-3165 (facsimile)
*Attorneys for Defendants American Stock Transfer & Trust*
Dated: August 7, 2008    *Co. and Affiliated Computer Services, Inc.*

4300309                                26