UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                                                   :

A.W. FINANCIAL SERVICES, S.A.,
as successor in interest to TERTIAIRE              :
INVESTISSEMENT, S.A.,

                                                                                     :

                       Plaintiff,

                                                                                      :

          - against -                                            07 CIV 8491 (SHS) (RLE)

                                                                                                              :

EMPIRE RESOURCES, INC., AMERICAN
STOCK TRANSFER & TRUST COMPANY, and   :
AFFILIATED COMPUTER SERVICES, INC.,

                                                                                             :

                       Defendants.

                                                                                              :
------------------------------------------------------------- X

## EMPIRE RESOURCES, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Defendant Empire
Resources, Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. EMPIRE DID NOT WAIVE ITS RIGHT TO MOVE TO DISMISS BY HAVING ANSWERED THE ORIGINAL COMPLAINT ............................................. 2

II. SECTION 1203(a) OF THE DELAWARE CODE COMPLETELY BARS PLAINTIFF'S CLAIMS ............................................................................................... 3

III. PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE .................................. 5

 A. Empire Is Not Liable For The Alleged Negligence Of Its Agent's Agent ............ 6

 B. The Amended Complaint Fails To Allege Proximate Cause ............................... 7

IV. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM FAILS ............................... 8

V. PLAINTIFF'S CONVERSION CLAIM FAILS BECAUSE EMPIRE NEVER INTENTIONALLY EXERCISED DOMINION OR CONTROL .................................. 8

VI. THERE IS NO FAILURE TO REGISTER CAUSE OF ACTION .................................. 9

VII. PLAINTIFF'S SPECIFIC PERFORMANCE CLAIM FAILS ........................................ 9

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES:**                                                                                                         **PAGE(S)**

AHS N.M. Holdings, Inc. v. Healthsource, Inc.,
2007 WL 431051 (Del. Ch. Feb. 2, 2007) ...................................................................................10

Alessi v. Beracha,
849 A.2d 939 (Del. Ch. 2004) .....................................................................................................8

Arnold v. Soc'y for Sav. Bancorp.,
678 A.2d 533 (Del. 1996) ...........................................................................................................8

Bell Atl. Corp. v. Twombly,
127 S. Ct. 1955 (2007) ................................................................................................................9

Estate of Smith v. Underwood,
487 S.E.2d 807 (N.C. Ct. App. 1997) .........................................................................................7

Gildor v. Optical Solutions, Inc.,
2006 WL 1596678 (Del. Ch. June 5, 2006) ..............................................................................10

Int'l Bus. Machs. Corp. v. Comdisco, Inc.,
1993 WL 259102 (Del. June 30, 1993) .......................................................................................9

LeVan v. Independence Mall, Inc.,
940 A.2d 929 (Del. 2007) ...........................................................................................................5

In re Parmalat Sec. Litig.,
421 F. Supp. 2d 703 (S.D.N.Y. 2006) .........................................................................................2

Patel v. Contemporary Classics of Beverly Hills,
259 F.3d 123 (2d Cir. 2001) ........................................................................................................3

In re Reliance Sec. Litig.,
91 F. Supp. 2d 706 (D. Del. 2000) ..............................................................................................8

Ross v. United States,
574 F. Supp. 536 (S.D.N.Y. 1983) ..............................................................................................3

Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.,
217 F.R.D. 305 (N.D.N.Y. 2003) ................................................................................................3

Shields v. Citytrust Bancorp, Inc.,
25 F.3d 1124 (2d Cir. 1994) ........................................................................................................2

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE(S)**

U.S. Dimension Prods., Inc. v. Tassette, Inc.,
290 A.2d 634 (Del. 1972) ..........................................................................................................10

U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.,
505 F. Supp. 2d 20 (D.D.C. 2007) ...............................................................................................7

Wilmington Country Club v. Cowee,
747 A.2d 1087 (Del. 2000) ..........................................................................................................7

**STATUTES**

65 Del. Laws, c. 351 §5 .................................................................................................................4

Del. Code Ann. tit. 6 §8-401..........................................................................................................9

Del. Code Ann. tit. 12 §1198 .........................................................................................................4

Del. Code Ann. tit. 12 §1203 ...............................................................................................1, 2, 3, 4

Fed. R. Civ. P. 12...........................................................................................................................3

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 223 cmt. b..................................................................................9

Restatement (Third) of Agency § 3.15 ..........................................................................................6

Reporter's Notes, Restatement (Third) of Agency § 3.15 .............................................................7

Defendant Empire Resources, Inc. ("Empire") respectfully submits this memorandum in reply to the Memorandum of Law of A.W. Financial, S.A. in Opposition to the Motion of Defendant Empire Resources, Inc. to Dismiss the Amended Complaint (the "Opposition" or "Opp.") and in further support of Empire's motion to dismiss (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

In this action plaintiff seeks to hold Empire, a public company, responsible for the alleged mistaken escheatment to the State of Delaware of plaintiff's Empire stock <u>by the agent of Empire's stock transfer agent</u>.  Plaintiff seeks to do so under various legal theories -- even though the Delaware statute plainly bars plaintiff's claims, even though the Amended Complaint does not allege that Empire itself had any role in the escheatment, and even though plaintiff already has recovered the proceeds Delaware received in the sale of the stock.

Empire thus moved to dismiss on the grounds that Section 1203(a) of the Delaware Code is designed to encourage escheatment and, on its face, completely bars <u>all</u> of plaintiff's claims.  Empire also established in the Motion that the Amended Complaint fails to state a claim for negligence because (a) it pleads no facts showing that Empire was involved in the escheatment and (b) Empire's alleged negligence occurred prior to the escheatment and thus was not a proximate cause.  In addition, the Motion showed that the Amended Complaint failed to state claims for conversion, breach of fiduciary duty, and failure to register, and that specific performance is not available.  Plaintiff's Opposition fails to overcome these showings:

<u>First</u>, plaintiff's argument that the Federal Rules of Civil Procedure bar the Motion because Empire answered the original complaint is simply wrong.  <u>See</u> Point I.

Second, despite the fact that plaintiff uses much of its 31-page brief to recite the history of Delaware Code Section 1203, it fails to explain away the plain language of the statute which expressly exempts Empire from any liability under any legal theory. See Point II.

Third, plaintiff's attempt to save its negligence claim fails because agency theory cannot overcome the fact that Empire had no alleged role in the escheatment and it was not Empire's agent, but the agent's agent, that allegedly escheated the stock, and plaintiff still fails to articulate a colorable theory of proximate cause. See Point III.

Finally, plaintiff fails to state a claim for breach of fiduciary duty because no such duty was owed by Empire to plaintiff (see Point IV); plaintiff fails to allege a necessary element of conversion -- that Empire intentionally exercised dominion or control of plaintiff's stock (see Point V); plaintiff cannot state a claim for failure to register because there is no such common law cause of action (see Point VI); and specific performance is not available (see Point VII).

## ARGUMENT

**I.   EMPIRE DID NOT WAIVE ITS RIGHT TO MOVE TO DISMISS BY HAVING ANSWERED THE ORIGINAL COMPLAINT**

The Opposition contends that Empire waived its right to move to dismiss the Amended Complaint by answering the original complaint. (Opp. at 7-8.) It is well-settled, however, that an amended pleading "supersedes the original and entitles a defendant to raise substantive arguments aimed at 'judicial resolution of the controversy' in a new responsive pleading, even if those arguments were not raised in response to the original complaint." In re Parmalat Sec. Litig., 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) (defense raised in motion to dismiss amended complaint not waived even though it was not raised in response to original complaint) (citations omitted). Indeed, while certain defenses "are irrevocably waived by answering an original complaint [without raising them]," Shields v. Citytrust Bancorp, Inc., 25

F.3d 1124, 1128 (2d Cir. 1994) (citation omitted); see also Fed. R. Civ. P. 12(h)(1), the defense of failure to state claim under Rule 12(b)(6) "is not waivable." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citation omitted). Thus, a defendant can move to dismiss an amended pleading for failure to state a claim even if it answered a prior pleading. Parmalat, 421 F. Supp. 2d at 713 n.90 ("Fed. R. Civ. P. 12(g) and (h)(2) explicitly provide that the defense of failure to state a claim is not waived" when a defendant moves to dismiss an amended complaint after answering the original complaint).[1] Empire, therefore, has not waived its motion.[2]

## II. SECTION 1203(a) OF THE DELAWARE CODE COMPLETELY BARS PLAINTIFF'S CLAIMS

Empire established in its moving brief (at 11-15) that Section 1203(a) of the Delaware Code, by its plain and unambiguous language, expressly cuts-off any claim against Empire relating to the escheatment of plaintiff's stock. Plaintiff, in response, essentially ignores the clear statutory language and instead resorts to a lengthy discourse on the history of the statute

---

[1] Each case relied on by plaintiff involved an attempt to raise a defense for the first time in response to an amended complaint that is waived if not included in the initial response. See Opp. at 8 (citing Ross v. United States, 574 F. Supp. 536, 539 (S.D.N.Y. 1983) (failure to contest personal jurisdiction and sufficiency of process and service in response to initial complaint resulted in waiver); Sears Petroleum & Transp. Corp. v. Ice Ban Am, Inc., 217 F.R.D. 305, 307 (N.D.N.Y. 2003) (failure to contest personal jurisdiction in response to initial complaint resulted in waiver)).

[2] In any event, Empire did raise the defense of failure to state a claim in its answer to the original complaint. See Answer and Affirmative Defenses of Defendant Empire Resources, Inc. to Complaint, ¶ 50. Moreover, even if there was not an amended complaint, Empire's motion would be permitted as a Rule 12(c) motion for judgment on the pleadings. See Fed. R. Civ. P. 12(h)(2)(B); Patel, 259 F.3d at 126-27 (motion to dismiss under Rule 12(b)(6) should have been considered as a Rule 12(c) motion when filed after answering).

in support of an argument that 1203(b) is the applicable subsection, not 1203(a).  (See Opp. at 8-22.)³  We thus will start with Section 1203(a), which provides, in relevant part, that:

> [the] delivery of property to the State Escheator by any holder shall terminate any legal relationship between the holder and the owner and <u>shall release and discharge such holder from any and all liability to the owner . . . regardless of whether such property is in fact and in law abandoned property and such delivery and payment may be pleaded as a bar to recovery and shall be a conclusive defense</u> in any suit or action brought by such owner . . . by reason of such delivery or payment.

Del. Code Ann. tit. 12 § 1203(a) (Emphasis supplied.).  "Property" is defined to include "intangible ownership interests in corporations, whether or not represented by a stock certificate," and "holder" is defined to include "the issuer of any intangible ownership interest in a corporation."  Id. §§ 1198 (7) & (11).

Breaking this subsection into its parts, there can be no doubt that it applies here:

- the *"delivery of property to the State Escheator by any holder"*: Plaintiff alleges that Empire, a "holder" by definition, through its subagent delivered plaintiff's Empire stock (the "property") to the State Escheator.

- *"shall release and discharge such holder from any and all liability to the owner . . . regardless of whether such property is in fact and in law abandoned"*:  Empire thus is expressly released from any and all liability to plaintiff (the owner) even where, as here, plaintiff alleges that the property was <u>not</u> abandoned.

---

³ In discussing the statute's history, plaintiff characterizes the intent behind certain subsections when the enacting law contains no statement as to legislative history or intent.  For example, plaintiff implies that, in adding Subsections 1203(b)-(d), the Delaware legislature "limited the ability of holders of intangible ownership interests in a corporation who do not possess the ***original*** stock certificate to invoke the Section 1203 'relief from liability' by imposing upon them the burden of delivering the duplicate certificate in 'good faith' . . . ."  (Opp. at 11.)  The law, however, simply states that Section 1203 is amended "by designating the current Section as subsection (a) and adding the following new subsections: . . . ."  65 Del. Laws, c. 351 § 5 (1986)).  Plaintiff, therefore, is passing off its interpretation of the intent behind Sections 1203(b)-(d) as if it was the intent stated by the legislature.

- *"such delivery and payment may be pleaded as a bar to recovery and shall be a conclusive defense in any suit or action brought by such owner"*: this is an action brought by the owner by reason of the delivery of its ownership interest to the State Escheator, and per the words of the statute such delivery is a bar to recovery and is a conclusive defense.

As Section 1203(a) therefore applies to this case by its clear and unambiguous terms, there is no need to look any further -- to the history of the statute or elsewhere. <u>LeVan</u> v. <u>Independence Mall, Inc.</u>, 940 A.2d 929, 932-33 (Del. 2007) ("An unambiguous statute precludes the need for judicial interpretation, and the plain meaning of the statutory language controls") (citation and quotation marks omitted). Moreover, the supposed "history" relied on by the plaintiff is silent as to any legislative intent that conflicts with the unambiguous language of Section 1203(a).

Moreover, even if Empire was relegated to Section 1203(b) -- which it is not -- it would still not save plaintiff's claims. While that subsection's bar to liability requires a showing of "good faith" by the defendant, it is clear that Empire did act in good faith here: Empire retained defendant American Stock Transfer & Trust Company ("AST"), which is "the largest independent stock transfer agent in the nation,"[4] to handle all matters related to Empire's stock. In addition, there are no allegations that Empire was even aware of the escheatment of plaintiff's shares. Thus, there can be no factual issue that Empire acted in good faith.

In sum, Section 1203 completely bars all of plaintiff's claims against Empire.

### III.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE

As established in the moving brief (at 15-17), in addition to the statutory bar, the Amended Complaint is void of factual allegations necessary to state a negligence claim against Empire. Plaintiff does not allege that Empire played any role in, or even had knowledge of, the escheatment, or that Empire knew that its stock transfer agent, AST, hired its own agent,

---

[4] <u>See</u> www.amstock.com/corporate/corporate_advantage.asp (last visited on Aug. 7, 2008).

defendant Affiliated Computer Services ("ACS"), to handle escheatment.  See Am. Compl. ¶¶ 23-27.  Plaintiff, however, does allege that Empire hired AST as its transfer agent "to account properly for the status of shares of the corporation."  Id. ¶ 45.  Since no facts are pleaded suggesting any negligence by Empire in the hiring of AST, there is no pleading of any negligence by Empire.

### A. Empire Is Not Liable For The Alleged Negligence Of Its Agent's Agent

In its Opposition, plaintiff does not contest the foregoing.  Instead, plaintiff asserts that the Amended Complaint states a claim in negligence because Empire can be held liable for the alleged negligence of its transfer agent, AST.  (Opp. at 24.)  The Amended Complaint itself, however, undermines this theory because it alleges that "AST delegated to [defendant] ACS . . . the authority to determine whether the Empire shares owned by [plaintiff] qualified as unclaimed property," and ACS "assumed the duties attendant thereto owed by AST to corporations such as Empire . . . ."  (Am. Compl. ¶¶ 51-52.)  Thus, plaintiff alleges that it was ACS, not AST, that was negligent in determining that the Empire shares owned by plaintiff should be escheated.  (Id. ¶¶ 37-38.)  Given that there is no allegation that Empire was even aware of AST's appointment of ACS, much less that it was somehow negligent in that act, plaintiff's theory must be that Empire is strictly liable for the negligence of its agent's agent.

That is not the law.  ACS was Empire's subagent.  See U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 505 F. Supp. 2d 20, 31 (D.D.C. 2007) ("'A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal . . . .'") (quoting Restatement (Third) of Agency § 3.15(1)) (alter. omitted).  And "[u]nless a principal has explicitly or implicitly directed the retention of a subagent" -- not alleged here, "an agent who is hired by an agent to carry out the principal's work remains the hiring agent's agent

alone." Reporter's Notes, Restatement (Third) of Agency § 3.15 (citing Estate of Smith v. Underwood, 487 S.E. 2d 807, 16 (N.C. Ct. App. 1997)); see also U.S. ex rel. Miller, 505 F. Supp. 2d at 32 ("If the agent hires the subagent to carry out the principal's request, the subagent is the agent of the agent only. If the principal directs, either expressly or impliedly, the agent to hire the subagent, the subagent becomes the agent of the principal") (citation omitted).

Here, the Amended Complaint contains no allegation that Empire directed, either explicitly or implicitly, AST to hire a subagent. As a result, Empire cannot be vicariously liable for the alleged negligence of ACS, the subagent, and there is no allegation of negligence by Empire itself.

### B. The Amended Complaint Fails To Allege Proximate Cause

As further established in the moving brief (at 16-17), plaintiff's negligence claim also fails because plaintiff does not allege any facts from which it can be inferred that Empire's actions were the proximate cause of the alleged damages. In its response, plaintiff correctly notes that Delaware follows the "but for" test for proximate causation, and plaintiff then argues that "[b]ut for Empire's negligent determination that a full five-year period of dormancy had run against [plaintiff]'s Empire Shares, those shares never would have been delivered to the Delaware Escheator, and [plaintiff] never would have suffered damages." (Opp. at 25.)

This attempted application of the "but for" rule omits two very significant elements: one, that it is nowhere alleged -- nor could it be -- that Empire made any such determination (it allegedly was ACS), and two, proximate cause only exists if a natural and continuous sequence is "unbroken by any efficient intervening cause." Wilmington Country Club v. Cowee, 747 A.2d 1087, 1097 (Del. 2000). Here, any (unidentified) negligence by Empire occurred "*[p]rior* to the time the Empire shares owned by Tertiaire were paid to the State Escheator . . . ." Am. Compl. ¶ 27 (emphasis added). It is further alleged that ACS, which is

"obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment . . . failed to confirm that the Empire shares owned by [plaintiff] met the statutory and/or regulatory criteria for escheated property." Id. at ¶¶ 34, 37.  Thus, even assuming Empire was negligent, that negligence occurred prior to ACS's alleged negligence and ACS's subsequent escheatment of the shares.  Thus, ACS's actions were an "efficient intervening cause" that broke any causal chain.

### IV. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM FAILS

As Empire also established in its moving papers (at 17-19), the breach of fiduciary duty claim fails because a corporation does not owe fiduciary duties; rather, "'fiduciary duties are owed by the directors and officers to the corporation and its stockholders.'" Alessi v. Beracha, 849 A.2d 939, 950 (Del. Ch. 2004) (quoting Arnold v. Soc'y for Sav. Bancorp., 678 A.2d 533, 539 (Del. 1996)).  Plaintiff's only response is that "[i]n certain circumstances [] a corporation assumes the status of a fiduciary to individual shareholders," citing In re Reliance Sec. Litig., 91 F. Supp. 2d 706, 732-3 (D. Del. 2000).  (Opp. at 26.)  In Reliance, however, the breach of fiduciary duty claim was against the directors, not the corporation, and nowhere does that case suggest that a corporation itself owes fiduciary duties.  Id.

### V. PLAINTIFF'S CONVERSION CLAIM FAILS BECAUSE EMPIRE NEVER INTENTIONALLY EXERCISED DOMINION OR CONTROL

Empire also established in its moving brief (at 19-20) that plaintiff failed to allege that Empire ever exercised dominion and control over the escheated shares, a requisite element of a conversion claim.  The Opposition makes clear that plaintiff has no factual basis to plead such dominion and control, but instead is inventing a legal argument that such element is satisfied simply because Empire is "the issuer of an[] intangible ownership interest in a corporation . . . ."  (Opp. at 28.)  Conversion, however, requires an intentional act of control over

the specific property.  See Int'l Bus. Machs. Corp. v. Comdisco, Inc., 1993 WL 259102, at *5 n.3 (Del. June 30, 1993) ("Conversion is always an intentional exercise of dominion or control over the chattel") (quoting Restatement (Second) of Torts § 223 cmt. b).  Here, plaintiff does not allege any facts demonstrating that Empire intentionally exerted control over plaintiff's shares.

## VI.  THERE IS NO FAILURE TO REGISTER CAUSE OF ACTION

As demonstrated in Empire's motion papers, there is no common law cause of action for damages for failure to maintain a stock ledger. (Mot. at 18.) Plaintiff's only response is to insist that Empire -- even though the Amended Complaint admits that Empire hired AST as its transfer agent -- either (a) failed to register the certificate sent to plaintiff, or (b) failed to register it in plaintiff's name. (Opp. at 29.) This clarification not only lacks logic -- the problem was the address -- but it does not change the fact that there is still no cause of action.

Further, while the Amended Complaint baldy alleges that Empire also "violated the relevant provisions of the Uniform Commercial Code" (Am. Compl. ¶ 60), the Opposition fails to address, or even identify, the provision of the UCC that Empire allegedly breached, which is likely because no facts are pleaded meeting the many requirements of UCC 8-401(a). (See Mot. at 21-22.)[5] Therefore, the failure to register claim must be dismissed.

## VII.  PLAINTIFF'S SPECIFIC PERFORMANCE CLAIM FAILS

Finally, plaintiff's specific performance claim should be dismissed because it is well-established that specific performance of a stock transfer will not be granted unless the stock

---

[5] Under UCC 8-401(b), an issuer is liable "to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." 6 Del. C. § 8-401(b) (emphasis supplied). Plaintiff here asserts only that the alleged delay in registration "may have caused or contributed to the [escheatment] of Tertiaire's Empire shares" (Opp. at 30 (emphasis added)). See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

is unique or the shares are not available in the open market.  (See Mot. at 23.)  Plaintiff's response is that specific performance is recognized in Delaware for delivery of publicly-traded shares.  (Opp. at 30.)  This is untrue.  Indeed, the cases cited by plaintiff do not stand for such proposition:  in AHS New Mexico Holdings, Inc. v. Healthsource, Inc., 2007 WL 431051, at *1 (Del. Ch. Feb. 2, 2007), for example, the Court merely noted that the plaintiff sought specific performance.  Similarly, in Gildor v. Optical Solutions, Inc., 2006 WL 1596678, at *10 (Del. Ch. June 5, 2006), the court stated that "the burden of showing that a legal remedy would be inadequate" was on the party seeking specific performance and it granted such relief because the party's agreement specifically stated that money damages would not be adequate.

      Moreover, plaintiff provides no reason why shares in Empire, which are freely traded on the American Stock Exchange (see Am. Compl. ¶ 2), are unique.  See U.S. Dimension Prods., Inc. v. Tassette, Inc., 290 A.2d 634, 635 (Del. 1972) ("specific performance of a contract for the sale of corporate stock will not be granted if similar shares are available in the open market; in such cases, money damages are deemed adequate relief").

## CONCLUSION

      For all of the foregoing reasons, Empire respectfully requests that this Court dismiss the Amended Complaint as against it with prejudice.

Dated: New York, New York
       August 7, 2008

      /s/Richard L. Levine
Richard L. Levine (RL-4871)
Deborah A. Maher (DM-9333)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000 (phone)
(212) 310-8007 (fax)

Attorneys for Defendant Empire Resources, Inc.