UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A.W. FINANCIAL SERVICES, S.A., as successor     : CIVIL ACTION
in interest to TERTIAIRE INVESTISSEMENT, S.A.   : ECF CASE
                              Plaintiff,         :
                                         :
              v.                       : 07 CIV 8491 (SHS)(RLE)
                                         :
EMPIRE RESOURCES, INC., et al.                 : **NOTICE OF MOTION**
                       Defendants.      :   **TO DISMISS**

**PLEASE TAKE NOTICE,** that upon the annexed Amended Complaint, dated March 28, 2008, the accompanying Memorandum of Law and all prior pleadings and proceedings heretofore had herein, defendants American Stock Transfer & Trust Company and Affiliated Computer Services, Inc., shall move this Court before the Hon. Sidney H. Stein, at the United States Courthouse, located at 500 Pearl Street, New York, New York, for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing plaintiff's Amended Complaint on the ground that it fails to state a claim upon which relief may be granted and for such other, further and different relief as to the Court seems just and proper.

Dated: January 13, 2010

                                    **OBERMAYER REBMANN MAXWELL
                                    & HIPPEL LLP**

                                    By: _____/s/_____
                                         Steven A. Haber (SH-4739)
                                         Kellie M. MacCready (KM-3024)
                                         Michael S. Pepperman (MP-9163)
                                         *Attorneys for Defendants American Stock Transfer &*
                                         *Trust Co. and Affiliated Computer Services, Inc.*
                                         One Penn Center – 19th Floor
                                         1617 John F. Kennedy Boulevard
                                         Philadelphia, PA 19103
                                         (215) 665-3000
                                         (215) 665-3165 (facsimile)

4431217

TO:    Jon Schuyler Brooks, Esq.
           **PHILLIPS NIZER LLP**
           *Attorneys for Plaintiff*
           666 Fifth Avenue
           New York, NY 10103
           (212) 977-9700
           (212) 262-5152 (facsimile)

           Richard L. Levine, Esq.
           **WEIL, GOTSHALL & MANGES LLP**
           *Attorneys for Defendant Empire Resources, Inc.*
           767 Fifth Avenue
           New York, NY  10153
           (212) 310-8000
           (212) 310-8007 (facsimile)

Jon Schuyler Brooks (JB7218)
jbrooks@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| A.W. FINANCIAL SERVICES, S.A., as successor in interest to TERTIAIRE INVESTISSEMENT, S.A. | **ECF CASE –Filed Electronically** |
| Plaintiff, | **<u>AMENDED COMPLAINT</u>** |
| v. | **07-CV-8491 (SHS)(RLE)** |
| EMPIRE RESOURCES, INC., AMERICAN STOCK TRANSFER & TRUST COMPANY, and AFFILIATED COMPUTER SERVICES, INC., | |
| Defendants. | |

-------------------------------------------------------------------x

Plaintiff A.W. Financial Services, S.A. ("AWF"), by its attorney, Phillips Nizer LLP, as and for its Complaint against the defendants, avers the following:

<u>THE PARTIES</u>

1.      Plaintiff AWF is a corporation ("societe anonym") duly organized and existing pursuant to the laws of the Republic of France, with its principal place of business in Paris. Through a succession of mergers completed on December 31, 2001, AWF became and remains the successor in interest to Tertiaire Investissement, S.A. ("Tertiaire").

2.      Upon information and belief, Defendant Empire Resources, Inc. ("Empire") is and, at all times relevant hereto, was a corporation duly organized and existing pursuant to the

980321.3

laws of the State of Delaware, with its principal place of business in Fort Lee, New Jersey. Upon further information and belief, Empire is and, at all times relevant hereto, was listed on the American Stock Exchange ("ERS"), a stock exchange located in New York, New York.

3.     Upon information and belief, Defendant American Stock Transfer & Trust Company ("AST") is and, at all times relevant hereto, was a company with a principal place of business in New York, New York. Upon further information and belief, AST is and, at all times relevant hereto, was the transfer agent for Empire.

4.     Upon information and belief, Defendant Affiliated Computer Services, Inc. ("ACS") is and, at all times relevant hereto, was a corporation duly organized and existing pursuant to the laws of the State of Delaware, with its principal place of business in Dallas, Texas. Upon further information and belief, ACS is and, at all times relevant hereto, was listed on the New York Stock Exchange, located in New York, New York. Upon still further information and belief, ACS performs services pursuant to contract with the State of Delaware concerning unclaimed (escheated) property.

## JURISDICTION AND VENUE

5.     This Court has diversity jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332, in that this action is entirely between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391, among other reasons because of the residence of Defendant AST.

## FACTUAL ALLEGATIONS

7.     On or about January 11, 1994, Tertiaire purchased 40 shares of Integrated Technology USA, Inc. ("ITI").

2

8.     On or about September 30, 1999, ITI merged with Empire. Empire was and remains the surviving company name.

9.     As a result of the ITI-Empire merger, the 40 shares of ITI owned by Tertiaire became 30,426 shares of Empire.

10.    In or about April 2000, Tertiaire (by then known as Tertiaire Development, S.A.) wrote to Empire inquiring about its shares.

11.    In response to that inquiry, on May 4, 2000, Defendant AST wrote to Tertiaire to "acknowledge your recent letter regarding the loss of the above certificates [IT0065], against which we have placed a "STOP TRANSFER" notation on our records."

12.    In fact, Tertiaire never had received (and therefore did not lose) certificate IT0065.

13.    Nonetheless, as a condition of providing a replacement certificate AST required Tertiaire to execute an Affidavit of Loss and Indemnity Agreement, and to purchase a surety bond with a premium in the amount of $1,003.84.

14.    Tertiaire complied with AST's demands.

15.    In the Affidavit of Loss and Indemnity Agreement dated May 22, 2000, Tertiaire stated explicitly that it was "presently known as Tertiaire Development, S.A.," stated its address as "47 Rue de Chaillot, Paris 75116," and its telephone number as "01 56 62 2100." It was signed by "H. Debache" in his capacity as "President of Tertiaire Development, S.A."

16.    On or about May 30, 2000, Defendant Empire issued a replacement certificate, number IT0328. Defendant AST sent the replacement certificate to Tertiaire.

3

980321.3

17.    On or about October 20, 2004, Empire – either directly or through AST, its authorized agent – delivered to the State of Delaware as unclaimed (escheated) property the Empire shares owned by Tertiaire.

18.    In or about February 2005, the State of Delaware (directly or through ACS) sold the Empire shares as follows:

-    5,426 shares at $4.0395/share (February 2, 2005); and
-    25,000 shares at $3.8133/share (February 3, 2005).

19.    On or about March 29, 2006, Tertiaire – by then known as AWF – wrote to Empire requesting that the Empire shares owned by Tertiaire be re-registered in the name of AWF.

20.    AWF maintained the same address, telephone, and facsimile numbers as its predecessors-in-interest, Tertiaire and Tertiaire Development.

21.    In or about April 2006, through serial conversations and correspondence with Empire, AST and ACS, AWF learned for the first time that the Empire shares owned by Tertiaire had been escheated by Empire, through its authorized agent AST to the State of Delaware, through ACS

22.    Between February 2005 and March 2006, the market value of the Empire shares rose from approximately $4 per share to $32.61 per share.  On May 3, 2006, Empire shares traded at $57.87 per share.

## COUNT I
## (AGAINST EMPIRE FOR NEGLIGENCE)

23.    Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "20" as if they were set forth at length.

4

980321.3

24.    The laws and regulations of the State of Delaware prohibit escheatment of securities unless and until the property has been fully dormant for a period of at least five (5) years.

25.    Less than five (5) years lapsed between the issuance of replacement certificate IT0328 on May 30, 2000 and the determination to escheat the Empire shares on or about October 20, 2004.

26.    Empire had a duty to its shareholders, including Tertiaire, to account properly for the status of shares.

27.    Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, Empire was negligent in determining that the Empire shares owned by Tertiaire were dormant for five (5) years.

28.    By reason of Empire's negligence, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

980321.3

## COUNT II
## (AGAINST AST FOR NEGLIGENCE)

29.     Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

30.     AST, as the authorized agent of Empire, had a duty to Empire and its shareholders, including Tertiaire, to account properly for the status of shares.

31.     Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, AST was negligent in determining that the Empire shares owned by Tertiaire were dormant for five (5) years.

32.     By reason of AST's negligence, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

## COUNT III
## (AGAINST ACS FOR NEGLIGENCE)

33.     Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

34.     The State of Delaware is obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment.

35.     The intended beneficiaries of said statutes and regulations are shareholders of Delaware corporations, including Tertiaire.

36.     Upon information and belief, pursuant to its contract with the State of Delaware, ACS assumed the duties owed to shareholders of Delaware corporations, such as Tertiaire, including the duty to confirm the appropriateness of property tendered for escheatment.

37.     Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, ACS failed to confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property.

38.     This failure constitutes both negligence and negligence *per se* on the part of ACS.

39.     By reason of ACS's negligence, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an additional amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

7

## COUNT IV
## (AGAINST EMPIRE FOR BREACH OF FIDUCIARY DUTY)

40.     Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

41.     Empire had a fiduciary duty to Tertiaire to maintain accurate books and records regarding ownership of shares.

42.     Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, Empire breached said duty in determining that the Empire shares owned by Tertiaire were unclaimed and abandoned in excess of the period of dormancy required by Delaware law.

43.     By reason of Empire's breach, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an additional amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

## COUNT V
## (AGAINST AST FOR BREACH OF CONTRACT)

44.     Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

8

980321.3

45.    Upon information and belief, AST had contractual duties to Empire, including, among other things, to account properly for the status of shares of the corporation and its shareholders.

46.    The shareholders of Empire, including Tertiaire, were and are third-party beneficiaries of the contract(s) between Empire and AST, including any indemnity provisions set forth therein.

47.    Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, AST breached its duties under the contract(s) with Empire.

48.    By reason of AST's breach, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an additional amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

## COUNT VI
## (AGAINST ACS FOR BREACH OF CONTRACT)

49.    Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" and in paragraphs "30," "45" and "46" as if they were set forth at length.

980321.3

50.     Upon information and belief, AST contracted with ACS to determine, among other things, whether shares issued by certain corporations for which AST served as transfer agent qualified as unclaimed property.

51.     Upon information and belief, pursuant to said contract, AST delegated to ACS certain authority, including the authority to determine whether the Empire shares owned by Tertiaire qualified as unclaimed property under the laws and regulations of the State of Delaware.

52.     Upon information and belief, pursuant to said contract, ACS accepted said delegation and, in so doing, assumed the duties attendant thereto owed by AST to corporations such as Empire and their shareholders, including Tertiaire.

53.     The shareholders of Empire, including Tertiaire, were and are third-party beneficiaries of the contract between AST and ACS, including any indemnity provisions set forth therein.

54.     Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, ACS breached its duties under the contract with AST.

55.     By reason of ACS' breach, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an additional amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold

10

its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

## COUNT VII
### (AGAINST ALL PARTIES FOR CONVERSION)

56.    Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

57.    Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, the Defendants, acting individually or in combination, converted property belonging to Plaintiff.

58.    By reason of said conversion, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an additional amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

## COUNT VIII
### (AGAINST EMPIRE FOR FAILURE TO REGISTER)

59.    Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

980321.3

60.    Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, Empire failed to register the shares owned by Tertiaire, and thereby violated the relevant provisions of the Uniform Commercial Code.

61.    By reason of Empire's failure, AWF has been damaged in an amount to be proven at trial, but not less than $870,487.86 (the difference between the value of the shares when liquidated by the State of Delaware (or by ACS) and when AWF first inquired about selling them, plus an amount equal to the dividend payments that would have been made to AWF between the time of the erroneous determination regarding the status of the shares and the time of their intended sale by AWF, plus interest on said amounts, plus an additional amount reflecting the loss in value of the dollar against the euro between the date AWF would have sold its Empire shares had they not been escheated improperly and the date AWF actually receives payment of the aforesaid amounts.

## COUNT IX
## (AGAINST EMPIRE FOR SPECIFIC PERFORMANCE )

62.    Plaintiff repeats and incorporates here by reference the allegations in paragraphs "1" through "25" as if they were set forth at length.

63.    The shares of Empire are unique and distinct.

64.    Prior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, through negligence and/or mishandling of those shares, Empire and/or its agents deprived Tertiaire of its interest in that unique and distinct property.

65.    AWF demands that Empire deliver to AWF a stock certificate representing 30,426 shares, and that the same be registered in the name of AWF.

980321.3

WHEREFORE, Plaintiff AWF prays that judgment be entered in its behalf and against defendants Empire, AST, and ACS, jointly and severally, in amount to be determined at trial, and for costs and reasonable attorneys' fees, and for such other relief as the Court may deem just and appropriate.

Dated: New York, NY
      March 28, 2008

PHILLIPS NIZER LLP


By: _____/s/ Jon Schuyler Brooks_____
     Jon Schuyler Brooks (JB7218)
*Attorney for Plaintiff*
666 Fifth Avenue
New York, NY 10103
(212) 977-9700
(212) 262-5152 (Fax)

13

980321.3