UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| A.W. FINANCIAL SERVICES, S.A., as successor | : CIVIL ACTION |
| in interest to TERTIAIRE INVESTISSEMENT, S.A. | : ECF CASE |
| Plaintiff, | : |
| v. | : 07 CIV 8491 (SHS)(RLE) |
| | : |
| EMPIRE RESOURCES, INC., et al. | : |
| Defendants. | : |

_____

## DEFENDANTS AMERICAN STOCK TRANSFER & TRUST CO. AND AFFILIATED COMPUTER SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants American Stock Transfer & Trust Co. ("AST") and Affiliated Computer Services, Inc. ("ACS"), submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint of Plaintiff, A.W. Financial Services, S.A. ("AWF").

### INTRODUCTION

The Amended Complaint seeks to recover economic losses allegedly suffered by Plaintiff when shares of stock in Empire Resources, Inc. were escheated to the State of Delaware. The Amended Complaint seeks to maintain state law claims against AST and ACS for negligence, breach of contract, and conversion. ACS, the admitted agent for the State of Delaware, is immune from Plaintiff's claims under the doctrine of sovereign immunity. Additionally, because Plaintiff's state law claims against AST and ACS fail to allege the essential elements of these causes of action, the Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4431218

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

The allegations in the Amended Complaint, taken as true only for purposes of this Motion, are as follows:

On or about January 11, 1994, Tertiaire Investissement, S.A. ("Tertiaire") purchased forty shares of Integrated Technology USA, Inc. ("ITI"). (Amended Complaint, ¶ 7). Through a succession of mergers completed on December 31, 2001, Plaintiff alleges to have become the successor in interest to Tertiaire. (Amended Complaint, ¶ 1). AWF is a French corporation with its principal place of business in France. (Amended Complaint, ¶ 1).

On or about September 30, 1999, ITI merged with Empire Resources, Inc. ("Empire"). (Amended Complaint, ¶ 8). Empire is a Delaware corporation with its principal place of business in New Jersey. (Amended Complaint, ¶ 2). As a result of the ITI-Empire merger, the ITI shares owned by Tertiaire became shares of Empire. (Amended Complaint, ¶ 9). In or about April 2000, Tertiaire wrote to Empire inquiring about its shares. (Amended Complaint, ¶ 10). On May 4, 2000, AST, a company with its principal place of business in New York, acting as Empire's authorized transfer agent, responded to Tertiaire's inquiry via letter acknowledging Tertiaire's letter regarding the loss of stock certificate ITI0065 against which AST placed a "STOP TRANSFER" notation on its records. (Amended Complaint, ¶¶ 3, 11, 17).

Tertiaire executed an Affidavit of Loss and Indemnity Agreement and purchased a surety bond as a condition prior to AST providing Tertiaire with a replacement certificate. (Amended Complaint, ¶¶ 13-14). The Affidavit of Loss and Indemnity Agreement, dated May 22, 2000, stated that Tertiaire was "presently known as Tertiaire

Development, S.A." and that its address was "47 Rue de Chaillot, Paris 75116." (Amended Complaint, ¶ 15). On or about May 30, 2000, Empire issued a replacement certificate numbered IT0328. (Amended Complaint, ¶ 16). AST sent the replacement certificate to Tertiaire at the address in France. (Amended Complaint, ¶ 16).

On or about October 20, 2004, Empire, either directly or though AST, delivered Tertiaire's Empire shares to the State of Delaware as unclaimed or escheated property. (Amended Complaint, ¶ 17). In or about February 2005, the State of Delaware, either directly or through ACS, sold the Empire shares. (Amended Complaint, ¶ 18). ACS acted pursuant to its contract with State of Delaware. (Amended Complaint, ¶¶ 4, 36). ACS is alleged to be a Delaware corporation with its principal place of business in Texas. (Amended Complaint, ¶ 4).

On or about March 29, 2006, over four years after the Tertiaire-AWF merger, Tertiaire (then known as AWF) wrote to Empire requesting that Tertiaire's Empire shares be re-registered in the name of AWF. (Amended Complaint, ¶ 19). The Amended Complaint alleges that AWF maintained the same address, telephone and facsimile numbers as Tertiaire. (Amended Complaint, ¶ 20). In or about April 2006, AWF learned that Tertiaire's Empire shares had been escheated to the State of Delaware. (Amended Complaint, ¶ 21). The Amended Complaint alleges that between February 2005 and March 2006, the market value of Empire shares rose from approximately $4 per share to $32.61 per share. (Amended Complaint ¶ 22).

The Amended Complaint purports to state claims against AST and ACS for negligence, breach of contract, and conversion. (Amended Complaint, Counts II, III, V, VI, VII).

AST and ACS move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  The Court should dismiss Counts II, V and VII against AST because they fail to allege a *prima facie* claim.  Additionally, ACS must be dismissed because it is the authorized agent for the State of Delaware, and is therefore immune from Plaintiff's state law claims under the doctrine of sovereign immunity.  Furthermore, the Court should dismiss Counts III, VI and VII against ACS because they do not plead the essential elements necessary to state a viable claim.

## LEGAL ARGUMENT

## I.  CHOICE OF LAW AND DISMISSAL STANDARDS

In diversity cases, the federal courts must follow conflict of laws rules prevailing in the states in which they sit.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006).  As a result, New York's choice of law rules will apply for the purpose of determining which state's law defines whether Plaintiff has stated claims against AST and ACS.  The Second Circuit has determined that the relevant analytical approach to choice of law in tort actions in New York is the interest analysis.  GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006).

Under the interest-analysis test, the law of the jurisdiction having the greatest interest in the litigation will be applied, and the only facts or contacts which obtain significance in defining state interests are those which relate to the purpose of the particular law in conflict.  Id.  Under the interest-analysis test, significant facts or contacts are, almost exclusively, the parties' domiciles and the locus of the tort.  Id. Under the interest-analysis test, torts are divided into two types: those involving

appropriate standards of conduct or rules of the road (conduct-regulating laws), and those that relate to allocating losses that result from admittedly tortious conduct, such as those limiting damages in wrongful death actions (loss-allocating laws).  Id.

The essential elements of Plaintiff's Amended Complaint are tort claims alleging that "[t]he laws and regulations of the State of Delaware prohibit escheatment of securities unless and until the property has been fully dormant for a period of at least five (5) years."  (Amended Complaint, ¶ 24).  The Amended Complaint does not identify the specific statutes or regulations at issue.  The Amended Complaint, however, alleges that "AST was negligent in determining that the Empire shares owned by Tertiaire were dormant for five (5) years" and that "ACS failed to confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property." (Amended Complaint, ¶¶ 31, 37).  Additionally, the Amended Complaint alleges that less than five years elapsed between the issuance of replacement shares and the determination to escheat the shares at issue, and that the shares at issue were escheated to and liquidated by the State of Delaware.  (Amended Complaint, ¶¶ 21, 25, 28, 32, 39, 43, 48, 55, 58, 61).

Because Plaintiff bases its claim against Defendants on Defendants' alleged failure to follow appropriate standards of conduct – the "laws and regulations of the State of Delaware" – conduct-regulating laws are at issue in this tort action.  (Amended Complaint, ¶¶ 24-25).  When conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.  GlobalNet Financial.Com, Inc., 449 F.3d at 384.  The Amended Complaint's allegations invoking Delaware laws and

regulations, as well as the allegations that property allegedly belonging to Plaintiff escheated to and was liquidated by the State of Delaware, indicate that the alleged tort occurred in Delaware.  Delaware, therefore, has the greatest interest in this action and Delaware law should apply.

The purpose of a Motion to Dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996).  In deciding a Motion to Dismiss, the Court is required to accept as true all of the factual allegations contained in the complaint and view those facts, and draw all reasonable inferences, in plaintiff's favor.  Abdelhamid v. Altria Group, Inc., No. 06 Civ. 3927, 2007 WL 2186275, at *2 (S.D.N.Y. July 27, 2007) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)); De Jesus, 87 F.3d at 69.  To survive a Rule 12(b)(6) Motion to Dismiss, however, the allegations in the complaint must meet the standard of "plausibility."  Abdelhamid, 2007 WL 2186275, at *2 (citing Bell Atlantic Corp., 127 S. Ct. at 1970).  "The test is no longer whether there is 'no set of facts' that plaintiff could prove 'which would entitle him to relief.'"  Abdelhamid, 2007 WL 2186275, at *2 (quoting Bell Atlantic Corp., 127 S. Ct. at 1969).  Instead, the complaint must provide the grounds upon which the plaintiff's claim rests through factual allegations sufficient to raise a right to relief above the speculative level, and must set forth enough information to suggest that relief would be based on some recognized legal theory.  Bell Atlantic Corp., 127 S. Ct. at 1965; Abdelhamid, 2007 WL 2186275, at *2; Qantel Corp. v. Niemuller, 771 F. Supp. 1361, 1370 (S.D.N.Y. 1991); Connolly v. Havens, 763 F. Supp. 6, 9 (S.D.N.Y. 1991).  In practice, a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory.  Qantel, 771 F. Supp. at 1370 (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)); Connolly, 763 F. Supp. at 9.  Although the Court must take the plaintiff's allegations as true, the claim may still fail as a matter of law if the claim is not legally feasible.  Abdelhamid, 2007 WL 2186275, at *2 (citing In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006)).  While the Court must accept all well pled allegations in the complaint, it need not credit bald assertions and conclusions of law.  Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002).

## II.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST AST

The claims against AST should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  Count II purports to state a claim against AST for negligence.  Count V purports to state a claim against AST for breach of contract, and Count VII purports to state a claim against AST for conversion.  Count II fails to state a claim for negligence because, as a matter of law, AST did not owe a duty to AWF.  Count V fails to state a claim for breach of contract because Plaintiff did not have a contract with AST, and was not an intended third party beneficiary of AST's contract with Empire.  Finally, Count VII fails to state a claim for conversion because at no time did AST exercise a right of ownership to the shares, but instead acted always as Empire's transfer agent.

### A.    The Amended Complaint Fails to
   State A Claim For Negligence Against AST

Count II fails to state a claim against AST for negligence because the facts pled do not set forth a legal duty that AST owed to Plaintiff – a required element to maintain a cause of action for negligence.

In order to be held liable in negligence, a defendant must have been under a legal obligation – a duty – to protect the plaintiff from the risk of harm which caused his injuries.  Fritz v. Yeager, 790 A.2d 469, 471 (Del. 2002).  Because duty is essentially a question of whether the relationship between the parties gives rise to a legal obligation to act for the benefit of the injured party, the question of whether a duty of care exists depends upon the nature of the relationship between the parties.  Kuczynski v. McLaughlin, 835 A.2d 150, 153 (Del. Super. Ct. 2003).  Whether a duty exists is entirely a question of law for the Court to decide by reference to the body of statutes, rules, principles and precedents that make up the law.  Fritz, 790 A.2d at 471; Kuczynski, 835 A.2d at 153 n.10.

The Amended Complaint fails to allege any relationship between AST and Plaintiff that would give rise to a legal obligation of AST to act for the benefit of Plaintiff; therefore, the Amended Complaint fails to plead that AST owed a duty to Plaintiff.  The Amended Complaint baldly alleges that "AST, as the authorized agent of Empire, had a duty to Empire and its shareholders, including Tertiaire, to account properly for the status of shares."  (Amended Complaint, ¶ 30).  However, the facts pled do not establish any relationship between AST and Plaintiff from which such a duty could have arisen.  While the Court may infer that AST's obligations to Empire as its "authorized agent" stemmed from a contract between Empire and AST, there must be some basis in contract.  But the allegations in Count II do not establish that any relationship (agency, contractual, or otherwise) between AST and Empire necessarily established any duties of AST to Empire's shareholders or legally obligated AST to act for the benefit of Plaintiff.  (Amended Complaint, ¶ 30).

While Plaintiff bases its claim for negligence against AST on the allegation that AST had a duty to account for the status of Plaintiff's shares, an examination of the rules and regulations regarding transfer agents reveals that agents, such as AST, have no such obligation. (Amended Complaint, ¶ 30). Rule 17Ad-17, promulgated pursuant to Section 17 of the Securities and Exchange Act of 1934, addresses transfers agents' obligations to search for lost shareholders and requires recordkeeping transfer agents to perform certain searches.[1] 17 CFR 240.17Ad-17. The Rule, however, states that a transfer agent need *not* conduct searches for a lost shareholder if "[t]he securityholder is not a natural person." 17 CFR 240.17Ad-17(a)(3)(iii). Because Plaintiff is not a natural person, AST was under no legal duty to search and account for the status of Plaintiff's shares.

Because the Amended Complaint has not adequately pled that AST owes a legally cognizable duty to Plaintiff –a necessary element of a cause of action for negligence – Count II of the Amended Complaint must be dismissed for failure to state a claim.

**B.    The Amended Complaint Fails To
State A Claim For Breach of Contract Against AST**

Count V fails to state a claim against AST for breach of contract because the allegations of the Amended Complaint do not establish that Plaintiff qualifies as a third party beneficiary of the contract between Empire and AST.

---

[1] The Rule defines a lost securityholder as "[t]o whom an item of correspondence that was sent to the securityholder at the address contained in the transfer agent's master securityholder file has been returned as undeliverable; . . . and [] [f]or whom the transfer agent has not received information regarding the securityholder's new address." 17 CFR 240.17Ad-17(b)(2)(i)-(ii). Plaintiff qualifies as a lost securityholder because the dividend checks sent to Plaintiff's address of record with AST were returned to AST as undeliverable.

Under Delaware law, in order to qualify as a third party beneficiary of a contract and have an enforceable right under that contract: (1) the contracting parties must have intended that the third party benefit from the contract; (2) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person; and (3) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract. E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 196 (3d Cir. 2001); Guardian Constr. Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378, 1386 (Del. Super. Ct. 1990). The intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries. Hadley v. Shaffer, No. 99-144-JJF, 2003 U.S. Dist. LEXIS 14106, at *14 (D. Del. Aug. 12, 2003). If it was not the promissee's intention to confer direct benefits upon a third party, but rather the third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have *no enforceable rights* under the contract. Dupont, 269 F.3d at 196; see also Hadley, 2003 U.S. Dist. LEXIS 14106, at *14 (citing Guardian, 583 A.2d at 1386). The question of a party's status as a third party beneficiary to a contract is ultimately for the Court to decide under applicable law. Dupont, 269 F.3d at 197.

In the instant matter, the Amended Complaint fails to plead facts that would allow the Court to conclude that Plaintiff qualifies as a third party beneficiary entitled to enforce the contract between Empire and AST. In Count V, Plaintiff alleges that "AST had contractual duties to Empire" and "[t]he shareholders of Empire, including Tertiaire, were and are third-party beneficiaries of the contract(s) between Empire and AST" (Amended Complaint, ¶¶ 45-46), but all of the elements necessary to support that naked

allegation are missing.  Nowhere is it alleged that Empire and AST intended that Plaintiff would benefit from the Empire-AST contract.  Nowhere is it alleged that any benefit to Plaintiff from the Empire-AST contract was intended as a gift or to satisfy a pre-existing obligation to Plaintiff.  Nowhere is it alleged that intent to benefit Plaintiff was a material part of Empire and AST's purpose in entering into their contract.  The assertion pled is completely devoid of facts that, if true, could establish that Plaintiff was an intended third party beneficiary of the Empire-AST contract.  The allegations that AST's contractual duties to Empire included the duty to "account properly for the status of shares of the corporation and its shareholders" do not establish that Plaintiff was anything more than an incidental beneficiary of the Empire-AST contract.  (Amended Complaint, ¶ 45).  As an incidental beneficiary, Plaintiff does not enjoy standing to bring suit on the Empire-AST contract.  See Triple C Railcar Service, Inc. v. City of Wilmington, 630 A.2d 629, 634 (Del. 1993) (finding that incidental beneficiary did not have standing to bring suit on the contract).  Because the Amended Complaint fails to plead facts establishing that Plaintiff was an intended third-party beneficiary entitled to enforce the Empire-AST contract, Count V must be dismissed for failing to state a claim.

     **C.**    **The Amended Complaint Fails To
           State A Claim For Conversion Against AST**

Count VII of the Amended Complaint alleges that AST converted property belonging to Plaintiff "[p]rior to the time the Empire shares owned by Tertiaire were paid to the State of Delaware," but the Amended Complaint also concedes that "at all times relevant hereto [AST] was the transfer agent for Empire."  (Amended Complaint, ¶¶ 3, 57).

Conversion is an "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." Arnold v. Society for Savings Bancorp, Inc., 678 A.2d 533, 536 (Del. 1996). A stockholder's shares are converted by any act of control or dominion without the stockholder's authority or consent, and in disregard, violation, or denial of his rights as a stockholder of the company. Id. To be actionable, the exercise of control must be wrongful. Id.

There is nothing in the Amended Complaint which even suggests that AST acted in any manner inconsistent with or outside its limited role as transfer agent. AST performed agency duties to facilitate the transfer of stock certificates, including in this case providing a replacement certificate to Plaintiff. Acting solely in its representative capacity as transfer agent, at no time did AST exercise any right of ownership or wrongful control over the Empire shares in question. Because the Amended Complaint does not allege that AST was at any time acting other than Empire's transfer agent regarding the shares, and because the Amended Complaint fails to allege any facts supporting the allegation that AST's acts of control over the shares were wrongful, no possible conversion could have occurred *prior to the time* the Empire shares owned by Tertiaire were paid to the State of Delaware. Accordingly, Count VII must be dismissed for failing to state a claim.

## III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST ACS

The Amended Complaint fails to state a claim against ACS. Count III purports to state a claim against ACS for negligence and negligence per se, Count VI for breach of contract, and Count VII for conversion. ACS is immune from suit for these state law claims under the doctrine of sovereign immunity. Additionally, Count III fails to state a

claim for negligence because, as a matter of law, ACS did not owe a duty to AWF.

Further, Count III fails to state a claim for negligence per se because it does not

adequately allege that ACS violated a statute that was enacted for the safety of others and

which embodies a standard of conduct designed to protect Plaintiff from injury or harm.

Finally, Count VI fails to state a claim for breach of contract because Plaintiff was not an

intended third party beneficiary of ACS's contract with AST, and Count VII fails to state

a claim for conversion because the Amended Complaint does not allege any acts by

which ACS converted Plaintiff's shares.

### A.    This Court Should Dismiss Because ACS Is Immune From Suit

The Amended Complaint fails to state a claim against ACS because, as a matter

of law, ACS is immune from Plaintiff's suit.  ACS, as agent of the State of Delaware, is

entitled to the State's sovereign immunity protection, thereby precluding it from liability

in lawsuits such as this.

In the original Complaint, Plaintiff repeatedly acknowledged that ACS is the

"authorized agent" for the State of Delaware.  (Complaint, ¶¶ 28, 32, 34, 38 and 42).  The

Amended Complaint, however, removes all admissions by Plaintiff that ACS was acting

as the authorized agent of the State of Delaware when Plaintiff's shares were escheated.

(Amended Complaint, ¶¶ 28, 32, 34, 43).  A party "cannot advance one version of the

facts in its pleadings, conclude that its interests would be better served by a different

version, and amend its pleadings to incorporate that version, safe in the belief that the

trier of fact will never learn of the change in stories."  United States v. GAF Corp., 928

F.2d 1253, 1259 (2d Cir. 1991) (quoting United States v. McKeon, 738 F.2d 26, 31 (2d

Cir. 1984)); Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705, 707 (2d Cir.

1989) (finding that "[t]he amendment of a pleading does not make it any the less an admission of the party."). On the contrary, admissions in earlier complaints remain binding when a plaintiff files subsequent pleadings and the Court may consider them on a motion to dismiss under Rule 12(b)(6). Sulton v. Wright, 265 F. Supp. 2d 292, 295 (S.D.N.Y. 2003) (citing Willsea v. Theis, No. 98 Civ. 6773, 1999 U.S. Dist. LEXIS 22471, at *11 (S.D.N.Y. Aug. 5, 1999)). Thus, this Court may consider Plaintiff's prior admissions that ACS was acting as the authorized agent for the State of Delaware during the acts complained of in Plaintiff's Amended Complaint. Plaintiff's attempt to avoid the application of the doctrine of sovereign immunity to ACS by removing these admissions from the Amended Complaint, therefore, will be unavailing.

The doctrine of sovereign immunity in Delaware was established by the State Constitution. Del. Const. art. I, § 9; Doe v. Cates, 499 A.2d 1175, 1181 (Del. 1985). Sovereign immunity precludes the existence of a cause of action against the State unless the State has chosen to waive that immunity. Doe v. Cates, 499 A.2d at 1182. The State, therefore, may not be sued without its consent. Pauley v. Reinoehl, 84 A.2d 569, 573 (Del. 2004); Doe v. Cates, 499 A.2d at 1176.

Article I, Section 9 of the Delaware Constitution provides that the only way to limit or waive the State's sovereign immunity is by act of the General Assembly. Doe v. Cates, 499 A.2d at 1176; Pauley, 84 A.2d at 573. Thus, unless there is a statute by which the General Assembly can be said to have waived the defense of sovereign immunity, suit against the State or its agents for damages caused by negligent acts of the State's employees or agents must fail. See Doe v. Cates, 499 A.2d at 1176-1177; see also Pauley, 84 A.2d at 576; Murphy v. Correctional Medical Services, Inc., No. 03C-04-271-

PL, 2005 WL 2155226, at *4 (Del. Super. Ct. Aug. 19, 2005) ("Even though the States

may choose to waive their sovereign immunity from [] common law claims, the Court

will not presume that they have done so absent a compelling legislative statement to that

effect.").

      Delaware's Tort Claims Act, 10 Del. C. §§ 4001-4005, codified existing common

law principles of sovereign immunity.  Doe v. Cates, 499 A.2d at 1180 (discussing

purpose of Tort Claims Act).  Significantly, the Delaware Supreme Court has described

sovereign immunity in Delaware as "virtually absolute."  Id.  In so noting, the Delaware

Supreme Court has found that the State's Tort Claims Act must be applied to further *limit*

the State's liability where it has, by some means independent of the Tort Claims Act,

waived immunity.  See Doe v. Cates, 499 A.2d at 1181 (finding that State did not

independently waive sovereign immunity under 19 Del. C. § 6511 because there was no

insurance coverage for the risks presented and there was no other independent waiver of

sovereign immunity).  Where there is statutory evidence that the State intended to waive

its sovereign immunity for a particular agent of the State, the Tort Claims Act will

operate to protect the State and its employees and agents from liability where their

actions: (1) arose from official duties involving the exercise of discretion; (2) were done

in good faith; and (3) were without gross or wanton negligence.  10 Del. C. § 4001;

Murphy, 2005 WL 2155226, at *3 (citing Doe v. Cates, 499 A.2d 1175 and Space Age

Products, Inc. v. Gilliam, 488 F. Supp. 775 (D. Del. 1980)).  Consequently, for a plaintiff

to prevail in a suit against the State, it must show that: "(1) the State has waived the

defense of sovereign immunity for the actions mentioned in the complaint; and (2) the

State Tort Claims Act does not bar the action."  Pauley, 84 A.2d at 573.

Insofar as the State of Delaware is immune, ACS is also immune from this lawsuit because, as the State of Delaware's agent, it is entitled to the State of Delaware's sovereign immunity protection. As discussed above, Plaintiff repeatedly admits in its original Complaint that ACS is the "authorized agent" for the State of Delaware (Complaint, ¶¶ 28, 32, 34, 38 and 42), and Plaintiff cannot change this fact simply by amending the Complaint to remove it. Furthermore, the Amended Complaint recognizes that ACS's acts regarding the escheatment of Plaintiff's Empire shares were performed pursuant to ACS's contract with the State of Delaware. (Amended Complaint, ¶¶ 4, 36). In fact, Plaintiff bases its claim for liability against ACS on the allegation that ACS assumed the obligations of the State of Delaware pursuant to the State's contract with ACS, which is the very essence of agency. (Amended Complaint, ¶ 36).

A state has no power to act apart from the actions of its agents and employees. Murphy, 2005 WL 2155226, at *4. ACS, in its capacity as authorized agent for the State of Delaware and acting for the State pursuant to the parties' contract, enjoys sovereign immunity from claims against it flowing from those acts as an agent unless a statutory exception applies. The Amended Complaint fails to cite any statute whereby Delaware's General Assembly has waived sovereign immunity from liability in lawsuits such as the instant one. Because the Amended Complaint does not point to any waiver of sovereign immunity by the General Assembly, Plaintiff has not met the requirements for bringing state law claims against ACS. See Doe v. Cates, 499 A.2d at 1176-1177 (finding that unless there is a statute by which the General Assembly waived defense of sovereign immunity, appellants' suits must fail); Pauley, 84 A.2d at 573 (finding that because plaintiff failed to cite any statute evidencing that General Assembly has waived State's

immunity, plaintiff has not met requirement for bringing his claim against the State).

Therefore, this lawsuit against ACS is barred by the doctrine of sovereign immunity.

### B.    The Amended Complaint Fails to State a Claim For Negligence Against ACS

Even if the Amended Complaint had adequately pled that ACS's immunity has been waived, which it does not, Count III would fail to state a claim against ACS for negligence because it fails adequately to allege any facts that would establish that ACS owed a duty to Plaintiff.  Moreover, to the extent that Plaintiff has already recovered from the State of Delaware for any obligations to Plaintiff under the State's escheatment statutes, Plaintiff may not double-recover from ACS.

As discussed above, in order to be held liable in negligence, a defendant must have been under a legal obligation – a duty – to protect the plaintiff from the risk of harm which caused his injuries.  Fritz, 790 A.2d at 471.  In addition to examining the relationship between the parties, when determining whether a duty of care exists courts applying Delaware law will also focus on the foreseeable consequences.  Kuczynski, 835 A.2d at 153-154.  The allegations of the Amended Complaint reveal that the purported relationship between Plaintiff and ACS is not one in which ACS could have foreseen the consequences alleged to have resulted to Plaintiff.  Plaintiff is alleged to own *Empire* shares.  (Amended Complaint, ¶ 9).  Plaintiff's communications regarding these shares were with *AST*.  (Amended Complaint, ¶¶ 11, 13, 16).  *Empire*, or its agent *AST*, is alleged to have delivered these shares to the State of Delaware.  (Amended Complaint, ¶ 17).  The only potential connection between ACS and Plaintiff, as alleged in the Amended Complaint, is that ACS possibly sold the Empire shares on behalf of the State of Delaware, after the shares were delivered to the State by *Empire* or *AST*.  (Amended

Complaint, ¶¶ 17, 18).  Even this allegation is uncertain, as the Amended Complaint alleges that the State of Delaware possibly sold the Empire shares directly, without using ACS.  (Amended Complaint, ¶ 18).  Thus, the Amended Complaint fails to allege a relationship between ACS and Plaintiff that would create a legal obligation, or duty, of ACS to act for the benefit of Plaintiff.

In Count III against ACS for negligence, Plaintiff alleges that "[t]he State of Delaware is obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment" and "pursuant to its contract with the State of Delaware, ACS assumed the [State of Delaware's] duties owed to shareholders of Delaware corporations, such as Tertiaire."  (Amended Complaint, ¶¶ 34, 36).  The Amended Complaint does not allege that ACS owed any duty to Delaware shareholders – including Plaintiff – *apart from* the duties owed to shareholders by the State of Delaware.  Given that the only alleged source of ACS's obligations and duty to Plaintiff derives from ACS's relationship with the State of Delaware, ACS is *no more responsible* to Plaintiff than the State of Delaware.  Plaintiff has not included the State of Delaware among the defendants in this lawsuit.  Plaintiff's failure to join the State of Delaware in this action may be attributed to the State's immunity to any lawsuit by Plaintiff, or the possibility that Plaintiff has already obtained recovery from the State for the escheatment of Plaintiff's shares.  In either case, because ACS's alleged liability to Plaintiff in negligence is solely derived from the State of Delaware's obligations to the shareholders of Delaware corporations, ACS is therefore entitled to the same *defenses* as the State of Delaware.  For the reasons discussed above, ACS is entitled to the State's sovereign immunity protection. Additionally, since Plaintiff has already been completely reimbursed for the value of the

shares sold by the State of Delaware, any recovery from ACS on those same obligations is barred.

Even if ACS is not found to be entitled to the defenses of the State of Delaware, Count III still would fail to state a claim for negligence as a matter of law. The Amended Complaint alleges that the State of Delaware is obligated b*y statute and regulation* to confirm the appropriateness of property tendered for escheatment and that, pursuant to its contract with the State, ACS assumed the State of Delaware's *statutory duties* to shareholders of Delaware corporations. (Amended Complaint, ¶¶ 34, 36). The Delaware Supreme Court has recognized that, where a plaintiff identifies a statute that imposes a duty, that statute may provide the source of a defendant's duty in a claim for common law negligence. See New Haverford P'ship, 772 A.2d at 798 (finding that plaintiff may rely on a statute as the source of defendant's duty in claim for common law negligence). The Amended Complaint makes the bald assertion that a statute or regulation exists to impose a duty on ACS to act for Plaintiff without identifying any existing statute or regulation that *actually exists* to impose such a duty on ACS. Such bald assertions will not be credited in deciding a Motion to Dismiss. Law Offices of Curtis V. Trinko, L.L.P., 309 F.3d at 74. Because the Amended Complaint fails to identify any statute that imposes a duty on ACS to Plaintiff, the Amended Complaint fails to plead a necessary element of a cause of action for negligence. Accordingly, Count III of the Amended Complaint must be dismissed for failing to state a claim.

### C.    The Amended Complaint Fails to State A Claim For Negligence Per Se Against ACS

Even if the Amended Complaint adequately pled that ACS's immunity has been waived, which it does not, Count III would fail to state a claim for negligence per se

because it fails to allege that ACS violated a statute enacted for the safety of others that embodies a standard of conduct designed to protect Plaintiff from injury or harm.

### 1. The Amended Complaint Does Not Allege Violation of a Statute Enacted for the Safety of the Public

Count III of the Amended Complaint purports to assert a claim against ACS for negligence per se. (Amended Complaint, ¶ 38). The doctrine of negligence per se is well-established in Delaware. Hall v. Bioquest Laboratories, Inc., No. 87A-JL3, 1991 Del. Super. LEXIS 245, at *5 (Del. Super. Ct. June 17, 1991). "Under Delaware law, conduct in violation of a statute, ordinance, rule, or regulation *enacted for the safety of others* and having the force of law constitutes negligence per se." Carroll v. Getty Oil Co., 498 F. Supp. 409, 412 (D. Del. 1980) (emphasis added) (finding that express purpose of statute and regulations at issue was safety); Tydings v. Lowenstein, 505 A.2d 443, 446 (Del. 1986); Sammons v. Ridgeway, 293 A.2d 547, 549 (Del. 1972); Hall, 1991 Del. Super. LEXIS 245, at *5. The Delaware courts have consistently found that negligence per se involves the violation of a statute or ordinance that has been enacted for the *safety* of others. See Carroll, 498 F. Supp. at 412 (discussing Delaware law regarding negligence per se); Sammons, 293 A.2d at 549 (noting historical relationship between criminal statutes and the development of the doctrine of negligence per se and finding that all reported opinions of Delaware courts on the doctrine involved criminal statutes or ordinances, and almost all involved rules of the road); Hall, 1991 Del. Super. LEXIS 245, at *5 (discussing doctrine of negligence per se).

Plaintiff's Amended Complaint fails to state a claim against ACS for negligence per se because it fails to allege that ACS violated a statute or regulation that has been enacted for the safety of others. The Amended Complaint alleges that "ACS failed to

confirm that the Empire shares owned by Tertiaire met the statutory and/or regulatory criteria for escheated property." (Amended Complaint, ¶ 37). The Amended Complaint ostensibly describes the statutes and regulations to which this allegation refers as those requiring the State of Delaware "to confirm the appropriateness of property tendered for escheatment" intended to benefit "shareholders of Delaware corporations." (Amended Complaint, ¶¶ 34-35). The Amended Complaint does not identify the specific statutes or regulations upon which the negligence per se claim is based. The Amended Complaint does not allege that these statutes or regulations were enacted to protect the *safety* of others, and contains no allegations that would even indicate that these statutes or regulations were enacted to protect the safety of others. Because the Amended Complaint entirely fails to plead that ACS violated a statute, ordinance, rule, or regulation which has been enacted for the *safety of others*, the Amended Complaint fails to state a claim for negligence per se, and Count III must be dismissed.

### 2. The Amended Complaint Does Not Allege That ACS Deviated From a Statutorily Defined Standard of Conduct

In addition to failing to plead that ACS violated a statute or regulation enacted for the safety of others, Count III must be dismissed because it also fails to plead the essential elements of a claim of negligence per se. To establish a cause of action for negligence per se under Delaware law, a plaintiff must show: "(1) that the statute, ordinance, rule or regulation invoked by plaintiff embodies a 'standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member,' (2) that the defendant is a person required to conform to the minimum standards so imposed, and (3) that the defendant has in fact deviated from those standards." Carroll, 498 F. Supp. at 412 (quoting Rabar v. E.I. Dupont de Nemours &

Co., Inc., 415 A.2d 499, 503 (Del. Super. Ct. 1980)); Wharton v. Worldwide Dedicated Services, No. 04C-02-035, 2007 WL 404770, at *2 (Del. Super. Ct. Feb. 2, 2007); see also Tydings, 505 A.2d at 446 (noting that licensing statutes do not define a standard of conduct); Hall, 1991 Del. Super. LEXIS 245, at *5 (noting that plaintiff must still show proximate cause).

In the instant matter, the Amended Complaint does not state a *prima facie* claim against ACS for negligence per se. The Amended Complaint fails to identify a single statute or regulation providing a standard of conduct that ACS has allegedly violated. The Amended Complaint's conclusory allegations that "[t]he State of Delaware is obligated by statute and regulation to confirm the appropriateness of property tendered for escheatment," and that ACS assumed this obligation, are insufficient to remedy this deficiency. (Amended Complaint, ¶¶ 34, 36). In order to allege a cause of action for negligence per se, the plaintiff must show that the defendant has violated a standard of behavior set by the legislature via statute. Gordon v. Nat'l Railroad Passenger Corp., No. 10753, 2002 WL 550472, at *7 (Del. Ch. April 5, 2002). Because the Amended Complaint fails to identify any Delaware statute or regulation setting forth a standard of behavior set by the Legislature (or even a standard of behavior allegedly enacted in some unidentified statute), the Amended Complaint fails to plead an essential element of a cause of action for negligence per se. Moreover, because the Amended Complaint fails to plead the first element of a negligence per se cause of action, it also fails to plead the remaining elements, which derive from the standard of conduct required in the first element. Consequently, the Amended Complaint fails to state a claim for negligence per se, and Count III must be dismissed.

**D.    The Amended Complaint Fails To
        State A Claim For Breach of Contract Against ACS**

Count VI of the Amended Complaint purports to state a breach of contract claim against ACS.  Like the breach of contract claim against AST, Count VI fails to state a claim because Plaintiff does not allege that a contract had been entered into by Plaintiff and ACS, and the facts pled simply do not establish that Plaintiff qualifies as a third party beneficiary of the contract between AST and ACS.

As discussed above, under Delaware law, a party qualifies as a third party beneficiary with enforceable rights under a contract only when: (1) the contracting parties intended that the third party benefit from the contract; (2) the benefit was intended as a gift or in satisfaction of a pre-existing obligation to that person; and (3) the intent to benefit the third party was a material part of the parties' purpose in entering into the contract.  Dupont, 269 F.3d at 196; Guardian, 583 A.2d at 1386; see supra § II. B.  None of these circumstances are presented in the Amended Complaint.  Nowhere is it alleged that AST and ACS intended that Plaintiff, or any shareholders of Delaware corporations, would benefit from the AST-ACS contract.  Further, the Amended Complaint does not allege that AST and ACS intended their contract to benefit Plaintiff as a gift to Plaintiff or in satisfaction of any obligation to Plaintiff.  Finally, the facts do not establish that any intent to benefit Plaintiff was a material part of the AST-ACS contract.  Accordingly, Plaintiff has not established that it is a third party beneficiary entitled to maintain a breach of contract action against ACS, and Count VI fails to state a claim as a matter of law.

To the extent that there may be a third-party beneficiary, albeit an incidental one, to the AST-ACS contract, the incidental beneficiary would be Empire, not the Plaintiff.

The Amended Complaint alleges that "AST contracted with ACS to determine . . . whether shares issued by certain corporations for which AST served as transfer agent qualified as unclaimed property" and that "AST delegated to ACS . . . authority to determine whether the Empire shares [] qualified as unclaimed property." (Amended Complaint, ¶¶ 50-51). Empire, as a Delaware corporation and issuer of stock, is obligated under Delaware law to determine whether any of its shares qualify as unclaimed property, and if so, to report that property to the State of Delaware. See 12 Del. C. §§ 1198, 1199. It is Empire, rather than Plaintiff, that might benefit from the alleged contract between AST and ACS to determine whether Empire shares qualify as unclaimed property. To the extent that Plaintiff claims that Empire's reporting obligations benefit Plaintiff, Plaintiff would be an incidental *fourth* party beneficiary to the AST-ACS contract, an interest that, under Delaware law, is *not* entitled to maintain a cause of action for breach of contract.

Because the allegations of the Amended Complaint fail to establish that Plaintiff qualifies as a third party beneficiary entitled to enforce the contract between AST and ACS, Count VI must be dismissed for failing to state a claim.

### E. The Amended Complaint Fails to State a Claim for Conversion Against ACS

Count VII fails to state a claim for conversion against ACS because the Amended Complaint does not allege that ACS exercised any wrongful control or dominion over Plaintiff's Empire shares for which it is not immune.

Conversion is an "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." Arnold, 678 A.2d at 536. A stockholder's shares are converted by any act of control or dominion without the

stockholder's authority or consent, and in disregard, violation, or denial of his rights as a stockholder of the company.  Id.  To be actionable, the exercise of control must be wrongful.  Id.

    The facts of the Amended Complaint do not establish that ACS exercised any wrongful dominion or control over Plaintiff's Empire shares.  Count VII's claim for conversion against ACS simply incorporates the prior conclusory allegations of the Amended Complaint and alleges that "[p]rior to the time the Empire shares owned by Tertiaire were paid to the State Escheator, the Defendants, acting individually or in combination, converted property belonging to Plaintiff."  (Amended Complaint, ¶ 57).  The Amended Complaint contains no facts supporting the allegation that ACS converted property belonging to Plaintiff *prior to the time the Empire shares were paid to the State of Delaware*.  The Amended Complaint alleges that Empire, either directly or through AST, delivered Plaintiff's shares *to the State of Delaware*.  (Amended Complaint, ¶ 17).  The shares are then alleged to have been sold by either the State of Delaware directly or the State acting through ACS.  (Amended Complaint, ¶ 18).  Any alleged facts supporting the allegation that ACS exerted any control over the shares *prior* to their delivery to the State of Delaware are conspicuously absent from the Amended Complaint.

    To the extent that the conversion claim against ACS is based on ACS's sale of the shares *after* their delivery to the State of Delaware by Empire, the Amended Complaint expressly states that the sale was accomplished either directly by the State of Delaware (in which case ACS was uninvolved), or by the State of Delaware acting through ACS (in which case ACS was acting as Delaware's agent, entitling ACS to the defense of sovereign immunity).  (Amended Complaint, ¶¶ 17-18).  See supra § III. A.  As

previously noted, the Complaint actually acknowledges the Delaware-ACS agency relationship, and Amended Complaint, by asserting that ACS's actions with respect to the shares were taken pursuant to ACS's contract with the State of Delaware, essentially admits the existence of an agency relationship.  (Complaint, ¶¶ 28, 32, 34, 38 and 42; Amended Complaint, ¶¶ 4, 36).  Because ACS was acting solely in its representative capacity as agent for the State of Delaware, at no time did ACS exercise any right of ownership or wrongful dominion over the Empire shares in question and therefore did not convert that property to itself.  See Arnold, 678 A.2d at 536 (finding that to be actionable, the exercise of control must be wrongful).

Accordingly, Count VII must be dismissed as to ACS for failing to state a claim.

## CONCLUSION

For all of the foregoing reasons and principles of law, Defendants American Stock Transfer & Trust Co. and Affiliated Computer Services, Inc. respectfully request that this Court dismiss the Amended Complaint of Plaintiff, A.W. Financial Services, S.A., together with such other, further and different relief as to the Court deems just and proper.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

By:  /s Kellie M. MacCready

Steven A. Haber (SH4739)
Kellie M. MacCready (KM3024)
Michael S. Pepperman (MP9163)
One Penn Center - 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000; (215) 665-3165 (facsimile)
*Attorneys for Defendants American Stock Transfer & Trust*
Dated:  January 13, 2010    *Co. and Affiliated Computer Services, Inc.*