UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
A.W. FINANCIAL SERVICES, S.A., as successor       :
in interest to TERTIAIRE INVESTISSEMENT, S.A.,    :
                                                                  :          07 Civ. 8491 (SHS)
                                    Plaintiff,         :
                                                                  :          OPINION & ORDER
                    -against-                          :
                                                                  :
EMPIRE RESOURCES, INC., AMERICAN STOCK       :
TRANSFER & TRUST COMPANY, and                     :
AFFILIATED COMPUTER SERVICES, INC.,            :
                                                                  :
                                    Defendants.        :
                                                                  :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

        This diversity action involves the escheatment of stock to the State of Delaware.  Plaintiff A.W.

Financial Services, S.A., a foreign corporation, owned shares of Empire Resources, Inc., a Delaware

corporation.  After A.W. Financial's shares of Empire were turned over to the State of Delaware as

escheated property, A.W. Financial brought this action against three defendants alleging that the

escheatment of its stock violated Delaware escheat law.  The first named defendant, Empire, issued the

escheated stock.  The second named defendant, American Stock Transfer & Trust Co., had a contract

with Empire to serve as Empire's transfer agent and to keep track of Empire's shareholders.  The third

named defendant, Affiliated Computer Services, Inc., worked with American Stock to find escheated

shares and, through a contract with the State of Delaware, allegedly sold A.W. Financial's shares of

Empire after they had been turned over to the State.

        A.W. Financial asserts a number of claims for relief, including negligence, breach of contract,

failure to register plaintiff's shares, breach of fiduciary duties, and conversion.  A.W. Financial seeks

compensatory damages from all defendants and specific performance from Empire.

        Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all of A.W. Financial's

claims for failure to state a claim for relief.  Defendant Affiliated Computer Services also maintains it is

entitled to sovereign immunity because it was acting as an agent for the State of Delaware.  In January 2009, this Court certified a number of questions to the Delaware Supreme Court.  Having the benefit of that court's answers those questions, this Court now decides defendants' motions to dismiss.

## I.  BACKGROUND

The following facts are taken from the Amended Complaint and are presumed to be true for the purposes of this motion.  Familiarity with this Court's prior opinion, *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, No. 07 Civ. 8491, 2009 U.S. Dist. LEXIS 6510 (S.D.N.Y. Jan. 29, 2009), and the Delaware Supreme Court's subsequent opinion, *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114 (Del. 2009), is presumed.

In 1994, Tertiaire Investissement S.A. purchased forty shares of Integrated Technology USA, Inc.  (Am. Compl. ¶ 7.)  Integrated Technology later merged with Empire, and as a result of the merger, Tertiaire's forty shares of Integrated Technology became 30,426 shares of Empire.

By 2000, "Tertiaire Investissement S.A." had become "Tertiaire Development S.A." ("Tertiaire"), and the company wrote to Empire "inquiring about its shares."  (*Id*. ¶ 10.)  Tertiaire received a response from American Stock, Empire's transfer agent, stating: "[We] acknowledge your recent letter regarding the loss of the above certificates [IT0065], against which we have placed a 'STOP TRANSFER' notation on our records."  (*Id*. ¶ 11.)  American Stock then asked Tertiaire to submit an "Affidavit of Loss and Indemnity Agreement" and to purchase a surety bond.  (*Id*. ¶ 13.)  These steps were required, American Stock said, before it would provide a replacement certificate for Tertiaire's shares.

In fact, Tertiaire had not lost its original stock certificate; it had never received one in the first place.  (*Id*. ¶ 12.)  Nevertheless, Tertiaire agreed to submit the requested affidavit and to purchase the surety bond.  (*Id*. ¶¶ 13-14.)  Tertiaire received a replacement certificate from American Stock less than a week later.  (*Id*. ¶ 16.)

In 2004, four years and five months after Tertiaire obtained the replacement stock certificate and approximately five years after the merger of Integrated Technology and Empire, Tertiaire's shares of Empire were turned over to the State of Delaware as escheated property.  (*Id*. ¶¶ 13, 16-17.)  As alleged in the Amended Complaint, plaintiff's Empire shares were "escheated by Empire, through its authorized agent [American Stock] to the State of Delaware, through [Affiliated Computer]."  (*Id*. ¶ 22.)

It is apparent from the Amended Complaint and moving papers that A.W. Financial—the successor in interest to Tertiaire—does not know how or why defendants determined that Tertiaire's shares of Empire had become escheatable.  A.W. Financial also lacks information about what role each defendant played in the escheatment and how ownership of the shares was transferred to Delaware.  In particular, the Amended Complaint is silent about whether the shares were transferred to Delaware using a duplicate stock certificate or by some other means.  At a court conference, counsel for American Stock also expressed uncertainty about how Tertiaire's shares were transferred to Delaware but did represent to the Court that the shares were not transferred by means of a duplicate stock certificate. (Hr'g Tr. dated January 27, 2009 at 17:10-16.)

What is clear, at least as alleged in the Amended Complaint, is that A.W. Financial wrote to Empire in 2006 asking that its shares be re-registered under its new name, "A.W. Financial Services S.A."  (*Id*. ¶ 19.)  Shortly thereafter, A.W. Financial learned "through serial conversations and correspondence with Empire, [American Stock,] and [Affiliated Computer] . . . that the Empire shares owned by Tertiaire had been escheated by Empire, through its authorized agent [American Stock] to the State of Delaware, through [Affiliated Computer]."  (*Id*. ¶ 21.)

A.W. Financial then brought this action claiming that its shares of Empire were turned over to the State of Delaware in violation of Delaware's escheat law.  A.W. Financial initially argued—and the Delaware Supreme Court has confirmed—that under the law that existed at the time A.W. Financial's shares were turned over to the State of Delaware, stock must have been dormant for at least five years

3

before it could be considered escheatable to the State of Delaware within the meaning of the statute.[1]
(*Id.* ¶ 25.)  Thus, according to facts alleged in the Amended Complaint, the period of dormancy had not
yet elapsed when defendants delivered the shares to Delaware, as the shares were escheated only four
years and five months after the replacement certificate was issued.  (*Id.* ¶ 25.)

In addition, A.W. Financial maintains that its address should have been stored in defendants'
records.  When Tertiaire submitted the affidavit of loss to obtain a replacement stock certificate, the
affidavit stated that Tertiaire was "presently known as Tertiaire Development, S.A." and that its address
was "47 Rue de Chaillot, Paris 75116."  (*Id.* ¶ 15.)  Had defendants checked their records, A.W.
Financial claims, they would have discovered Tertiaire's contact information and concluded that the
stock was not escheatable.  Thus, A.W. Financial cites defendants' alleged failure to check their records
as a further reason that the escheatment of stock was wrongful.

Nevertheless, A.W. Financial has not lost the entire value of its stock: it appears that A.W.
Financial contacted Delaware about its escheated shares, and Delaware remitted to A.W. Financial the
money Delaware made in selling them.  That fact is not explicitly alleged in the Amended Complaint,
but it appears in defendants' moving papers, and A.W. Financial does not dispute it.  (*See* Mem. in
Supp. of Empire's Renewed Mot. to Dismiss the Am. Compl. at 6.)  Now, A.W. Financial brings this
action to recover additional compensation beyond what it has already obtained from Delaware.  The
amount A.W. seeks—$870,487—is the "the difference between the value of the shares when liquidated
by the State of Delaware . . . and when [A.W. Financial] first inquired about selling them."  (Am.
Compl. ¶ 28.)

**II. DISCUSSION**

    A.  <u>Motion to Dismiss Standard and Choice of Law</u>

---

[1] In the original motion to dismiss, defendants argued that the time to determine dormancy of stock was three years pursuant to an amendment to the applicable Delaware statute.  In a detailed opinion, however, the Delaware Supreme Court declared that the amendment which changed the time limitation from five years to three years was not retroactive. *See A.W. Fin. Servs., S.A*, 981 A.2d 1119-20.  As a result, defendants no longer argue that the stock was turned over to the State of Delaware in a timely manner.

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006); *S.E.C. v. Lyon*, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2007).

However, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, --U.S.--, 129 S.Ct. 1937, 1950 (2009).  For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Id*.

Defendants maintain that Delaware law should apply to each of plaintiff's nine causes of action.  A.W. Financial takes no position as to what law should govern, but essentially concedes that Delaware law applies in this case; plaintiff employed Delaware law in its memoranda (*see e.g*., Pl.'s Opposition to the Renewed Joint Mot. of American Transfer and Affiliated Computer dated Mar. 16, 2010 at 24), and "such 'implied consent' is sufficient to establish choice of law.  *Krumme v. Westpoint Stevens Inc*., 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Envtl. En'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).  Thus, Delaware law will be employed to determine this motion.

B.  Analysis

### *1*. *Sovereign Immunity*

Affiliated Computer asserts that it is entitled to sovereign immunity because it acted as an agent for the State of Delaware, and that as a result, each of plaintiff's claims against it should be dismissed.

"In general, the doctrine of sovereign immunity provides that the State may not be sued without its consent."  *Doe v. Cates*, 499 A.2d 1175, 1176 (Del. 1985) (citations omitted).  "This immunity from suit extends to agencies exercising the authority of a state, such that, if the agency is sued, it is the state

that will end up paying." *Murphy v. Corr. Med. Servs.*, No. 03C-04-271-PLA, 2005 Del. Super. LEXIS 287, at *6 (Del. Super. Ct. Aug. 19, 2005).

The success of Affiliated Computer's effort to invoke sovereign immunity turns on whether "it was operating as a government entity acting in its official capacity" when it assisted the State of Delaware in the sale of plaintiff's Empire shares. *Higgins v. Walls*, 901 A.2d 122, 133 (Del. Super. Ct. 2005). This is a difficult burden to meet for independent entities or corporations that perform work for the state or a government agency. *See Syvy v. Landmark Eng'g, Inc.*, No. 02C-02-060, 2005 Del. Super. LEXIS 99, at *5-6 (Del. Super. Ct. Mar. 31, 2005) (finding that (1) the Delaware State Tort Claims Act applies only to a "public officer or employee;" (2) there is no reference to immunity in the State Tort Claims Act for individual entities performing traditional governmental functions through independent contractual relationships; and (3) there is absolutely nothing to suggest the General Assembly ever intended to extend this immunity beyond the limited classification of state employees or those serving on government boards). Placing limits on what entities may invoke sovereign immunity "is not only logical but practical since to interpret otherwise would open the door to allow every independent entity, who performs some work for a government agency, to claim that it is somehow encompassed within this statute and the immunities that flow from it." *Syvy*, 2005 Del. Super. LEXIS 99 at *5.

Although there may be cases in which defendants other than the State of Delaware or its agencies or employees are found to be entitled to sovereign immunity, Affiliated Computer has provided the Court with no authority directly supporting its entitlement to sovereign immunity. Rather than relying on case authority, Affiliated Computer instead argues that plaintiff admitted Affiliated Computer was an "authorized agent" of the State of Delaware in the original complaint and plaintiff is, therefore, bound to that admission. However, A.W. Financial's original belief that Affiliated Computer was an authorized agent of the State of Delaware does not make it so. In addition, the statute cited by Affiliated Computer—the Delaware Tort Claims Act, Del. Code Ann. tit. 10, §§ 4001-4005 (2010)—does not directly support its position that an "authorized agent" of the State of Delaware is entitled to sovereign

immunity.  On its face, that statute applies only to (1) "the State" or (2) "any public officer or employee, including the members of any board, commission, conservation district or *agency of the State*."  Del. Code Ann. tit. 10, § 4001 (2010) (emphasis added).  There is a significant distinction between an agency of the State, *i.e.* "an arm of the State," and a separate entity acting pursuant to a contract with the state; in other words, a corporation acting as an agent of the state.  *See P.R. Ports Auth. v. FMC*, 531 F.3d 868, 871-74 (D.C. Cir. 2008).  Missing this distinction, Affiliated Computer has provided no case law supporting its argument that sovereign immunity should be extended to independent entities that provide work for the state.  Affiliated Computer does not—because it cannot—allege that it is an "agency of the State."

Because Affiliated Computer has failed to provide the Court with any authority indicating it is entitled to sovereign immunity, Affiliated Computer's motion to dismiss the Amended Complaint on sovereign immunity grounds is denied.

### 2. *Common Law Claims*

The Delaware Supreme Court has determined that Delaware's escheat statute, Del. Code Ann. tit. 12 §§ 1197-1212 (2010) ("Delaware's escheat law"), is not inconsistent with common law causes of action.  Citing the immunity provisions in subsections 1203(a)-(b), the Court reasoned that the legislative creation of immunity from liability implies that without immunity, there would be liability; in other words, there would be no need for statutory immunity if non-compliance with the statute could not create liability.  *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1127 (Del. 2009).  The Delaware Supreme Court further determined that a variety of common law causes of action are available to a claimant asserting wrongful escheatment.  Those causes of action are (1) negligence; (2) conversion; and (3) failure to register.  *Id.* at 1126-28.  We now address whether plaintiff has adequately alleged the elements of each claim.

(i)      Plaintiff's Negligence Claims

To state a cause of action for negligence, a plaintiff must allege "(1) the existence of a duty; (2) breach of that duty; (3) proximate causation; and (4) damages." *Certain Underwriters at Lloyd's v. Nat'l Installment Ins. Servs*., No. 19804-NC, 2007 Del. Ch. LEXIS 42, at *23 (Del. Ch. Feb. 8, 2007). Defendants each maintain that A.W. Financial plaintiff has failed to allege that any defendant owed a legally cognizable duty to A.W. Financial.

Empire contends that Delaware's escheat law expressly imposes only an affirmative duty on the "holder" of the stock to escheat any stock that is considered "abandoned" pursuant to the statute—*i.e.*, stock for which the full period of dormancy has run. Empire argues that it did not have a duty to refrain from escheating stock that was not properly considered abandoned pursuant to Delaware's escheat law (*see* Mem. in Supp. of Empire's Renewed Mot. to Dismiss the Am. Compl. at 10.); Empire's argument has no merit and is contrary to the language of the statute, *see* Del. Code Ann. tit. 12 §§ 1197-1212 (2010).

Section 1198 of Delaware's escheat law states that "Abandoned property" means "property against which a full period of dormancy has run." *Id*. § 1198(1). "Period of dormancy" is also defined in section 1198, and the Delaware Supreme Court has determined that at the time plaintiff's stock was escheated, the applicable period of dormancy was five years. *A.W. Fin. Servs., S.A.,* 981 A.2d at 1120.

Delaware's escheat law grants immunity to a "holder and any transfer agent" who "deliver[s] in good faith" a "duplicate certificated security to the State Escheator." Del. Code Ann. tit. 12 § 1203(b) (2010). Subsection 1203(b) is the applicable immunity provision for escheatments of stock. *See A.W. Fin. Servs., S.A.,* 981 A.2d at 1131. As the Delaware Supreme Court noted, the legislative creation of immunity from liability set forth in subsection 1203(b) implies that without immunity there would be liability. If there were no possibility of liability for "the holder and any transfer agent, registrar or other person acting for or on behalf of the holder," then those persons would not need the benefit of immunity provided in subsection 1203(b). *Id.*

Empire, as issuer of the stock to plaintiff, is a "holder" under the statutory definition, which provides that a holder is

> any person having possession, custody or control of the property of another person and includes a post office, a depository, a bailee, a trustee, a receiver or other liquidating officer, a fiduciary, a governmental department, institution or agency, a municipal corporation and the fiscal officers thereof, a public utility, service corporation and every other legal entity incorporated or created under the laws of this State or doing business in this State. For purposes of this subchapter, *the issuer of any intangible ownership interest in a corporation*, whether or not represented by a stock certificate, which is registered on stock transfer or other like books of the issuer or its agent, *shall be deemed a holder of such property.*

Del. Code Ann. tit. 12 § 1198(7) (emphasis added).  Subsections 1198(7) and 1203(b) read together imply that there may be more than one holder of property, including any "registrar" or "transfer agent," Del. Code Ann. tit. 12 § 1203(b), "having possession, custody or control of the property" at issue.  Del. Code Ann. tit. 12 § 1198(7).

Based on subsections 1203(b) and 1198(7), if a holder or "any transfer agent, registrar or other person acting for or on behalf of the holder" does not comply with the provisions of Delaware's escheat law, it could face liability, *see* Del. Code Ann. tit. 12 § 1203(b) (2010), which according to the Delaware Supreme Court, may arise in the form of a cause of action for negligence, *A.W. Fin. Servs., S.A.*, 981 A.2d at 1127.  It is therefore possible, based on the facts alleged in the Amended Complaint, that any of the defendants may ultimately face liability for failing to comply with the provisions of Delaware's escheat law and for their erroneous determination that plaintiff's shares were abandoned and escheatable within the meaning of Delaware's escheat law.

Thus, the Court finds that the statutory scheme set forth in Delaware's escheat law imposes a duty on issuers of intangible ownership interests in a corporation, and if applicable, on any transfer agent, registrar, or other person acting for or on behalf of the issuer, to comply with the provisions of the statute and turn over all property that has been abandoned in accordance with the statute.  To turn over property for which the period of dormancy has not run, however, subjects the issuer, and any agents it may have employed or other entities set forth in section 1203(b), to liability, unless they can show they

9

complied with each of the relevant provisions of the statute, including acting in good faith pursuant to section 1203(d).

The Delaware Supreme Court has found that good faith is an affirmative defense available to defendants sued for wrongful escheatment and, therefore, plaintiff need not plead that defendants did not act in good faith. *A.W. Fin. Servs., S.A.*, 981 A.2d at 1132. To the extent this defense is available to any or all defendants in this case, it must be "pleaded and proved by" defendants. *Id.* Accordingly, this Court will not dismiss plaintiff's claim because it fails to allege facts which indicate the defendants did not act in good faith. To do so would be inappropriate at this early stage of the litigation.

Because plaintiff has alleged sufficient facts supporting its contention that the period of dormancy had not run at the time Empire—either directly or through American Stock or Affiliated Computer—delivered to the State of Delaware plaintiff's shares of stock, which had been mistakenly determined to be abandoned by Empire, American Stock, or Affiliated Computer, defendants' motions to dismiss plaintiff's negligence claims in Counts I-III are denied.

(ii)     Plaintiff's Conversion Claims

Defendants have also moved to dismiss plaintiff's conversion claims for failure to state a claim. Empire argues that plaintiff has not pled any facts to support its position that Empire was involved in the escheatment of plaintiff's shares, while American Stock and Affiliated Computer claim they never exercised any right of ownership or wrongful control over plaintiff's shares, and that plaintiff has not alleged any facts which suggest that American Stock ever acted inconsistently with its "limited role" as transfer agent. In essence, defendants attempt to defeat A.W. Financial's claim based on the fact that plaintiff cannot allege with specificity how each of the three defendants were at fault. In addition, Affiliated Computer argues that to the extent it participated in the sale of plaintiff's shares, it was after those shares were turned over to the State of Delaware, and, therefore, it is immune from plaintiff's suit because it was acting as Delaware's agent in executing the sale.

The parties agree that conversion is an "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." *McGowan v. Ferro*, 859 A.2d 1012, 1040 (Del. Ch. 2004) (citing *Arnold v. Soc'y for Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996)). To maintain an action for conversion of stock, a plaintiff must allege that "(a) plaintiff held a property interest in the stock; (b) plaintiff had a right to possession of the stock; and (c) the defendant converted plaintiff's stock." *Arnold*, 678 A.2d at 536.

The Court finds that A.W. Financial has stated a plausible claim for relief for conversion against each of the defendants. Plaintiff has alleged facts indicating that at the time of the escheatment, plaintiff held a property interest in Empire stock (Amend. Compl. ¶¶ 7-16), that it possessed the replacement stock certificate evidencing that ownership interest (*id.* ¶ 16), and that one or more of the defendants exercised control over the property, without plaintiff's consent and in a manner that was inconsistent with plaintiff's ownership rights, when plaintiff's shares were turned over to the State of Delaware (*id.* ¶¶ 17-21). Defendants cannot escape liability at this stage of the litigation by each claiming lack of knowledge and lack of involvement in the actual escheatment in a motion to dismiss when the Amended Complaint alleges that one or more of the defendants is responsible for turning over plaintiff's shares to the State of Delaware.

As explained above, Affiliated Computer has not provided this Court with any support for its argument that it is immune from liability on plaintiff's conversion claim simply because it may have been acting pursuant to a contract it entered into with the State of Delaware. Affiliated Computer also ignores the fact that it also had a contract with American Stock, and that it wore two different hats as a result. Affiliated Computer presumably had obligations to both the State of Delaware and American Stock, and at this early stage of the litigation, the Court cannot ascertain whether Affiliated Computer was acting pursuant to its contract with Delaware or its contract with American Stock when it allegedly participated in wrongfully turning over plaintiff's Empire shares.

Accordingly, defendants' motions to dismiss the conversion claim are denied.

(iii)     A.W. Financial's Failure to Register Claim Against Empire

A.W. Financial has also brought a claim against Affiliated Computer for negligence per se. A.W. Financial's allegations that Empire failed to register its shares are just enough to nudge its claim across the line from conceivable to plausible.  As the Delaware Supreme Court found, Delaware law imposes a duty upon an issuer, "under both the U.C.C. and the Delaware General Corporation Law, to register shares held by an equitable owner that seeks to become a shareholder of record." *A.W. Fin. Servs., S.A.*, 981 A.2d at 1128.  Although plaintiff fails to set forth in its Amended Complaint the precise Uniform Commercial Code provision Empire allegedly violated, it has alleged facts indicating that Empire failed to register plaintiff's replacement certificate that was sent to Tertiaire in May 2000 (or failed to register it in the correct name), and that it was this failure to register plaintiff's stock certificate that ultimately caused plaintiff's shares of Empire to be deemed abandoned property and escheated to the State of Delaware prematurely. [2]  Accordingly, Empire's motion to dismiss the failure to register claim in the Amended Complaint is denied.

(iv)     Plaintiff's Negligence Per Se Claim Against Affiliated Computer

"Under Delaware law, conduct in violation of a statute, ordinance, rule, or regulation enacted for the safety of others and having the force of law constitutes negligence per se." *Carroll v. Getty Oil Co.*, 498 F. Supp. 409, 412 (D. Del. 1980) (citations omitted).  Affiliated Computer contends that plaintiff's claims should be dismissed because (1) plaintiff has failed to allege that Affiliated Computer violated a statute or regulation that has been enacted for the safety of others, and (2) plaintiff has failed to identify a single statute or regulation providing a standard of conduct that Affiliated Computer has allegedly violated.  Because the Amended Complaint is completely devoid of any allegation that Delaware's escheat law was enacted for the safety of others, plaintiff's negligence per se claim against Affiliated Computer is dismissed.

---

[2] Plaintiff makes clear in its memorandum of law in opposition to Empire's motion to dismiss the Amended Complaint that it is not the 2006 transfer that forms the basis of its failure to register claim, but the alleged failure to register Tertiaire's replacement certificate which Empire sent to Tertiaire in May 2000.

### *3.  Plaintiff's Breach of Contract Claims*

To qualify as a third party beneficiary of a contract under Delaware law, "(a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract." *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (quoting *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (1990)).  Thus, if contracting parties did not intend "to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly," then the third party is a mere incidental beneficiary and "will have no enforceable rights under the contract."  *Id.*; *MetCap Secs. LLC v. Pearl Senior Care, Inc.*, No. 2129-VCN, 2007 Del. Ch. LEXIS 65, at *30-31 (Del. Ch. May 16, 2007).  In determining whether a party is a third-party beneficiary, a court should look first at the contract's language, and then, if appropriate, to the surrounding circumstances.  *See Am. Fin. Corp. v. Computer Scis. Corp.*, 558 F. Supp. 1182, 1184 (D. Del. 1983).

Defendants American Stock and Affiliated Computer both urge that A.W. Financial has not pled facts that would allow this Court to conclude that it was an intended beneficiary of either the Empire-American Stock contract or the American Stock-Affiliated Computer contract.  The Court agrees.

With respect to both the Empire-American Stock contract and the American Stock-Affiliated Computer contract, plaintiff has failed to allege facts, which if proven to be true, would establish that A.W. Financial was an intended third-party beneficiary of either contract.  In addition, examination of the contracts reveals neither language indicating the contracting parties intended to benefit plaintiff, nor language which shows that the contracting parties intended to benefit plaintiff as a gift or in satisfaction of a pre-existing obligation to plaintiff.  Moreover, nothing in the contract itself or the Amended

Complaint indicates that the intent to benefit plaintiff was a *material* part of the contracting parties' purpose in entering into either contract.

Although plaintiff may have a remedy against American Stock or Affiliated Computer, or both, that remedy does not arise from any contract rights A.W. Financial may have as a third-party beneficiary.  Therefore, American Stock and Affiliated Computer's motion to dismiss plaintiff's breach of contract claims—Counts V and VI—is granted.

### 4.  *Plaintiff's Breach of Fiduciary Duty Claim Against Empire*

The Delaware Supreme Court's decision in this action has foreclosed plaintiff's breach of fiduciary duty claim.  That court expressly wrote that "[a]lthough a claim for damages for breach of fiduciary duty is cognizable under Delaware law, that claim presupposes that the defendants are 'fiduciaries' that owed fiduciary duties to the plaintiff.  Empire, [as the issuing corporation], is not a fiduciary to the plaintiff, which is its stockholder."  *A.W. Fin. Servs., S.A.*, 981 A.2d at 1127-28.  Therefore, Empire's motion to dismiss plaintiff's breach of fiduciary duty claim is granted.

### 5.  *Specific Performance*

"Under Delaware law, a party seeking the equitable remedy of specific performance must prove the existence and terms of an enforceable contract by clear and convincing evidence."  *Minn. Invco of RSA No. 7, Inc. v. Midwest Wireless Holdings, LLC*, 903 A.2d 786, 793 (Del. Ch. 2006) (citing *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14 (Del. Ch. 2001)).  In addition, the party seeking specific performance must demonstrate that there is no adequate remedy at law.  *Id.*  Even where a plaintiff seeks to enforce a contract, specific performance of a contract for the transfer of stock will not be ordered unless the stock is unique, the shares are not available on the open market, or the stock has unique value to the purchaser.  *See Gildor v. Optical Solutions, Inc.*, No. 1416-N, 2006 WL 4782348, at *11 n.33 (Del. Ch. June 5, 2006) (citations omitted).

A.W. Financial has not alleged the existence of a contract between it and Empire, and it has provided no support for its argument that a bailment relationship was implied by law.  Moreover,

although plaintiff makes the conclusory allegation in the Amended Complaint that its Empire shares were "unique and distinct" (Amend. Compl. ¶ 63), it also concedes that Empire shares are freely traded on the American Stock Exchange (*id.* at ¶ 2).  A.W. Financial has not explained why its publicly traded shares of Empire were unique or had any unique value to it beyond their monetary worth.  Thus, plaintiff has not pled any facts indicating that it does not have an adequate remedy at law, and plaintiff's request for specific performance is denied.


## III.  CONCLUSION

For the reasons set forth above, defendants' motions to dismiss Counts I, II, III, VII, and VIII are denied, and defendants' motion to dismiss Counts IV, V, VI, and IX are granted.

Dated:  New York, New York
         September 30, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.